1  Mark A. Kleiman, Esq., SBN # 115919
2  LAW OFFICES OF MARK ALLEN KLEIMAN
   1640 Fifth Street, Suite 214
3  Santa Monica, CA 90401
   Tel:   (310) 260-2303
4  Fax:   (310) 260-2535

5  Attorneys for Qui Tam Plaintiff

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11  [UNDER SEAL],                    )     CASE NO.
                                     )
12                    Plaintiffs,    )     CV08-01885 GHK (JWJx)
                                     )
13                                   )     FILED IN CAMERA AND UNDER
    [UNDER SEAL],                    )     SEAL
14                                   )
                      Defendants.    )     COMPLAINT FOR VIOLATIONS OF
15  _____ )     FEDERAL FALSE CLAIMS ACT

16                                         JURY TRIAL DEMANDED

17

18

19

20

21

22

23

24

25

26

27

28

1  Mark A. Kleiman, Esq., SBN # 115919
   LAW OFFICES OF MARK ALLEN KLEIMAN
2  1640 Fifth Street, Suite 214
   Santa Monica, CA 90401
3  Tel:   (310) 260-2303
   Fax:   (310) 260-2535
4
   Attorneys for Qui Tam Plaintiff
5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                        WESTERN DIVISION

11  UNITED STATES OF AMERICA,          )   CASE NO.
    *ex rel,*                          )
12  STEVEN J. HARTPENCE                )
    31360 Meadow Creek Trail           )
13  Fair Oaks Ranch, Texas 78015       )   FILED IN CAMERA AND UNDER
                                       )   SEAL
14  BRINGING THIS ACTION ON            )
    BEHALF OF THE UNITED               )   COMPLAINT FOR VIOLATIONS OF
15  STATES OF AMERICA                  )   FEDERAL FALSE CLAIMS ACT
    c/o Thomas P. O'Brien, Esquire     )
16  United States Attorney for the Central )
    District of California             )   JURY TRIAL DEMANDED
17  U.S. Courthouse                    )
    312 N. Spring Street               )
18  Los Angeles, CA 90012              )
                                       )
19       and                           )
                                       )
20  c/o Michael Mukasey, Esquire       )
    Attorney General of the United States )
21  Department of Justice              )
    10th & Constitution Ave., N.W.     )
22  Washington, D.C. 20530             )
                                       )
23            Plaintiffs,              )
                                       )
24  v.                                 )
                                       )
25  KINETIC CONCEPTS, INC.,            )
    c/o Robert E. Wehrmeyer, Jr.       )
26  3440 East Houston Street           )
    San Antonio, Texas 78219           )
                                       )
27            Defendants.              )
28  _____  )

1

## COMPLAINT

1.     This is an action to recover damages and civil penalties on behalf of the United States of America arising from the false claims made by Kinetic Concepts, Inc., in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, as amended.

2.     The False Claims Act (hereinafter the Act), originally enacted in 1863 during the Civil War, was substantially amended by the False Claims Amendments Act of 1986 and signed into law on October 17, 1986.  Congress enacted these amendments to enhance the Government's ability to recover losses sustained as a result of fraud against the Untied States and to provide a private cause of action for the protection of employees who act in furtherance of the purposes of the Act. Congress acted after finding that fraud in federal programs and procurement is pervasive and that the Act, which Congress characterized as the primary tool for combating fraud in government contracting, was in need of modernization.

3.     The Act provides for any person who knowingly presents or causes to be presented a false or fraudulent claim to the Government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government, including attorneys' fees. The Act allows any person having information regarding a false or fraudulent claim against the Government to bring a private cause of action for himself and on behalf of the government to share in any recovery.  The complaint is to be filed under seal for sixty days (without service on the Defendant during such sixty-day period) to enable the Government (a) to conduct its own investigation without the Defendant's knowledge, and (b) to determine whether to join the action.

4.     Based on these provisions, Plaintiff/Relator, Steven J. Hartpence, seeks to recover damages and civil penalties arising from Defendant's presentation of false claims to the United States Government specifically through the Medicare Health

//

1  Program in connection with the improper billing for its Vacuum Assisted Closure
2  device.

3      5.     Plaintiff, Steven J. Hartpence, has direct and independent knowledge of
4  the following conduct that violated the False Claims Act:

5

6                            **PARTIES**

7      6.     Plaintiff Hartpence is a resident of Fair Oaks Ranch, Texas. At all times
8  relevant herein, he was employed by Kinetic Concepts, Inc., (KCI). In this capacity,
9  he gained direct and independent knowledge of the allegations contained in this
10  Complaint.

11      7.     Defendant, Kinetic Concepts, Inc. (KCI) manufactures the Vacuum
12  Assisted Closure device. KCI is headquartered in Houston, Texas and does business
13  throughout the United States as well as the world.

14

15                 **JURISDICTION AND VENUE**

16      8.     This Court has jurisdiction over the subject matter of this action pursuant
17  to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, which specifically confers jurisdiction on
18  this Court for actions brought pursuant to §§ 3729 and 3730 of Title 31, United States
19  Code.

20      9.     This Court has personal jurisdiction over the Defendant because the
21  Defendant regularly conducts business in California. The Defendant has eleven (11)
22  service centers throughout California including Van Nuys and Orange, California.

23      10.    Venue is proper in this district pursuant to 31 U.S.C. § 3732 (a) because
24  the Defendant routinely transacts business in the Los Angeles, California area.

25

26                            **BACKGROUND**

27      11.    The Plaintiff was the Senior Vice President, Business Systems, KCI,
28  from October 2001 until July 2007 reporting directly to Denny Ware, President and

1   Chief Executive Officer (CEO) of KCI from 2000 to October 2006 and then to

2   President and CEO Catherine Burzik.

3       12.    According to KCI's 2006 10-K report, KCI is a global medical

4   technology company with leadership positions in advanced wound care and

5   therapeutic surfaces. KCI designs, manufactures, markets and services a wide range

6   of proprietary products that can improve clinical outcomes and can help reduce the

7   overall cost of patient care.

8       13.    KCI's 2006 10-K Report states as follows:

9   > "Medicare, which reimburses KCI for placement of our
10  > products and therapies with Medicare participants,
    > accounted for $165.4 million, or 12.1% of total revenue,
    > and $148.6 million, or 12.3% of total revenue, for the years
11  > ended December 31, 2006 and 2005 respectively. No other
    > individual customer or payer accounted for 10% or more of
12  > total revenues for the years ended December 31, 2006 and
    > 2005, respectively."
13

14  **NEGATIVE PRESSURE WOUND THERAPY**

15      14.    KCI began manufacturing its Negative Pressure Wound Therapy

16  (NPWT) device known as the Vacuum Assisted Closure (V.A.C.) therapy system in

17  1995. The device is based on patents held by Wake Forest University and licensed

18  exclusively to KCI.

19      15.    KCI describes its product as follows:

20  > "KCI has revolutionized advanced wound care with the
    > development of Negative Pressure Wound Therapy
21  > (NPWT). Utilizing multiple mechanisms of action, V.A.C.
    > Therapy removes fluids and infectious materials, helps
22  > protect the wound environment, helps promote perfusion
    > and a moist healing environment and helps draw together
23  > wound edges."

24
    > "V.A.C. Therapy is the controlled application of sub-
25  > atmospheric pressure to a wound using a therapy unit to
    > intermittently or continuously convey negative pressure to
26  > a specialized wound dressing to help promote wound
    > healing."

27  //

28  //

4

> "The wound dressing is a resilient, open-cell foam surface dressing . . . that assists tissue granulation and is sealed with an adhesive drape that contains the sub-atmospheric pressure at the wound site."

> "Special T.R.A.C. Technology enhances patient safety by regulating pressure at the wound site."

> "Additionally, the V.A.C. Therapy System helps direct drainage to a specially designed canister that reduces the risk of exposure to exudate fluids and infectious materials." (KCI Website)

## MEDICARE AND NEGATIVE PRESSURE WOUND THERAPY PUMPS

16.  Medicare considers a Negative Pressure Wound Therapy Pump to be a piece of durable medical equipment (DME).

17.  Tri-Centurion, the Program Safeguard Contractor (PSC) for Medicare Durable Medical Equipment Medical Regional Contractor (DMAC) for Regions A and B states:

> Negative pressure wound therapy (NPWT) is the controlled application of sub-atmospheric pressure to a wound using an electrical pump to intermittently or continuously convey sub-atmospheric pressure through connecting tubing to a specialized wound dressing which includes a resilient, open-cell foam surface dressing, sealed with an occlusive dressing that is meant to contain the sub-atmospheric pressure at the wound site and thereby promote healing." Tri-Centurion, PSC, Local Coverage Decision, (LCD)

18.  The NPWT pump or vacuum is rented but the supplies are purchased. The supplies needed to support this treatment include a dressing and a canister.

19.  Medicare will only cover treatment using a Negative Pressure Wound Therapy (NPWT) Pump for a period of a maximum of four (4) months unless special clinical circumstances exist and are agreed to by the responsible Durable Medical Administrative Contractor (DMAC).

20.  Medicare coverage ends whenever no measurable degree of wound healing has occurred over the prior month.

//

//

5

21.    Medicare coverage will be denied as not medically necessary if:

"Any measurable degree of wound healing has failed to occur over the prior month. There must be documented in the patient's medical records quantitative measurements of wound characteristics including wound length and width (surface area), or depth, serially observed and documented, over a specified time interval.    The recorded wound measurements must be consistently and regularly updated and must have demonstrated progressive wound healing from month to month." Tri-Centurium, PSC, LCD.

## MEDICARE PRICING FOR V.A.C., KCI'S NEGATIVE PRESSURE WOUND THERAPY DEVICE

22.    The one month KCI V.A.C. rental price is $1,716.46, but in the fourth month the rental price is reduced by 25% (Medicare Code E2402).

23.    The price of one dressing is $27.42 and on average fifteen (15) dressings are used each month (Medicare Code A6550) which results in a $411.30 monthly charge for the dressings.

24.    The price of one canister is $9.54 and on average ten (10) canisters are used each month  (Medicare Code A7000) which results in a $95.40 monthly charge for the canisters.

25.    The monthly cost of the KCI V.A.C. is about $2,223.16 for a typical Medicare patient.

## KCI CERTIFIED PROGRESS

26.    KCI routinely and knowingly certified that progress in wound healing continued when in fact the progress had stalled as indicated by the medical records provided to KCI by the licensed medical professionals caring for the patients.

27.    On or about January 16, 2004, KCI issued a memorandum from Susan Morris, Vice President, Regulatory Policy and Compliance to All Field Personnel, that formally put into place a policy that was in direct contravention with the Medicare criteria currently in place for NPWT.

28.     Ms. Morris' January 16, 2004 memorandum acknowledges the Medicare Durable Medical Equipment Regional Contractor (DMERC) policies in effect, and the failed attempts by KCI to convince DMERC to modify and amend its policies on several issues, including stalled healing.

29.     Ms. Morris' January 16, 2004 memorandum specifically implements a policy that violates the Medicare policy.

30.     Ms. Morris' January 16, 2004 memorandum stated in pertinent part:

> In all cases authorized after clinical review, the cycle without documented improvement will be held pending the outcome of the subsequent cycle. If the subsequent cycle shows significant progress toward wound healing, both cycles will be billed and commissions paid on both cycles. If the subsequent cycle shows no improvement or minimal improvement, both cycles will be billed for automatic denials and no commissions paid on either cycle.

31.     The KCI policy delineated by Ms. Morris in paragraph 30 is known as "stalled healing" at KCI.

32.     According to Medicare DMERC guidelines, if the wound shows no improvement during a cycle, which by Medicare definition is thirty (30) days long, then Medicare coverage ends. There are no exceptions to this Medicare policy. Despite Medicare's policy, KCI implemented and followed the billing scheme outlined in Ms. Morris' memorandum.

33.     On or about January 22, 2004, Carole Lanham, a KCI employee, circulated a draft letter signed by Wayne Schroeder, M.D., Medical Director and Vice President of KCI Medical Department to the Medical Directors of DMERC Regions A, B, C & D. In this letter, Dr. Schroeder summarized KCI's position regarding stalled healing. Dr. Schroeder said that "KCI is prepared to take the risk of allowing patients to remain on NPWT for one month following the "stalled" cycle in order to determine whether healing will restart in the next cycle.

//

//

34.   Dr. Schroeder recommended to the Medical Directors of DMERC Regions A,B, C & D that: "[i]f healing resumes, we request that coverage be approved for both cycles."

## PROOF OF FRAUD

35.   Ginger Green, the Recertification Manager of KCI/MedClaim, a wholly-owned division of KCI, prepared an analysis in October 2006 of records for 2006 to determine the number of thirty (30) day cycles that would be affected and the revenue lost if KCI followed the DMERC standards instead of the policy outlined by Ms. Morris in her January 16, 2004 memorandum. It was determined that KCI would lose about 10% of Medicare revenue, which equates to 1% of total revenue for the Defendant, KCI. In 2006, this number amounted to almost $10 Million dollars as can be seen on the chart below prepared by Ginger Green as part of her analysis.

| Categories | # of patients | # of cycles | % of patients | # of cycles | Action | % of # of patients | % of total # of cycles |
|---|---|---|---|---|---|---|---|
| First stalled, second stalled FPU requested (calculated from adj report) | 1207 | 2414 | 17.23% | 25.12% | Write off both | 25.87% | 33.29% |
| First Stalled, Second stalled ID'd from Ginger's report Column F | 10 | 20 | 0.14% | 0.21% | Write off both | 0.21% | 0.28% |
| First stalled, second improved continued VAC | 1368 | 2736 | 19.53% | 28.47 | Bill both | 29.32% | 37.73% |
| First stalled, DC'd prior to next cycle start date; DC summary indicates positive results | 1002 | 1002 | 14.30% | 10.43% | Bill both | 21.47% | 13.82% |
| First stalled, DC'd prior to next cycle start date; DC summary indicates negative results | 1079 | 1079 | 15.40% | 11.23% | Write off both | 23.12% | 14.88% |

8

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| First stalled, DC'd prior to next cycle start date; unable to determine whether positive or negative (occurred before we changed the system early in 2006 to be able to track) | 1305 | 1305 | 18.63% | 13.58% | NA - we would have to look each one up - about 10 minutes each per Ginger | | |
| First stalled, DC'd prior to next cycle start date; - DC summary form has been requested but not received - decision made - currently in status code 71) | 335 | 355 | 4.78% | 3.69% | NA waiting on DC summary to decide | | |
| First stalled, in process - second date has not rolled around yet. | 699 | 699 | 9.98% | 7.27% | NA - second cycle has not finished yet | | |
| Total: | 7005 | 9610 | 100.00% | 100.00% | | | |
| | | | | | | | |
| Projected annual stalled cycles written off= | | 4656 | ($9,311,800) | | | | |
| Projected annual stalled & subsequent cycles billed= | | 4954 | $9,908,200 | | | | |

36.     Ms. Green's October 2006 analysis shows that Defendant, KCI quantified the potential loss to the company, but also it shows that the Defendant quantified the damage and fraud being perpetrated against the Medicare program and the federal government.

37.     The Defendant, KCI, made no effort to change its policy after Ms. Green computed the potential loss to KCI if Medicare rules were followed by KCI.

38.     In KCI's 2006 10-K report, the company stated:

"From time to time, we have been engaged in dialogue with the medical directors of these various contractors in order to clarify the local coverage policy for NPWT

9

1    [Negative Pressure Wound Therapy] which has been
     adopted in each of the DMAC regions. In some
2    instances the medical directors have indicated that their
     interpretation of the NPWT coverage policy differs from
3    ours. Although we have informed the contractors and
     medical directors of our positions and billing practices,
4    our dialogue has yet to resolve all the open issues. In the
     event that our interpretation of the NPWT coverage
5    policy in effect at any given time does not prevail, we
     could be subjected to recoupment or refund of all or a
6    portion of any amounts in question as well as penalties,
     which could exceed our related revenue realization
7    reserves, and could negatively impact our V.A.C.
     Medicare revenue. Although difficult to predict, we
8    believe the reimbursement issues that continue to be
     discussed with the contractors and their medical directors
9    relate to approximately 1% of our total revenue for
     2006." Page 24; (2006) 10-K Report.
10   (Emphasis added)

11

12        39.    The statement in paragraph 38 from KCI's 10-K Report is not

13   accurate as it suggests that KCI advised the DMERC directors that it was already

14   applying the practice for which it was seeking approval. KCI did not advise

15   DMERC that it was actually billing for stalled months even though the patient's

16   record did not show any improvement in the previous thirty (30) day cycle.

17        40.    The Plaintiff reviewed the records of 1,104 of KCI's V.A.C. patients

18   using KCI's V.A.C. device from January 1, 2007 through June 18, 2007. (Exhibit

19   A) These records establish KCI's systemically fraudulent billing. The patient

20   records contain detailed information on the measurement and change in

21   measurement of the wound under treatment with KCI's V.A.C. device. These

22   records suggest inappropriate billing because the wounds:

23        (1)    were part of the risk-sharing scheme mentioned in the January

24               16, 2004 Morris memorandum;

25        (2)    improved in one measurement but deteriorated in another

26               netting no overall improvement;

27

28   //

(3)   "improved" in such a minute amount that the known inaccuracy
of wound measurement exceeded the improvement;

(4)   had a surface area that was too small to require V.A.C. therapy;

(5)   had a depth that was too shallow to require V.A.C. therapy;

(6)   were improving on their own before V.A.C. placement;

(7)   exceeded the maximum thirty (30) day window between
measurements; or

(8)   the wounds, that were said by KCI billing to have improved,
in actuality, had not improved.

These are the eight major reasons when KCI should not have received Medicare
payment for treatment rendered by the V.A.C. device.  KCI intentionally sought
and received Medicare payment for these patients despite knowing that KCI was
not entitled to receive Medicare payment based upon Medicare standards and
policies.

41.   The following chart is a summary of the 1,104 patient records the
Plaintiff reviewed and shows the months of V.A.C. Therapy billed by KCI which
did not conform to Medicare policy guidelines.  The reason codes for
inappropriate billing delineated in paragraph 40 match the "reason codes" in the
following charts:



**Estimate of KCI's Fraudulently Billed Medicare Dollars in 2007**

Reason Code for $52.5M in Fraudulent Billing

11

The total dollar value of the fraudulent billing in 2007 is estimated to be $52.5 million and is shown by reason code in the following tables.  This projection assumes the value of a fraudulent cycle to be $2000 and 45,000 patients in 2007.

42.    The Defendant has been fraudulently billing Medicare for the V.A.C. device since 2003 and receiving payment from Medicare for these fraudulent bills.

43.    Based on KCI's annual growth of 20% in the V.A.C. Medicare business, it is estimated that the total value of fraudulent billing during the 2003-2007 time frame is $188,400,000.00 as shown in the following graph:



KCI Fraudulent Billing of Medicare 2003 - 2007

44.    During the Plaintiff's review of the patient records, he discovered that many of the wounds receiving treatment were "garden variety" surgical wounds. The Medicare policy did not intend that such uncomplicated wounds would be treated with the V.A.C. The Medicare policy states as follows:

> The patient has complications of a surgically created wound (for example, dehiscence) or a traumatic wound . . . where there is documentation of the medical necessity for accelerated formation of granulation tissue which cannot be achieved by other available topical wound treatments (for example, other conditions of the patient

12

that will not allow for healing times achievable with
other topical wound treatments).  Tri-Centurium, LCD

45.    These "garden variety" surgical wounds represent more than 40% of all wounds in the analysis conducted by the plaintiff and are not included in the earlier estimate of the fraudulent billing contained in paragraph 41.

46.    KCI intentionally and systematically overbilled the Medicare program for the V.A.C. device from 2003 until at least July 2007. The Plaintiff believes that this practice of overbilling continues to this day and estimates that the Defendant KCI defrauded the federal government through the Medicare program of approximately $188 million.  The exact amount will be determined at trial.

## COUNT I

### *(False Claims Act 31 U.S.C. §3729 (a)(1) and (a)(2)*

47.    Plaintiff Hartpence alleges and incorporates by reference the allegations made in paragraphs 1 through 46 of this Complaint.

48.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. §§ 3729-32.

49.    By virtue of the acts described above, the Defendant knowingly presented, caused to be presented and continues to present and to cause to be presented false or fraudulent claims for payment and reimbursement to Medicare, an agency of the United States Government, by knowingly or recklessly billing the United States Government for the V.A.C. device.

50.    By virtue of the acts described above, the Defendant knowingly made, used or caused to be made or used, and continues to make or use or cause to be made or used, false statements to obtain Federal Government payment for false or fraudulent claims because the Defendant falsely certified that its request for reimbursement for the V.A.C. was in accordance with Medicare rules.

13

51.     As set forth in the preceding paragraphs, Defendant violated 31 U.S.C. § 3729 *et seq.*, and has thereby damaged and continues to damage the United States Government by its actions in an amount to be determined at trial.

## COUNT II

### *(False Claims Act 31 U.S.C. §3729 (a)(3))*

52.     Plaintiff Hartpence realleges and incorporates by reference the allegations made in Paragraphs 1 through 51 of this Complaint.

53.     This is a claim for treble damages and for penalties under the False Claims Act, §§ 3729-32.

54.     By virtue of the acts described above, the Defendant defrauded the United States by billing Medicare when the treatment was not in accordance with Medicare rules and guidelines.

55.     The United States, unaware of the falsity of the records, statements and/or claims made by the Defendant and in reliance on the accuracy thereof, paid for the aforementioned false claims because the Defendant intentionally or with gross disregard for the truth billed Medicare for treatment that was not in accordance with Medicare rules and guidelines.

56.     By virtue of the acts described above, the Defendant defrauded the United States.

57.     By reason of these actions and payments, the United States Government has been damaged and continues to be damaged in substantial amounts. The exact amount of the damage is to be determined at trial.

//

//

14

## **PRAYER**

WHEREFORE, Plaintiff/Relator prays for judgment against Defendant as follows:

1.      That Defendant cease and desist from violating 31 U.S.C. § 3729, et seq.;

2.      That this Court enter judgment against the Defendant in an amount equal to three times the amount of damages the United States Government has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. § 3729 *et seq.;*

3.      That Plaintiff/Relator be awarded the maximum amount allowed pursuant to § 3729 (d) of the False Claims Act;

4.      The Plaintiff/Relator be awarded all costs and expenses of this action, including attorney's fees; and

5.      That Plaintiff/Relator recover such other relief as the Court deems just and proper.

## **EXHIBIT LIST OF PLAINTIFF/RELATOR**

## **STEVEN J. HARTPENCE**

1.      EXHIBIT A -   CHART OF BILLING RECORDS

//
//
//
//
//
//

15

Respectfully submitted,

Dated: March 20, 2008          LAW OFFICES OF MARK KLEIMAN


BY: _____
Mark Allen Kleiman
California Bar No. 115919
1640 Fifth Street, Suite 214
Santa Monica, CA 90401
(310) 260-2303
(310) 260-2434 (fax)
Attorneys for Qui Tam
Plaintiff/Relator


## DEMAND FOR JURY TRIAL

Plaintiff/Relator hereby demands trial by jury.

Respectfully submitted,

Dated: March 20, 2008          LAW OFFICES OF MARK KLEIMAN


BY: _____
Mark Allen Kleiman
California Bar No. 115919
1640 Fifth Street, Suite 214
Santa Monica, CA 90401
(310) 260-2303
(310) 260-2434 (fax)
Attorneys for Qui Tam
Plaintiff/Relator

**EXHIBIT  A**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

☐  **VOLUMINOUS DOCUMENT**

☑  **CD, VIDEO, PHOTOS, OTHER, ETC.**

# AVAILABLE IN THE RECORDS

# SECTION OF THE CLERK'S

# OFFICE FOR PUBLIC VIEWING

# CERTIFICATE OF SERVICE

The undersigned certifies that on March 20, 2008, a copy of the foregoing COMPLAINT FOR DAMAGES UNDER THE FEDERAL AND STATE FALSE CLAIMS ACTS and DISCLOSURE STATEMENT  were sent via a reliable source of overnight mail delivery addressed to:

Hon. Michael Mukasey
Attorney General
U.S. Department of Justice
10th & Constitution Ave., NW
Washington, DC  20530

Civil Process Clerk
United States Attorney's Office
300 N. Los Angeles Street
Room 7516
Los Angeles, CA 90012

Mark Allen Kleiman

17

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George King and the assigned discovery Magistrate Judge is Jeffrey W. Johnson.

The case number on all documents filed with the Court should read as follows:

## CV08- 1885 GHK (JWJx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
United States of America, ex rel, Steven J. Hartpence

**DEFENDANTS**
Kinetic Concepts, Inc.

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):
Bexar County

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Mark Allen Kleiman, 1640 Fifth Street, Suite 214, Santa Monica, CA 90401; 310-260-2303

Attorneys (If Known)

Unknown

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No          ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
31 U.S.C. §§ 3729, et seq

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | Habeas Corpus | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ | Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | **BANKRUPTCY** | Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 610 Agriculture | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 442 Employment ☐ 443 Housing/Acco- | ☐ 625 Drug Related Seizure of | ☐ 830 Patent ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 362 Personal Injury- Med Malpractice | mmodations | Property 21 USC 881 | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury- Product Liability | ☐ 444 Welfare ☐ 445 American with | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product | Disabilities - Employment | ☐ 640 R.R. & Truck ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | Liability | ☐ 446 American with | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | | Disabilities - Other | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | | ☐ 440 Other Civil Rights | | **FEDERAL TAX SUITS** |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | |

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s): N/A

**FOR OFFICE USE ONLY:**   Case Number: _____

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

### AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**VIII(b). RELATED CASES:** Have any cases been previously filed that are related to the present case?  ☑ No   ☐ Yes

If yes, list case number(s):  N/A

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or

☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D.  Involve the same patent, trademark or copyright, **and** one of the factors identified above in a, b or c also is present.

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)
☑ Check here if the U.S. government, its agencies or employees is a named plaintiff.

List the California County, or State if other than California, in which EACH named defendant resides.  (Use an additional sheet if necessary).
☐  Check here if the U.S. government, its agencies or employees is a named defendant.
   Texas

List the California County, or  State if other than California, in which EACH claim arose.  (Use an additional sheet if necessary)
Note: In land condemnation cases, use the location of the tract of land involved.

*Los Angeles*

**X. SIGNATURE OF ATTORNEY (OR PRO PER):**  _____   /Mark Allen Kleiman   Date _____   March 20, 2008

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
| --- | --- | --- |
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |