# Exhibit A

Case Nos.
12-55396, 12-56117

<hr>

## In the United States Court of Appeals
## for the Ninth Circuit

<hr>

U.S. ex rel. Steven J. Hartpence
Plaintiff-Appellant,

v.

Kinetic Concepts, Inc., et al.
Defendants-Appellees


U.S. ex rel. Geraldine Godecke
Plaintiff-Appellant,

v.

Kinetic Concepts, Inc., et al.
Defendants-Appellees

<hr>

Appeal from the United States District Court
for the Central District of California,
D.C. No. 08-cv-06403-GHK-AGR
D.C. No. 08-cv-01885-GHK-AGR

The Honorable George H. King, United States District Judge

<hr>

## DECLARATION OF ALTOMEASE R. KENNEDY IN OPPOSITION TO MOTION TO DISQUALIFY RELATORS' COUNSEL DUE TO POSSESSION AND USE OF PRIVILEGED DOCUMENTS AND WORK PRODUCT

Mark A. Kleiman, Esq
LAW OFFICES OF
MARK ALLEN KLEIMAN
2907 Stanford Avenue
Venice, CA 90292
Tel: 310-306-8094 / Fax: 310-306-8491

Altomease R. Kennedy (*Pro Hac Vice*)
McKnight & Kennedy LLC
Lee Plaza, Suite 1010
8601 Georgia Avenue
Silver Spring, MD 20910
Tel:  301-565-5281 / Fax: 301-565-5285

William A. Hritsco
DAVIS, WARREN & HRITSCO
P. O. Box 28
122 E. Glendale Street
Dillon, MT 59725
Tel: 406- 683-2363 / Fax: 406-683-6790

*Attorneys for Plaintiffs-Appellants Steven J. Hartpence and Geraldine Godecke*

**Exhibit A
Page 4**

## <u>DECLARATION OF ALTOMEASE R. KENNEDY</u>

I, Altomease R. Kennedy, hereby declare as follows:

1.      I am co-counsel with Mark Kleiman for Relator Steven J. Hartpence and co-counsel with Mark Kleiman and William Hritsco for Relator Geraldine Godecke. If called upon to do so, could and would testify to the following based upon my firsthand knowledge, except for those matters averred upon information and belief.

2.      Relator Hartpence initially contacted me in July 2007 regarding a potential federal False Claims Act case against Kinetic Concepts, Inc. (KCI). As I routinely do with all potential new clients, I explained to Mr. Hartpence that I could not look at documents that could be considered attorney-client privileged documents nor did I want Mr. Hartpence to tell me what an attorney who was working on behalf of KCI said to him or others.  I asked Mr. Hartpence not to give me documents that could be considered attorney-client privileged documents. I do not recall exactly how I described what constituted an attorney-client privileged document.

3.      I had never heard of KCI or any of its related companies, for example, KCI USA, Inc., that eventually became a defendant in the case before Mr. Hartpence contacted me. Therefore, I have never provided any legal assistance or had any interaction with KCI or KCI USA, Inc.  as a consumer or an attorney.

**Exhibit A
Page 5**

4.    In September 2007, Mr. Hartpence retained me to represent him. I later asked Mark Kleiman to assist me with Mr. Hartpence's case.

5.    Mr. Hartpence was initially hired at KCI as Vice President of Reimbursement Projects and beginning in December 2002; he became the Senior Vice President, Business Services and continued in that position until he left KCI in July 2007. In that position, Mr. Hartpence managed approximately 1,300 of KCI's 6,300 worldwide employees. He managed and restructured the order intake, billing and collection for KCI's entire United States business which varied from $500 million to $1.2 billion during Hartpence's tenure. Hartpence Redacted Corrected Third Amended Complaint (RCTAC) ¶ 10. (Hartpence Dist. Ct. Dkt. 142-1 #1852.)

6.    In accordance with the federal False Claims Act, (FCA) 31 U.S.C. § 3729 et seq., as amended, Mr. Hartpence's case was filed under seal on March 28, 2008 to give the government an opportunity to investigate the allegations. The FCA provides that the government has sixty (60) days to investigate the allegations. (31 U.S.C. § 3730(b)(2)(3))    However, it is not unusual for the government's investigation to last longer than sixty days. In this case, the government requested several extensions of the seal in order to complete its investigation. Therefore, the complaint remained under seal throughout the government's investigation.

**Exhibit A
Page 6**

7.     As counsel for Mr. Hartpence, we were not permitted and did not inform KCI of the existence of the case during the approximately three (3) years that the case was under seal and being investigated by the government.

8.     As part of the government's investigation, Assistant U.S. Attorney Howard Daniels interviewed Mr. Hartpence in the offices of the U.S. Attorney in Los Angeles, California about his allegations that KCI made false statements in order to receive Medicare payments to which it knew it was not entitled resulting in the receipt and overpayment of millions of dollars of government funds. The six (6) separate fraudulent billing schemes were: 1) Risk Sharing, (RCTAC ¶ 99-184), (2) Uncomplicated Surgical Wounds, (RCTAC ¶185-210), (3) No Wound Measurements, (RCTAC ¶211-219), (4) Improvement Without VAC Treatment, (RCTAC ¶220-227), (5) No Real Wound Improvement, (RCTAC ¶ 228-250, and (6) Small Wounds, (RCTAC ¶251-282).  (Hartpence Dist. Ct. Dkt. 142-1 #1852)

9.     During the interview with AUSA Daniels, Mr. Hartpence indicated that he believed that Geraldine Godecke had knowledge about his allegations of Medicare billing fraud for his six unique billing schemes because Ms. Godecke had worked with him on Medicare billing issues while he was employed at KCI. Ms. Godecke had been employed by KCI, at MedClaim, in Dillon, Montana, as Director of Medicare Cash and Collections. Her responsibilities included the creation and administration

3

**Exhibit A**
**Page 7**

of the office that handled KCI's appeals from Medicare's denial of claims for the VAC.

10.     As Senior Vice President, Business Services, Mr.  Hartpence's responsibilities included MedClaim, in Dillon, Montana, the department where Ms. Godecke was employed as Director of Medicare Cash and Collections.

11.     As Ms. Godecke was no longer employed by KCI, the government contacted her during its investigation of Mr. Hartpence's FCA case against KCI.

12.     Ms. Godecke, who lives in Dillon, Montana, came to Los Angeles, California, accompanied by her attorney, William Hritsco, who practices law in Dillon, Montana, and was interviewed by Assistant U.S. Attorney Howard Daniels.

13.     Ms. Godecke, with the advice of her counsel, Mr. Hritsco, asked Mr. Kleiman and me to join with Mr. Hritsco and represent her in her own FCA case which included a retaliation claim against KCI.

14.     An FCA case for Ms. Godecke was filed under seal, on September 29, 2008 in the Central District of California. The Godecke FCA case was filed as a "related" case to the Hartpence complaint and consolidated with the Hartpence case for discovery and pretrial proceedings.

**Exhibit A Page 8**

15.     During the government's three year investigation, the government assigned a "taint reviewer" to review documents in possession of Mr. Hartpence and Ms. Godecke that may be privileged. Assistant U.S. Attorney Kent Kawakami handled the review of the potentially privileged documents.

16.     To minimize the potential of exposure to any attorney-client privilege information, Mr. Kleiman, Mr. Hritsco and I agreed that Mr. Kleiman would handle the transfer of any possible attorney-client privileged documents that Mr. Hartpence and Ms. Godecke may have to the government for the purpose of the government's investigation of Mr. Hartpence's and Ms. Godecke's federal False Claims Act cases. I did not review the documents that Mr. Hartpence and Ms. Godecke turned over to Mr. Kleiman for the purpose of giving potentially privileged documents to the government during the course of the government's investigation of his case.

17.     Relators Hartpence and Godecke were executives at KCI and have had extensive contacts with lawyers – but are not attorneys and have not had any legal training. We relied upon them to use their judgment based upon our instructions as what may be considered an attorney client privileged document as they reviewed their documents.

18.     It's my understanding that the government contacted and met with KCI during its three year investigation but did not formally notify KCI that two

Exhibit A
Page 9

FCA cases had been filed nor did the government identify Mr. Hartpence or Ms. Godecke as relators.

19.     On April 27, 2011, the government declined to intervene in the cases and KCI was served with the Hartpence and Godecke complaints on May 26 and 27, 2011.

20.     On June 7, 2011 counsels for KCI, Mr. Hartpence, and Ms. Godecke had a telephone conference during which KCI's counsel requested that Mr. Hartpence return all KCI documents in his possession.  KCI's lead counsel, sent a letter repeating this on June 8, 2011.  Just two days later Mr. Kleiman responded and offered to send the documents to KCI's counsel, asking if they wanted a flash drive messengered to their office, or if they wanted Mr. Kleiman to use a secure internet file transfer site.  KCI did not respond to this inquiry.

21.     On June 21, 2011, counsels for KCI, Mr. Hartpence and Ms. Godecke had a telephone conference call

in which KCI's counsel requested that Mr. Hartpence and Ms. Godecke return all KCI documents in their possession reflecting attorney client communications. Mr. Hritsco was in trial and did not participate in the teleconference.

22.     As a follow-up to the June 21, 2011 teleconference, on June 23, 2011, Mr. Kleiman wrote a letter to Gregory M. Luce, Esq., counsel for KCI, in which Mr.

Exhibit A
Page 10

Kleiman provided KCI's counsel with electronic copies of the six documents which
Mr. Hartpence believed reflected attorney client communication in his possession.
These six (6) documents ultimately appeared on KCI's first privilege log, Table 1 as
Documents 52 -58. (Hartpence Dist. Ct. Dkt. 81-1 #1109) Mr. Kleiman also told Mr.
Luce that Mr. Hartpence had in his possession some attorney work product; a basic
brief (including exhibits) prepared by Donna Thiel, Esq., entitled "Pre Hearing Brief
in Support of Appeals." Mr. Kleiman promised to secure a copy of the brief and
forward it to Mr. Luce. (Exhibit A, June 23, 2011 Kleiman letter to KCI) I did not
see the six Hartpence documents Mr. Kleiman sent to KCI's counsel.

23.     In Mr. Kleiman's June 23, 2011 letter, Mr. Kleiman stated that Ms.
Godecke had "sixty-two documents that reflected attorney-client communications
(although we dispute their privileged nature). . ." Mr. Kleiman proposed that he
would prepare a CD of Ms. Godecke's 62 documents. These 62 documents ultimately
appeared on KCI's first privilege log, Table 1 as Documents 1 - 52. (Hartpence Dist.
Ct. Dkt. 81-1 #1109) (Exhibit A, June 23, 2011 Kleiman letter to KCI) I did not see
the 62 Godecke documents that Mr. Kleiman sent to KCI's counsel.

24.     On October 13, 2011, KCI filed a Motion for Return of Confidential
Documents and to Disqualify Relator's Counsel Due to Possession of Privileged
Documents and Attorney Work Product. ( Hartpence Dist. Ct. Dkt. 81 #1073)

7

25.     On October 24, 2011, Relators Hartpence and Godecke filed Oppositions to Defendants' Motion for Return of Confidential Documents and to Disqualify Relators' Counsel Due to Possession of Privileged Documents and Attorney Work Product. (Hartpence Dist. Ct. Dkt. 86, #1265, Godecke Dist. Ct. Dkt. 67 #1150)

26.     On August 3, 2012, Mr. Kleiman on behalf of Mr. Hartpence sent to KCI's counsel two (2) CDs: (1) labeled "Geri's electronic files" and (2) labeled "Hartpence's files Copy #2" and the "originals of all paper documents Mrs. Godecke had given to Mr. Hartpence." (Exhibit B, August 3, 2012 Kleiman letter to Matthew Sloan) I was provided a duplicate of the two CDs that Mr. Hartpence provided Mr. Kleiman which contained these documents which I intentionally did not review or copy.  As a result of the Magistrate Judge's November 9, 2012 order regarding privileged documents, I destroyed the two CDs. See, Hartpence Dist. Ct. Dkt. 139 #1826, Declaration of Altomease Kennedy.

27.     On August 3, 2012, Mr. Kleiman provided KCI's counsel with "originals of all paper documents Mrs. Godecke had given to Mr. Hartpence." Mr. Hartpence estimates that he turned over to KCI approximately 800 pages of hard copy documents. I was never provided a copy of those 800 documents and did not review them. Mr. Hartpence did not retain any copies of the 800 hard copy documents.

Exhibit A
Page 12

28.     In compliance with the Magistrate Judges November 9, 2012 ruling on the privileged documents, (Hartpence Dist. Ct. Dkt. 125, #1713, Godecke Dist. Ct. Dkt. 129, #1874) with the assistance of Mr. Hartpence, I deleted all references to the four (4) documents the Magistrate Judge ruled were privileged that were included in the various Hartpence complaints. The Magistrate Judge ruled that Documents 52, 53, 54 and 55 from Table 1- Godecke Log and Hartpence Log were privileged. I prepared redacted complaints and requested that the Court substitute the redacted complaints for the original filings and seal the original complaints. (Hartpence Dist. Ct. Dkt. 81-1 #1109)

29.     I assisted in drafting the complaints in this case. The Magistrate's decision, Hartpence Dist. Ct. Dkt. 125 held that Document 53 on Table 1 – Godecke Log and Hartpence Log, was covered by the attorney-client privilege. Document 53 on Table 1 is described as a "communication from KCI general counsel's secretary to KCI general counsel and employees forwarding draft letter to DMERCs." The draft letter was the attachment to the "communication from the secretary to KCI general counsel."   Hartpence was one of several non-attorney employees who received the draft letter. Item 53 without the covering communication from the General Counsel's secretary appeared as Exhibit 7 in Hartpence's Corrected Third Amended Complaint (CTAC). During the course of drafting the complaint, I reviewed Item 53/Exhibit 7.

**Exhibit A
Page 13**

Item 53/CTAC Exhibit 7 was not marked as "Attorney Client Privilege" or "Confidential." The letter was a draft that appeared to be prepared by KCI's Medical Director and not by an attorney. I didn't think it was a privileged document nor did I know that it was one of the documents Mr. Hartpence had identified as potentially privileged.

30.     In the November 30, 2012 telephonic hearing, the Magistrate stated Item 53/CTAC Ex. 7 was privileged because it was a draft but the final copy of the same letter would not be privileged. (Ex. C, Nov. 30, 2012 Transcript, p.18)

31.     KCI provided the final copy of Item 53/CTAC Ex. 7 to the government during the government's investigation of the Hartpence and Godecke FCA cases.

32.     During the government's investigation of the case, the government permitted Mr. Hartpence, Ms. Godecke and their counsels to review the documents KCI turned over to the government. We were permitted to take notes about the documents but we were not permitted to copy the documents.

33.     Mr. Hartpence's notes indicate that the final copy of Item 53/CTAC Ex. 7 was included in the KCI documents given to the government during the investigation. The document can be found at CD 6, KCI-NC-003, Images 7662 – 7670)

34.     The Magistrate Judge 's decision, (Godecke Dist. Ct. Dkt. 133 #1893), held that Item 52 on Table 1 was privileged. Item 52 is described as "Draft 1.6 of Field Memo on VAC Documentation review guidelines." References to this document were included in the Hartpence Corrected Third Amended Complaint (CTAC). The draft document did not have "Attorney Client Privilege" or "Confidential" on the face of the document. The author of the document was a KCI executive who was not an attorney. I did not think that this was a privileged document. Mr. Hartpence's notes from his review of the documents KCI provided to the government in the course of its investigation indicate that the final copy of this document was provided to the government during the government's investigation. The final document can be found at KCI-NC-002, Image 6420 – 6422 in the government's files.

35.     In addition, both Mr. Hartpence and Ms. Godecke remember receiving a final copy of this document while still employed by KCI and shared that information with me. Document 52 in its final form was distributed to approximately 500 KCI employees. See, Hartpence Dist. Ct. Dkt. 127 #1742, Hartpence's Declaration, Hartpence Dist. Ct. Dkt. 127 #1739, Godecke Declaration.

36.     With the assistance of Mr. Hartpence, I deleted all references to Item 52 from the Hartpence complaints. I saw this document and have deleted it from my files.

37.     The Magistrate's decision, Hartpence Dist. Ct. Dkt. 125 #1713 held that Document 54 on Table I was privileged. Reference to Item 54 appeared at paragraph 271 in the Hartpence CTAC. With Hartpence's assistance I deleted all references to Item 54 from the Hartpence complaints.

38.     Mr. Hartpence stated that document 54 was an email that was prepared by him in his capacity as KCI Senior Vice President for Business Systems nearly four years before he filed his FCA case. He calculated how much money KCI would lose if KCI accepted the minimum wound size requirements proposed by the DMERC Medical Directors during joint discussions with KCI about revising the Medicare rules known as LCDs. He says that he was not asking for legal advice. He says that this was strictly a business question. See, Hartpence Dist. Ct. Dkt. 127 #1740, Declaration of Steven J. Hartpence.

39.     The Magistrate's decision, Hartpence Dist. Ct. Dkt. 125 #1713, held that Document 55 on Table I was privileged. Reference to Item 55 appeared in the Hartpence CTAC. With Hartpence's assistance I deleted all references to Item 55 from the Hartpence complaints.

40.     Mr. Hartpence's notes indicate that the final copy of Item 55 was provided to the government by KCI during the government's investigation. The document can be found at CD 5-KCI-TX-004, Images 14-16, Doc 2, CD4-KCI-NC-002, Images 5008-5090 in the documents that KCI supplied to the government in the course of the investigation of these cases.

41.     The Magistrate's decision, Hartpence Dist. Ct. Dkt. 125 #1713, held that Item 57 was privileged. The reference to Item 57 was deleted from the Third Amended Complaint (TAC) which caused the filing of the CTAC. I have never seen a copy of this document although I am familiar with the reference.

42.     As a result of the Magistrate's ruling on privileged documents, I redacted references to these four (4) documents from Mr. Hartpence's complaints. I made redactions in only eighteen (18) paragraphs of a 286 paragraph complaint. Seven of the 18 paragraphs only needed to be partially redacted as a result of the Magistrate Judge's ruling.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.


Dated: December 21, 2012                    By:/s/ Altomease R. Kennedy
                                                 Altomease R. Kennedy


13

**Exhibit A**
**Page 17**

# EXHIBIT "A"

# LAW OFFICES OF MARK ALLEN KLEIMAN

LAWYER

2907 STANFORD AVENUE
VENICE, CALIFORNIA 90292

TELEPHONE  (310) 306-8094
FACSIMILE   (310) 306-8491

*Mark A. Kleiman*
MKLEIMAN@QUITAM.ORG

*Pooja Rajaram*
PRAJARAM@QUITAM.ORG

June 23, 2011

***VIA ELECTRONIC MAIL***

Gregory M. Luce, Esq.
Skadden, Arps, Slate, Meagher & Flom
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
greg.luce@skadden.com

Re:   U.S. ex rel Hartpence v KCI, et al.
2:08-cv-01885 GHK (CD-CA)

Dear Mr. Luce

This letter is intended to memorialize the items discussed during our telephone call of June 21.

You inquired about the number of documents reflecting attorney client communications which Mr. Hartpence had.  I confirmed that the six documents we had previously enumerated were the only six documents reflecting attorney client communication in his possession. I also informed you that shortly after KCI fired him, Mr. Hartpence was told that KCI would send someone to his home to pick up documents and other company property he had there, but that no one ever came.

For purposes of completeness I also told you about some attorney work product he had which had been given him by Ms. Godecke. The material in question was the basic brief (including exhibits) prepared by Donna Thiel, Esq., who was then at Latham and Watkins,  entitled "Pre Hearing Brief in Support of Claims Submitted by Appellant, Kinetic Concepts Inc. Before the Office of Medicare Hearings and Appeals." As best we can tell it is a generic compilation that was used in many, if not all of KCI's Medicare appeals. As we discussed no one has an electronic copy of this document. However, I am securing one of the paper copies and will forward it to your office.

We discussed your request that we electronically forward the six documents Mr. Hartpence has reflecting attorney client communications. Along with this letter, which is being sent electronically, I am attaching that file. I stated that before sending it electronically, I had wanted to discuss with you whether your client required that it be transmitted via a secured FTP site, or whether email transmission was acceptable.  I had wanted to discuss that because arguments have been raised in past cases that using unsecured email to transmit documents somehow waived claims about the documents' ostensibly privileged character.  I assured you that the Relators would not take the position that KCI's consent to have this document transmitted via electronic mail somehow constituted a waiver of KCI's claims that the documents

Gregory M. Luce
June 23, 2011
Page Two

enjoy privileged status. (Although we dispute their privileged status, that dispute is based upon other grounds, and not on the grounds that KCI has requested that we use an unsecured form of transmission.) You told me that transmission via electronic mail was sufficient.

We briefly touched on attorney-client communications which Ms. Godecke had. I explained to you during our call, as I had in previous emails, that Mr. Hritsco was in trial, and that Ms. Kennedy and I were not comfortable having a detailed discussion about Ms. Godecke's documents without him. (I have since been able to confirm that he is available on Monday, June 27, and I would propose any time after 2 p.m. Eastern.) While not going into details about Ms. Godecke's case without him, I was able to confirm to you that (a) Ms. Godecke has sixty-two documents that reflected attorney-client communications (although we dispute their privileged nature), and (b) None of the documents were used in preparing any of Ms. Godecke's or Mr. Hartpence's pleadings. I offered to return the documents to you electronically. We discussed the fact that sending sixty-two attachments via email was cumbersome and apt to lead to confusion. I offered to transmit the documents via a secured, commercial FTP site I use. Mr. Oprison of your firm has provided me with a memorandum containing three pages of instructions on how to accomplish this. The instructions apparently require that I be willing to install Skadden software on my firm's computer. This is a two-person office. I do not have a "Law Technology Department" that can guarantee the security of my systems and this just strikes me as a bad idea. Since we are talking about files small enough to easily fit on a CD, I would propose that I simply burn them onto a CD and send it to you.

I raised the question of the content of ¶171 of Mr. Hartpence's Third Amended Complaint. I reminded you, as I had stated in my immediately prior letter to you, that although Mr. Hartpence had intended the last sentence in this paragraph to quote from documents KCI had previously submitted to Medicare (copies of which had been produced by KCI to the Department of Justice), he had inadvertently used language from a draft containing very similar language, which draft had been forwarded (or written) by one of KCI's company lawyers. I offered to file a notice of errata with the Court, indicating that ¶171 should actually end after the existing phrase, "[T]his was rejected as too straightforward.". You stated that you wanted a couple of days to mull this over.

When I asked how you had handled issues of this nature which had arisen in your practice before, you said that you had filed motions to strike the offending language. Such a motion is not necessary here because we agree that the language referred to in ¶171 should be removed; and we are filing a Notice of Filing a Corrected Third Amended Complaint to achieve that goal. A courtesy copy of that Notice accompanies this letter. Out of an abundance of caution the Notice of Filing a Corrected Third Amended Complaint will cover a similar redaction of two lines in ¶241 which describe KCI's use in Medicare appeals hearings of a passage in a book that was referenced in Ms. Thiel's material. Although we know that this portion of the book was specifically cited in the Medicare appeals hearings, some of our information is derived from Ms. Thiel's brief and we wished to err on the side of caution. We do not agree that a 91-page complaint should be entirely sealed when removing four lines from that complaint would give KCI the protection it says that in needs. The Corrected Third Amended Complaint has been received by the court and as soon as it is deemed filed, we will stipulate that the previously filed Third Amended Complaint may be sealed. Please contact me so that we have sufficient time to work out agreed language for the stipulation.

Gregory M. Luce
June 23, 2011
Page Three

More generally, I briefly discussed the other things you had requested in your letter of June 11, 2011. I explained to you that I did not believe that the California state authority you cited in that letter was controlling in a case over which Article III courts exercised original jurisdiction, and that I believed that federal common law controlled. I told you that this was a new issue to Relators' counsel and that we wanted to prudently discharge our duties to our clients, as well as to you and to the courts, and that this prudence was going to require research on our part. I explained that we had nearly six hundred pages of secondary source material and case analyses to digest, and that the issues were complicated by the factual setting. I pointed out, by way of example, that although the questions you had posed in your June 11 letter were reasonable, answers to some of them could not be given without implicating the privilege jointly claimed by the Department of Justice, as well as the Relators, and that this would require some sorting out and consultation with the Government. I also pointed out that your request for the immediate return of *all* documents reflecting attorney client communications would, if honored, prevent anyone on our team from fully reviewing the two complaints, which between them comprise over one hundred fifty pages, to ensure that we have fully accounted for any possible derivative use of the materials in the pleadings. I proposed that as soon as that review was completed, that you and I agree as to some mutually acceptable third party to act as a sort of escrow agent, and to hold onto the documents pending further instruction from the court. The review was completed this morning, so the next step is to consider how the documents are to be preserved pending judicial evaluation of KCI's claims of privilege and our disputes as to whether privilege attaches, and our further claims that privileges which may have attached have been waived.

Lastly, you renewed KCI's request that the Relators stipulate to unsealing of the previously filed complaints. I replied that in our view the "relation back" doctrine obviated the need for unsealing the prior complaints, but that we were open to carefully reviewing any authority you might advance in support of your position.

If you think I've omitted anything material, or that I've gotten any of this wrong, please let me know.

Sincerely,

Mark Kleiman

MAK/prs

Attachments

# EXHIBIT "B"

# LAW OFFICES OF MARK ALLEN KLEIMAN

LAWYER

2907 STANFORD AVENUE
VENICE, CALIFORNIA 90292

TELEPHONE   (310) 306-8094
FACSIMILE   (310) 306-8491

*Mark A. Kleiman*
MKLEIMAN@QUITAM.ORG

*Pooja Rajaram*
PRAJARAM@QUITAM.ORG

August 3, 2012

*VIA MESSENGER*

Matthew E. Sloan
Skadden, Arps, Slate, Meagher & Flom
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Re:   U.S. ex rel Godecke v KCI, et al.
      2:08-cv-6403 GHK (CD-CA)

Dear Mr. Sloan:

This letter accompanies all of Mr. Hartpence's material described in Magistrate Judge Rosenberg's order.

1.   A CD labeled "Geri's electronic files" is all of the electronic documents given to Mr. Hartpence by Mrs. Godecke.

2.   A CD labeled "Hartpence files Copy # 2" which is all of the electronic files and pdfs of paper files that were in Mr. Hartpence's possession when he left KCI. This does not contain duplicates of the six electronic files comprising attorney-client communications which we provided you last year.

3.   The originals of all paper documents Mrs. Godecke had given to Mr. Hartpence.

Sincerely,

Mark Kleiman

MAK/prs
Enclosure

R E C E I P T

Received August 3, 2012 by: _____   (signature)

MAX FRANCO   (print name)

**Exhibit A
Page 23**

# EXHIBIT "C"

1

1

2                    UNITED STATES DISTRICT COURT

3                   CENTRAL DISTRICT OF CALIFORNIA
                          WESTERN DIVISION

4
   UNITED STATES OF AMERICA,      )
5  EX REL., STEVEN J. HARTPENCE,  )
                                  )
6        PLAINTIFF,               )
                                  )
7        VS.                      )  CASE CV 08-01885-GHK(AGR)
                                  )
8  KINETIC CONCEPTS, INC.,        )  LOS ANGELES, CALIFORNIA
   ET AL.,                        )  NOVEMBER 30, 2012
9                                 )  (1:59 P.M. TO 2:53 P.M.)
         DEFENDANTS.              )
10 _____)
   UNITED STATES OF AMERICA,      )
11 EX REL., GERALDINE GODECKE,    )
                                  )
12       PLAINTIFF,               )
                                  )
13       VS.                      )  CASE CV 08-06403-GHK(AGR)
                                  )
14 KINETIC CONCEPTS, INC.,        )
   ET AL.,                        )
15                                )
         DEFENDANTS.              )
16 _____)

17                      TELEPHONIC CONFERENCE
                BEFORE THE HONORABLE ALICIA G. ROSENBERG
18                 UNITED STATES MAGISTRATE JUDGE

19 APPEARANCES:             SEE NEXT PAGE

20 COURT REPORTER:          RECORDED; COURT SMART

21 COURTROOM DEPUTY:        MARINE POGOSYAN

22 TRANSCRIBER:             DOROTHY BABYKIN
                            COURTHOUSE SERVICES
23                          1218 VALEBROOK PLACE
                            GLENDORA, CALIFORNIA  91740
24                          (626) 963-0566

25 PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

**Exhibit A
Page 25**

18

1   THE DOCUMENT BECAUSE WE DIDN'T KEEP IT.  WE DIDN'T COPY IT.

2            THE COURT:  WELL, IN TERMS OF THE COURT'S ORDER,

3   THE ORDER IS, YOU KNOW, SOMEWHERE -- I'VE FORGOTTEN EXACTLY

4   WHICH PAGE, BUT I MENTIONED THAT THE DRAFTS WOULD BE

5   PRIVILEGED EVEN IF THE FINAL VERSIONS WERE -- END UP BEING

6   DISTRIBUTED PUBLICLY OR TO THE GOVERNMENT OR SOME OTHER

7   ENTITY OR PERSON.

8            SO, I THINK ONE OF YOUR REQUESTS WAS FOR

9   CLARIFICATION AS TO WHETHER THE COURT'S FINDING AS TO

10  PRIVILEGE APPLIED TO THE FINAL VERSION OF THE DOCUMENT.  AND

11  IT CLEARLY DOES NOT.  THE FINAL VERSION APPEARS TO HAVE BEEN

12  DISSEMINATED TO OTHER PEOPLE.  I DON'T THINK THERE'S ANY

13  DISPUTE ABOUT THAT.  AND, SO, THE FINAL VERSION IS NOT

14  SUBJECT TO PRIVILEGE, BUT THE DRAFTS WOULD BE.  AND THAT'S

15  ALL THAT THE ORDER WAS GETTING AT.

16           MR. KLEIMAN:  OKAY.  ALL RIGHT.

17           THE COURT:  NOW, WHETHER THEY ARE THE SAME OR NOT,

18  I REALLY DON'T KNOW.  I DON'T HAVE THE FINAL VERSION IN THE

19  RECORD.  I DON'T KNOW THAT IT WOULD MAKE ANY DIFFERENCE

20  REALLY.  I THINK THAT -- I DON'T SEE ANY BASIS TO CHANGE THE

21  ORDER.  IT WOULD NOT APPLY OBVIOUSLY TO THE FINAL VERSION,

22  BUT THE DRAFTS WOULD STILL BE PROTECTED.

23           AND THERE'S NO EVIDENCE HERE THAT THE DRAFT WAS

24  GIVEN TO THE GOVERNMENT AS OPPOSED TO THE FINAL VERSION.  SO,

25  I DON'T REALLY SEE ANY BASIS TO CHANGE THE RULING ON DOCUMENT

**Exhibit A**
**Page 26**

| 9th Circuit Case Number(s) | 12-55396, 12-56117 |

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*************************************************************************

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | December 21, 2012 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/ Mark Allen Kleiman |

*************************************************************************

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) | |

**Exhibit A**
**Page 27**

# Exhibit B

1                UNITED STATES DISTRICT COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3

4   UNITED STATES OF AMERICA,     ) Case No. CV08-6403-GHK(AGRx)
    et al.,                       )            CV08-1885-GHK(AGRx)
5                                 )
                                  )
6           Plaintiffs,           )
                                  )
7   vs.                           )  Los Angeles, California
                                  )
8   KINETIC CONCEPTS, INC.,       )  Tuesday, February 26, 2013
                                  )
9           Defendant.            )  (10:16 a.m. to 12:25 p.m.)
    _____)  (1:28 p.m. to 2:16 p.m.)

10

11

12                 TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE ALICIA G. ROSENBERG
13              UNITED STATES MAGISTRATE JUDGE

14

15  Appearances:                  See next page.

16  Court Reporter:               Recorded; CourtSmart

17  Courtroom Deputy:             Marine Pogosyan

18  Transcribed by:               Shonna Mowrer
                                  Echo Reporting, Inc.
19                                6336 Greenwich Drive, Suite B
                                  San Diego, California 92122
20                                (858) 453-7590

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

*Echo Reporting, Inc.*

2

1  APPEARANCES:

2  For Geraldine Goedecke:        MARK A. KLEIMAN, ESQ.
                                  Mark Allen Kleiman Law Offices
3                                 2907 Stanford Avenue
                                  Venice, California  90292
4                                 (310) 306-8094

5                                 WILLIAM A. HRITSCO, ESQ.
                                  Davis, Warren & Hritsco
6                                 122 East Glendale Street
                                  Box 28
7                                 Dillon, Montana  59725
                                  (406) 683-2363
8
                                  ALTOMEASE R. KENNEDY, ESQ.
9                                 McKnight & Kennedy
                                  8601 Georgia Avenue
10                                Suite 1010
                                  Silver Springs, Maryland
11                                  20910
                                  (301) 565-5281
12
   For Kinetic Concepts, Inc.:   MATTHEW ERIC SLOAN, ESQ.
13                                Skadden, Arps, Slate, Meagher
                                    & Flom, LLP
14                                300 South Grand Avenue
                                  Suite 3400
15                                Los Angeles, California  90071
                                  (213) 687-5600
16
                                  CHRISTOPHER G. OPRISON, ESQ.
17                                GREGORY M. LUCE, ESQ.
                                  Skadden, Arps, Slate, Meagher
18                                  & Flom, LLP
                                  1440 New York Avenue NW
19                                Washington, DC  20005
                                  (202) 371-7000
20

21

22

23

24

25

40

1  Q    And among those would have been your e-mails from

2  your -- was it an Outlook account?

3  A    Uh-huh.

4  Q    And you went through and just made a mass downloading

5  of those e-mails, didn't you?

6  A    No, I did not.

7  Q    Which e-mails did you target?

8  A    I targeted 2007, the last part of 2007, a small amount

9  of 2006, 2005, some of it, and some miscellaneous stuff that

10 got in there from other files.  I did not just do a massive

11 download.

12 Q    Well, you said the latter part of 2007.  You were

13 gone --

14 A    Well, the latter part of my stay in 2007.

15 Q    I just want to be clear about that.  Time frame-wise.

16 And it was --

17 A    Yes.

18 Q    -- periods throughout --

19 A    My end of 2007 with KCI.

20 Q    Periods of 2007, you had downloaded e-mails.  From

21 which senders and which e-mails that you had sent to other

22 recipients?  Which individuals that you would have

23 downloaded e-mails for?

24 A    They were just my e-mails.  I didn't download anything

25 other than my e-mails.  No other documents.  Just the e-

41

1 mails in the relevant time frames.

2 Q    And that would have been e-mails from people like Donna

3 Thiel, correct?

4 A    Correct.  I worked with Donna on a regular basis.

5 Q    That would have been e-mails including Kay Barren's

6 (phonetic) e-mails?

7 A    Yep.

8 Q    How about Lori Enbellion (phonetic) e-mails?

9 A    Who did she work for?

10 Q    I believe she was -- she worked with Seth Lundy

11 (phonetic).

12 A    Then yes.

13 Q    Seth Lundy's e-mails?

14 A    Yes.

15 Q    Stuart Perlander's (phonetic) e-mails?

16 A    Yes.

17 Q    Esther Sherb e-mails?

18 A    Yes.

19 Q    Steve Seidel (phonetic) e-mails?

20 A    Yes.

21 Q    Dennis Knoll (phonetic) e-mails?

22 A    I don't know if I had any -- I don't know if I had any

23 interaction with Dennis.  I don't know.  Maybe.

24 Q    Was he -- I'm sorry.  I didn't mean to interrupt.

25      Was he the general counsel at the time you were

42

1  terminated?

2  A    That I don't know.  I don't believe so.  I believe he

3  was in a philanthropist position.

4  Q    What about Brett Kramer?  His e-mails?

5  A    Where did he work?

6  Q    It was in-house.

7  A    Maybe one or two.  I didn't work with him.  If he was

8  copied on something maybe.

9  Q    And to be clear, when you downloaded e-mails, Ms.

10 Goedecke, it was not just the e-mails, but it was also any

11 attachments that would have been attached to those e-mails?

12 A    Correct.

13 Q    And you knew when you downloaded those e-mails that

14 those individuals were counsel either inside the company or

15 outside counsel?

16 A    That's the reason I was very, very, very stingy with

17 Sharon or with anybody.  I was very well aware of that.  I

18 did not share them with my counsel.  I didn't share them

19 with the other people I talked to.  It's the reason that we

20 couldn't go forward, is I -- yes, I did know that, and I

21 know that it was involved in a fraudulent situation.

22 Q    Just answer my question, Ms. Goedecke.  You knew when

23 you downloaded those e-mails that those individuals were

24 attorneys either inside the company or outside the company.

25 A    Yes.

43

1  Q     Thank you.

2        When did you start downloading data from your thumb

3  drive to your laptop?

4  A     It would have been in the same time period, I believe.

5  Q     Have you used the same -- a personal laptop, I'm

6  talking about.

7  A     Uh-huh.

8  Q     Did you use the same personal laptop the entire time

9  you were at KCI?

10 A     That I don't -- I don't know.  That was a long time

11 ago.  I don't know that.  I do know that that was the laptop

12 I put that information on, and I put the laptop away.  I

13 didn't access the information on there.  I used that as a

14 hard drive, a storage unit.

15 Q     Who else has access to that laptop?

16 A     I suppose anybody in my house, my home.

17 Q     Do you use it for personal affairs as well?

18 A     I did.

19 Q     Business?

20 A     I did.

21 Q     So your husband Paul would have had access to that

22 laptop hard drive as well?

23 A     I wish he would have.  No, he didn't ever open that.  I

24 do all the books.  He wouldn't have opened that laptop.

25 Q     So if I was to tell you we had e-mails that were

46

1  e-mail.

2  A     Correct.

3  Q     It could have been a privileged e-mail.  And moved it

4  somewhere else on your laptop?

5  A     I'm not -- I don't believe I moved any privileged.  I

6  moved spreadsheets, and the spreadsheets didn't come up as

7  privileged.

8  Q     I didn't ask about privilege.  I said attachments to

9  privileged e-mails.  You would move those or copy them to

10  elsewhere on your laptop?

11  A     I thought I just answered that.

12  Q     Well, maybe I just need clarification, then.

13  A     Okay.

14  Q     Did you take and copy attachments to e-mails that you

15  had downloaded from the company and move them to other files

16  on your laptop?

17  A     Yes.

18  Q     How often did you do that?

19  A     I did it when we were -- twice.

20  Q     When?

21  A     When we were trying to come up with the damages for our

22  case.

23  Q     Who is "we"?

24  A     Steve Hartpence and myself.

25  Q     You worked with Steve Hartpence on examining KCI's

47

1  documents that you had on your laptop to determine the

2  damages figure?  Is that what you said?

3  A    Yes.

4  Q    You shared some of those documents with Mr. Hartpence,

5  didn't you?

6  A    Yes.

7  Q    At what times or at what points in time, if you recall,

8  did you actually share documents with Mr. Hartpence?

9  A    At the -- excuse me.  At the beginning of -- I think it

10 was in October of 2008.  I sent him a CD with documents on

11 it.

12 Q    What documents were those?

13 A    I don't know.  I mean, they were documents that were

14 relevant to his case.

15 Q    Who made the determination that they were relevant to

16 his case?

17 A    I did.

18 Q    You went back through and looked at e-mails and

19 attachments to determine whether or not they were relevant

20 to the claims that he had raised in his complaint?

21 A    I went back to the documents, and at that time, how I

22 viewed it was that they were relevant to the case.  That was

23 what I was instructed to do.

24 Q    Instructed by whom?

25 A    USA Howard -- I don't remember his name.  The Assistant

48

1  Attorney General Howard.

2  Q    The Assistant U.S. Attorney Howard Daniels?

3  A    Yes.

4  Q    And when did he ask you to do this?

5  A    Before I even -- before I even filed the case.  He

6  contacted me, tried to get me to respond to him.  I did not

7  respond to him for quite some time.  He wanted me to come

8  and talk to him, and so I did.

9       And at that time, he asked me what I had that was

10 relevant and to provide it, so I did.  Before I even --

11 yeah.

12 Q    When he indicated that you were to provide these

13 documents to Mr. Hartpence, he didn't give you any

14 instructions, did he, on not looking at -- not sharing or

15 not examining any of KCI's privileged documents, did he?

16 A    He did not, but my counsel did.  I said, don't show us

17 any of the privileged documents.  Don't show Howard.  Don't

18 show the people at -- wherever we were.  I mean, Steve was

19 not -- was not off limits to sharing the documents with.

20 Q    But in fact, you did share privileged e-mails with Mr.

21 Hartpence, didn't you?

22 A    At the time, I don't know which ones were considered

23 privileged at that time that I shared with him.

24 Q    Well, there were e-mails that had Donna Thiel on them,

25 weren't they?

60

1 it's the second sentence.  It's three lines down.  It

2 begins, "I don't" -- It reads:

3             "I don't know where you get or got

4         your information, but I took nothing

5         from KCI after I was fired."

6 A    Correct.

7 Q    Is that what you wrote?

8 A    Correct.

9 Q    That was false at the time you wrote it, correct?

10 A    I don't know what you mean by that.

11 Q    You took KCI privileged documents when you left KCI's

12 employment, true?

13 A    I took them before I left.

14 Q    You took KCI privileged documents when you were

15 terminated from KCI's employment, true?

16 A    I did, yes.  When I was terminated and before.

17 Q    So you knew that this letter that you sent back to Mr.

18 Luce was misleading, didn't you?

19 A    I didn't -- I was just speaking from my reaction to his

20 letter to me.

21 Q    Who told you, Ms. Goedecke, that you didn't have to

22 return documents, privileged documents to KCI?

23 A    I don't know who told me that at this juncture.

24 Q    Were you acting alone or were you going on somebody

25 else's counseling advice?

61

1  A    At this juncture, I really was acting on my own,

2  understanding what privileged documents were and that I was

3  not going to show them to anybody.

4  Q    Did you ever notify your counsel that you had received

5  a letter from Mr. Luce?

6  A    Yes, I did.

7  Q    Did you have a discussion with your counsel about that

8  letter?

9       MR. KLEIMAN:  Objection.  Attorney/client

10 privilege.

11      MR. OPRISON:  Your Honor, I believe it's --

12      THE COURT:  You can answer yes or no, but you do

13 not disclose the content of your conversation.

14 BY MR. OPRISON:

15 Q    Did you have a conversation with your counsel about Mr.

16 Luce's letter?

17 A    Yes.

18      MR. OPRISON:  Your Honor, we would typically not

19 go into this area, understanding that there might be some

20 privilege issues, but we believe Ms. Goedecke has waived

21 this by her statements and her declaration and statements

22 all along regarding what she understood her obligations were

23 and what materials she had disclosed to her counsel.

24      THE COURT:  I don't see a waiver of this

25 statement.  I mean, she stated that she discussed the

62

1 letter, but she's also not disclosed the content of what

2 that discussion was.

3 BY MR. OPRISON:

4 Q    After your discussion with your counsel, you didn't

5 return any of those documents to KCI, did you?

6 A    No.

7 Q    Now, Ms. Goedecke, you -- I'd like to go back to this

8 discussion about the 62 documents that you had.

9 A    Okay.

10 Q    The 62 documents was a cash of documents that you had

11 produced based on your review of all of KCI's privileged

12 material, correct?

13 A    Correct.

14 Q    Now, you were instructed that you had to produce

15 attorney/client communications to the Department of Justice,

16 correct?

17 A    I was instructed from my perception that I was supposed

18 to go through relevant documents to the case, and if they're

19 attorney/client privileged and return those.

20 Q    Who instructed you to do that?

21 A    Howard.

22 Q    Howard Daniels?

23 A    That was my assumption from my conversations with him.

24 Q    And when you say "return those documents," you were

25 actually instructed to provide them to your counsel to then

63

1  be turned over to the Department of Justice for a tank team

2  review, correct?

3  A    Correct.

4  Q    Now, when you went through your thousands of documents

5  that you had in your possession, you produced only 62

6  documents and attachments, correct?

7  A    Uh-huh.

8  Q    That was not the full universe of privileged documents

9  in your possession, correct?

10  A    Correct.

11  Q    In fact, you had hundreds, if not thousands of other

12  documents, including privileged documents in your possession

13  that never went to the Department of Justice, correct?

14  A    I didn't feel like they were relevant, correct.

15  Q    You had -- you had hundreds of documents, including

16  privileged documents with KCI that never went to the

17  Department of Justice?

18  A    Correct.

19  Q    In fact, that bankers box that we talked about earlier

20  that you produced back last May or early June, that had a

21  lot of privileged documents in it that never went to the

22  Department of Justice, correct?

23  A    Correct.

24  Q    Ms. Goedecke, when you were making your relevance

25  determination, were you going on anybody's advice or

67

1  A    I did.

2  Q    By whom?

3  A    Mr. Hritsco.

4  Q    When did you prepare this declaration?

5  A    Well, this iteration was on the 31st.

6  Q    There were other iterations, true?

7  A    Well, there's always drafts and --

8  Q    When did you start drafting your declaration?

9  A    I don't recall when we started drafting the --

10 Q    Was it before Christmas?

11 A    No.

12 Q    After Christmas?

13 A    Well, we talked about it before Christmas.  I don't

14 know if that's part of drafting, but -- yeah.

15 Q    Did you discuss the contents of this declaration with

16 your counsel?

17 A    Not really until after Christmas.  Yeah, I guess.

18 Q    You read this before you signed it, correct?

19 A    I was part of putting it together.  I don't know if

20 I've read the final product.

21 Q    You certainly read it enough to know that -- whether

22 there was any misstatements in here?

23 A    Uh-huh.

24 Q    You're comfortable with the contents of this

25 declaration, correct?

68

1  A      Yeah, pretty much so.

2  Q      This declaration indicates that as to certain

3  documents, the bankers box documents, you did not reveal

4  that information to your counsel, correct?

5  A      I revealed the information to my counsel about the

6  bankers box documents in May, when we sent them to you and

7  to Judge Rosenberg.

8  Q    The fact that you had those documents, you revealed to

9  your counsel, correct, in May?

10 A      Yes.

11 Q    The fact that you retained a set after that, did you

12 ever tell your counsel about that?

13 A      Yes.

14 Q      When?

15 A      I believe it was before -- it was like in November.

16 Maybe -- actually, I think they knew in May.

17 Q      That you made a set?

18 A      Yes.

19 Q      This was a set that you were going to maintain in your

20 own possession, correct?

21 A      Yes.

22 Q      Did you ever show those documents to your counsel?

23 A      No.

24 Q    Mr. Hritsco mailed them out for you, but you're

25 suggesting he didn't look at the contents?

69

1  A    Mr. Hritsco did not mail them out for me.  I mailed
2  them out myself.
3  Q    And you said you informed your counsel that you had a
4  set back in May of 2012?
5  A    Yes.
6  Q    And you informed them again or notified them again in
7  November of 2012 that you still had the set?
8  A    Yes.
9  Q    Other than Mr. Hritsco, who else did you tell about
10 this bankers box of documents in May of 2012?
11 A    I'm not -- I mostly talked to Mr. Hritsco.  I can tell
12 you that he knew about them.  I don't know -- remember if I
13 told the other lawyers about them or not.
14 Q    And when I say about the box, that you retained a set
15 for yourself, correct?
16 A    Yes.
17 Q    And then in November of 2012, you also had a
18 conversation with Mr. Hritsco about this box of documents?
19 A    Yes.  Uh-huh.
20 Q    Was that before or after the Court's order?
21 A    That was after.
22 Q    Do you recall seeing a copy of that Court's order -- of
23 Judge Rosenberg's order?
24 A    I did.
25 Q    And you had a conversation with your counsel after that

70

1 that you still had this box of documents in your possession?

2 A    I had the computer in my possession at that time too,

3 yes.

4 Q    But as to this bankers box of documents, you had -- you

5 indicated that -- to your counsel that you still had a set

6 of these documents?

7 A    Correct.

8 Q    What were you instructed to do, Ms. Goedecke, with that

9 bankers box of documents?

10 A    To return it.

11 Q    To who?

12 A    To your firm.

13 Q    And did you indicate to anybody that you were going to

14 be returning those documents?

15 A    I think it just kind of -- no, I did not.  It just kind

16 of got left hanging.

17 Q    Did you ever indicate to your counsel you were not

18 going to return those documents?

19 A    When we started this process, I did.

20 Q    When you started what process?

21 A    This declaration.

22 Q    This was after the filing of our motion, but before you

23 filed your response?

24 A    I don't know if that was exactly when it was.  Between

25 the 10th and when this was written.

71

1  Q    So you knew, based on your reading of the Court's

2  order, that you had an obligation to return those bankers

3  box documents along with other privileged documents --

4  A    Correct.

5  Q    -- to KCI?

6  A    Correct.

7  Q    You did not do that?

8  A    Correct.

9  Q    You understood that not doing that was a violation of

10 the Court's order, correct?

11 A    Well, I wasn't really clear on that and the

12 consequences of it.  I was aware.  I kind of panicked.

13 Q    There was nothing unclear about the Court's order of

14 what you were responsible for doing, is there?

15 A    There was nothing unclear, but I still panicked.

16 Q    And you understood what your obligations were under the

17 order, correct?

18 A    Well, I felt like we were still in the middle of the

19 whole process, and I felt like it didn't really matter what

20 we did and tried to provide for you.  It was never right.

21 It was misconstrued or it was never going to end.

22 Q    Ms. Goedecke, you knew what the order required you to

23 do, correct?

24 A    Yes.

25 Q    And you didn't do that.

72

1 A     No.  I panicked, sir.

2 Q     And you did not return this bankers box of documents as

3 you were required to do on the Court's order.

4 A     I returned them.  I returned them late, but I returned

5 them.

6 Q     You did not return the documents as required by the

7 Court's order, did you?

8 A     I did not return them in a timely fashion, no.

9 Q     What other documents do you still have, privileged

10 documents that you still have in your possession?

11 A     I have no documents at all, privileged, nonprivileged.

12 I have no documents at all.

13 Q     Ms. Goedecke, is your testimony here today that you

14 have no KCI documents whatsoever in your possession?

15 A     Correct.  They're in my computer.

16 Q     No hard copies that you printed out?

17 A     No.

18 Q     Did Mr. Hartpence ever share documents with you?

19 A     I received a spreadsheet from Buster Hartpence.

20 Q     A spreadsheet?

21 A     Uh-huh.

22 Q     Do you still have that spreadsheet?

23 A     No.

24 Q     What happened to it?

25 A     It's on my laptop in the pile to get deleted.

73

1  Q    So did he send it by hard copy or did he send it by e-
2  mail?

3  A    He sent it by e-mail.

4  Q    Any other documents Mr. Hartpence shared with you?

5  A    Not that I'm aware of.

6  Q    You still have your declaration in front of you, Ms.
7  Goedecke?

8  A    I do.

9  Q    If I could refer you to paragraph nine on page four.

10 A    Yes.

11 Q    In your declaration, you stated in paragraph nine:

12             "I feel like I have to represent

13        myself on this issue because my three

14        lawyers are without information or

15        knowledge about the totality of KCI

16        documents in my possession, both

17        privileged and otherwise."

18 A    Correct.

19 Q    You wrote that, correct?

20 A    Correct.

21 Q    That was a true statement when you wrote it?

22 A    My attorneys could not deal with any privileged
23 documents, so they wouldn't even talk about documents with
24 me.

25 Q    Ms. Goedecke, I'm just -- I asked you -- the question

124

1  wanted to state that, just so that everybody is clear.  We

2  would be relying upon Court Smart.

3          MR. LUCE:  We understand, your Honor.  Thank you.

4          THE COURT:  Okay.  All right.  Thank you,

5  everyone.

6          MR. KLEIMAN:  Thank you.

7          THE CLERK:  All rise.  This court is now

8  adjourned.

9       (Proceedings concluded.)

10

11

12

13

14

15

16          I certify that the foregoing is a correct

17  transcript from the electronic sound recording of the

18  proceedings in the above-entitled matter.

19

20  /s/Shonna Mowrer_____         3/26/13_____
    Transcriber                         Date

21
    FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
22

23
    /s/L.L. Francisco_____
24  L.L. Francisco, President
    Echo Reporting, Inc.
25

*Echo Reporting, Inc.*

# Exhibit C

Case Nos.
12-55396, 12-56117

====================================================

## In the United States Court of Appeals
## for the Ninth Circuit

====================================================

U.S. ex rel. Steven J. Hartpence
Plaintiff-Appellant,

v.

Kinetic Concepts, Inc., et al.
Defendants-Appellees


U.S. ex rel. Geraldine Godecke
Plaintiff-Appellant,

v.

Kinetic Concepts, Inc., et al.
Defendants-Appellees

====================================================

Appeal from the United States District Court
for the Central District of California,
D.C. No. 08-cv-06403-GHK-AGR
D.C. No. 08-cv-01885-GHK-AGR

The Honorable George H. King, United States District Judge

====================================================

## DECLARATION OF WILLIAM A. HRITSCO IN OPPOSITION TO MOTION TO DISQUALIFY RELATORS' COUNSEL DUE TO POSSESSION AND USE OF PRIVILEGED DOCUMENTS AND WORK PRODUCT

Mark A. Kleiman, Esq
LAW OFFICES OF
MARK ALLEN KLEIMAN
2907 Stanford Avenue
Venice, CA 90292
Tel: 310-306-8094 / Fax: 310-306-8491

Altomease R. Kennedy (*Pro Hac Vice*)
McKnight & Kennedy LLC
Lee Plaza, Suite 1010
8601 Georgia Avenue
Silver Spring, MD 20910
Tel:  301-565-5281 / Fax: 301-565-5285

William A. Hritsco
DAVIS, WARREN & HRITSCO
P. O. Box 28
122 E. Glendale Street
Dillon, MT 59725
Tel: 406- 683-2363 / Fax: 406-683-6790

*Attorneys for Plaintiffs-Appellants Steven J. Hartpence and Geraldine Godecke*

**Exhibit C
Page 49**

## DECLARATION OF WILLIAM A. HRITSCO

I, William A. Hritsco, hereby declare as follows:

1.     I am an attorney licensed to practice law in the State of Montana and I am admitted to all Montana courts, the United States District Court for the District of Montana, the United States District Court for the Central District of California (*pro hac vice* for the purposes of this action), and the United States Court of Appeals for the Ninth Circuit.  I am over the age of eighteen years, competent, and willing and able to testify to all of the facts and matters set forth in this Declaration based upon my firsthand knowledge, except as to those matters which I aver based upon information and belief.

2.     I represent Relator Geraldine Godecke in *U.S. ex rel. Geraldine Godecke v. Kinetic Concepts, Inc., el al.* now pending before this Court as cause number 12-56117.  Attorneys Mark A. Kleiman and Altomease R. Kennedy are co-counsel with me in the case.  I do not represent Relator Steven J. Hartpence in *U.S. ex rel. Steven J. Hartpence v. Kinetic Concepts, Inc., el al.* now pending before this Court as cause number 12-55396, nor in any other matter.

3.     I live in and maintain my law office in Dillon, Montana.  Relator Geraldine Godecke also lives in Dillon, Montana.

**Exhibit C
Page 50**

4.      In August 2008, Mrs. Godecke approached me seeking representation as she had been contacted by a Assistant United States Attorney Howard Daniels, who wished to interview her regarding her former employment at Kinetic Concepts, Inc.'s ("KCI") Dillon, MT offices.  I agreed to represent Mrs. Godecke for the purposes of the requested interview.  U.S. Attorney I later agreed to represent Mrs. Godecke in a *qui tam* action brought under the federal False Claims Act against Defendants/Appellees herein, along with co-counsel Mark Kleiman and Altomease Kennedy.

5       Mrs. Godecke held the senior management position in KCI's Dillon, MT offices until she was fired in September 2007.  Mrs. Godecke traveled throughout the United States a great deal for her job.  She had to have work materials and information with her while traveling, and also while working from home.  In August 2008, Mrs. Godecke advised her three lawyers that she had some material or documentation in her possession which might be helpful in proving the Medicare fraud which served as the basis of her *qui tam* action.

6.      Mr. Kleiman, Mrs. Kennedy and I described and explained to Mrs. Godecke the attorney-client privilege, and we asked whether any of the documents in her possession might be communications from KCI's lawyers and might be privileged.  We three lawyers, together, repeatedly cautioned Mrs. Godecke that we

Exhibit C
Page 51

could not see or be told about documents which may involve attorney-client privileged matters. Mrs. Godecke and I privately had additional discussions about the need to keep her collection of documents out of my office and in a secure location at her home.

7.     We three lawyers together asked Mrs. Godecke to go through all of the documents in her possession, identify those that she believed were material or probative of the allegations of fraud in her *qui tam* case, and to go through the documents to search for any that might be attorney-client communications. Mrs. Godecke did so and assembled a group of sixty-two documents that were attorney-client communications and could possibly be privileged.

8.     In approximately April 2009, Mrs. Godecke forwarded to Mark Kleiman, electronically, the sixty-two attorney-client communication documents she had identified. Neither Mrs. Kennedy nor I were sent the zip file or electronic mail which Mrs. Godecke sent to Mr. Kleiman.

9.     I had no involvement or role whatsoever in Mrs. Godecke's efforts to review her documents and cull out the attorney-client communications. Mrs. Godecke did this work from her home and sent the file of sixty-two documents to Mr. Kleiman from her home. The sixty-two documents were never in my office nor on my office computer system or email system, and I have never seen the sixty-two

**Exhibit C
Page 52**

documents that were sent to Mr. Kleiman. I was aware that the purpose in sending the documents to Mr. Kleiman was so that he could send them on to the United States Attorney's office for a taint review to determine whether any of these communications were actually privileged documents.

10. I was not aware of the nature or volume of other KCI documents Mrs. Godecke had in her possession. I had no sense of how many of the documents were hardcopy or how many were in electronic format. I relied on Mrs. Godecke's assessment of which documents were probative of her claims, and upon her statements that the great majority of the documents in her possession were completely irrelevant to her case and of no evidentiary value. Mrs. Godecke actually had relatively few documents in her possession which were helpful to me in helping to draft her complaints in this case.

11. When I agreed to represent Mrs. Godecke in August 2008, she showed me a hardcopy document which I recall being entitled *KCI's Pre-Hearing Brief*. Mrs. Godecke explained that this brief was prepared by KCI's outside counsel, Donna Thiel. Attorney Thiel represented KCI in administrative appeals before administrative law judges on KCI's denied Medicare claims. Mrs. Godecke worked closely with Attorney Thiel and attended many or most of the administrative hearings. I reviewed the brief in an effort to gain a base-line understanding of the claims

Exhibit C
Page 53

hearing process and of the legal and factual arguments KCI would make at these hearing.  When I reviewed the Pre-Hearing Brief in August 2008, I believed it was a copy of an actual brief that had already been filed in an administrative proceeding. I concluded the brief could not be a privileged document since KCI's counsel had filed it with a governmental agency.  The brief was not especially helpful and I do not recall re-reading it after late August 2008.  When the seal was lifted from Mrs. Godecke's *qui tam* case in 2011 and we began to have discussions with KCI's defense lawyers, I learned that KCI deemed the Pre-Hearing Brief a "template" prepared by its outside counsel and not a pleading that had actually been filed for public record.  At KCI's counsel's request, I had my secretary shred the Pre-Hearing Brief in our office shredder.  Altomease Kennedy advised me that she had a copy of the brief and that she too shredded it.  Mark Kleiman advised me that he had no copy of the brief and had never seen it.  I had taken no notes about the brief (making notations on the actual hardcopy document itself instead) and I have not quoted from the brief or relied upon it in preparing the complaints in this case.  I still believe the brief was a copy of an actual brief which was filed, as I recall the arguments were specific to certain strings of numbers which I believe were codes for actual patient names.

**Exhibit C
Page 54**

12. In drafting Mrs. Godecke's *Second Amended Complaint* I reviewed a draft letter from KCI's Medical Director, Dr. Wayne Schroeder to the DMERC Medical Directors dated January 23, 2004. I attached a copy of this letter as Exhibit 5 to Mrs. Godecke's Second Amended Complaint and referred to the letter and quoted from the letter in the Second Amended Complaint at page 29, Paragraph 113. This document did not have an attorney's name on it and was not otherwise marked "Confidential" or "Privileged" or "Work Product." I did not see an email cover sheet or transmittal sheet to indicate that this draft was being circulated among other KCI employees, including one or more attorneys. Ultimately, Magistrate Judge Rosenberg ruled that because this letter was a draft, it was considered privileged (even though the final version would not be privileged). This document is discussed in further detail in the contemporaneously filed Declaration of Altomease R. Kennedy in paragraphs 30-33 and it is known as "Table 1, Document No. 53."

13. I have redacted the Second Amended Complaint to omit Paragraph 113 in its entirely and to omit the letter itself as an exhibit.

14. KCI's counsel repeat in their pleadings that "Relators and their counsel" have been in possession of hundreds upon hundreds of KCI's privileged documents, and that Magistrate Judge Rosenberg has so found. However, Magistrate Judge Rosenberg made no finding that Relators' counsel actually possessed the privileged

6

**Exhibit C
Page 55**

documents and made no finding that Relators' counsel relied on the privileged documents in preparing and filing the two *qui tam* cases.  <u>The fact is that except for the Pre-Hearing Brief and the Dr. Schroeder draft letter discussed above, I have not had possession of, nor reviewed nor relied upon a single document which KCI has claimed is privileged in its logs, or which Magistrate Judge Rosenberg found was privileged.</u>  The source of the detailed facts set forth in the Second Amended Complaint has been the knowledge, experience and recollection of Mrs. Godecke who lived and breathed these matters from 2001 through 2007.

I declare under penalty of perjury under the laws of the United States that the foregoing *Declaration of William A. Hritsco* is true and correct.

DATED December 21, 2012 in Dillon, Montana.

/s/ William A. Hritsco
William A. Hritsco

Exhibit C
Page 56

| 9th Circuit Case Number(s) | 12-55396, 12-56117 |
|---|---|

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)

December 21, 2012 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)    /s/ Mark Allen Kleiman

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)

**Exhibit C
Page 57**

# Exhibit D

```
 1                    UNITED STATES DISTRICT COURT

 2                  CENTRAL DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,      )Case No. CV08-01885-GHK(AGRx)
                                    )           CV08-06403-GHK(AGRx)
 5            Plaintiff,            )
                                    )
 6   vs.                            )Los Angeles, California
                                    )
 7   KINETIC CONCEPTS, INC.,        )Tuesday, July 24, 2012
                                    )
 8            Defendant.            )(2:08 p.m. to 3:20 p.m.)
     _____)
 9

10

11                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE ALICIA G. ROSENBERG
12                 UNITED STATES MAGISTRATE JUDGE

13

14   Appearances:               See next page.

15   Court Reporter:            Recorded; CourtSmart

16   Courtroom Deputy:          Marine Pogosyan

17   Transcribed by:            Shonna Mowrer
                                Echo Reporting, Inc.
18                              6336 Greenwich Drive, Suite B
                                San Diego, California 92122
19                              (858) 453-7590

20

21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

2

1  APPEARANCES:

2  For Geraldine Goedecke:      MARK A. KLEIMAN, ESQ.
                                Mark Allen Kleiman Law Offices
3                               2907 Stanford Avenue
                                Venice, California  90292
4                               (310) 306-8094

5                               WILLIAM A. HRITSCO, ESQ.
                                Davis, Warren & Hritsco
6                               122 East Glendale Street
                                Box 28
7                               Dillon, Montana  59725
                                (406) 683-2363
8
                                ALTOMEASE R. KENNEDY, ESQ.
9                               McKnight & Kennedy
                                8601 Georgia Avenue
10                              Suite 1010
                                Silver Springs, Maryland
11                                20910
                                (301) 565-5281
12
   For Kinetic Concepts, Inc.:  MATTHEW ERIC SLOAN, ESQ.
13                              Skadden, Arps, Slate, Meagher
                                  & Flom, LLP
14                              300 South Grand Avenue
                                Suite 3400
15                              Los Angeles, California  90071
                                (213) 687-5600
16
                                CHRISTOPHER G. OPRISON, ESQ.
17                              COLIN V. RAM, ESQ.
                                Skadden, Arps, Slate, Meagher
18                                & Flom, LLP
                                1440 New York Avenue NW
19                              Washington, DC  20005
                                (202) 371-7000
20

21

22

23

24

25

**Exhibit D**
**Page 59**

22

1 for the discussion, because we're now kind of getting into

2 the kind of merits of this, but I thought that when -- my

3 recollection was that there -- how we got into this was that

4 Ms. Goedecke was doing the review, but somehow there was a

5 letter from -- I think it was Mr. Kleiman to Defense counsel

6 saying, you know, here -- I think it was with a CD that

7 said, you know, here are all the potential attorney/client

8 communications that were in Ms. Goedecke's possession.

9          And that, in fact, turned out to be not correct.

10 And that's how this process that she went through came out.

11 But I'm not sure -- when you say --

12          MR. KLEIMAN:  Your Honor is correct.

13          THE COURT:  -- that was the case from the

14 beginning, I'm not sure it was.

15          MR. KLEIMAN:  No --

16          THE COURT:  I thought that -- I mean, I had the

17 impression that the CD was supposed to be all of the

18 attorney/client communications.  And it's what the letter

19 said.  And once we got to the hearing -- because even the

20 briefs didn't explain this.  Once we got to the hearing,

21 that's when this, you know, procedure she went through came

22 out.

23          But my point really was that Mr. Hartpence doesn't

24 seem to have gone through that same procedure.  I mean, as I

25 understand what counsel is saying is, this isn't a case

*Echo Reporting, Inc.*

23

1 where, you know, like with Ms. Goedecke, she was doing

2 whatever she was doing, and it's now all come out that Mr.

3 Hartpence didn't make some initial selection, that counsel

4 actually has been through Mr. Hartpence's hard copy and

5 electronic documents, to the extent he has it, and has

6 produced the attorney/client communications, which is what I

7 ordered, actually. It wasn't just what he thought was

8 privileged. It was supposed to be all of the communications

9 with counsel.

10         So I mean, Mr. Kleiman, is that correct? You've

11 been through the hard copy documents and any electronic

12 documents he has?

13         MR. KLEIMAN: We have been through all of the

14 documents electronically. Mr. Hartpence represented to us

15 that all of the hard copies were scanned in and then

16 included with the electronic documents. I cannot say that I

17 have actually gone through the paper copies. I've gone

18 through images of all of the paper copies as well as all

19 electronic documents that were in their native format.

20         THE COURT: Okay.

21         MR. OPRISON: And your Honor, we have no idea what

22 names, what search terms were run through these to identify

23 which were -- which documents were privileged in Mr.

24 Hartpence's possession. And as I go back to my original

25 point, I don't know that there's much harm.

*Echo Reporting, Inc.*

**Exhibit D**
**Page 61**

24

1          If, in fact, that's the case, I don't know why we

2   wouldn't at least be entitled to see whatever Mr. Hartpence

3   has in his possession that he took from KCI just to satisfy

4   ourselves that there are or are not.

5          We know that wasn't the case for Ms. Goedecke.

6   We'd like to at least satisfy ourselves that that's --

7   whether or not there are still attorney/client

8   communications.  Because Mr. Hartpence's counsel, Mr.

9   Kleiman, has always indicated these are -- that they've

10  given us all the privileged communications.  We've never

11  understood that these are all attorney/client communications

12  that we've been able to get from Mr. Hartpence.

13         And again, we don't know what search terms were

14  used.  We don't know what criteria was used.  And frankly,

15  we have our doubts about whether or not this was done in a

16  way that would capture all privileged communications.  We

17  feel like we need to satisfy ourselves, and there really

18  isn't any harm in ordering copies of everything Mr.

19  Hartpence has to be produced to us so that we can satisfy

20  ourselves.

21         THE COURT:  Well, does -- I mean, have counsel

22  discussed this?  Mr. Kleiman, do you have any objection to

23  producing all of the KCI documents from Mr. Hartpence's

24  possession to Defense counsel?

25         MR. KLEIMAN:  We're happy to do that as part of

52

1          I certify that the foregoing is a correct

2 transcript from the electronic sound recording of the

3 proceedings in the above-entitled matter.

4

5 /s/Shonna Mowrer                        10/2/12
  Transcriber                            Date

6

  FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

7

8

  /s/L.L. Francisco
9 L.L. Francisco, President
  Echo Reporting, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit E



July 31, 2007

Mr. Steven J. Hartpence
31360 Meadow Creek Trail
Fair Oaks Ranch, Texas 78015

RE:     Release Agreement

Dear Steve:

This letter will confirm our compromise and settlement of all the matters we discussed as set forth herein.

**1. Release.** You agree that in exchange for the KCI Consideration (as defined below) you will release any and all claims you may have against Kinetic Concepts, Inc., its affiliates, subsidiaries, directors, officers, employees, trustees, agents, stockholders, representatives and/or attorneys ("KCI" or the "Releasees"). With full understanding of the contents and legal effects of this agreement, you individually and on behalf of your spouse, heirs, executors, dependents and successors, and each of them ("Releasors"), hereby knowingly and voluntarily waive and release any claim against the Releasees relating to salary, commissions, wages, benefits, stock, stock options, severance pay, bonuses, sick leave, workers' compensation benefits, holiday pay, vacation pay, agreements, and any other claims or causes of action, attorneys' fees, damages or any other alleged liability arising out of or in any way connected this agreement, your employment relationship with KCI, your separation from employment, and any other transaction, occurrence, act or omission prior to the date of this agreement between you and the Releasees.

This release also includes any cause of action you may have based upon public policy, claims involving discrimination or harassment of any form (including, without limitation, sex, race, national origin, age, religion or disability), or retaliation. This release further covers any claim you may have under the Equal Pay Act, the Fair Labor Standards Act, the Family and Medical Leave Act, Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991, the Texas Commission on Human Rights Act, the Americans with Disabilities Act, Texas Workers' Compensation Act or any other similar federal, state or local law or regulation and any claim for salary, wages, commissions severance pay, bonus, sick leave, holiday pay, vacation pay, life insurance, health or medical insurance or any other fringe benefits.

You knowingly and voluntarily waive any possible rights or claims you may have against KCI under the Age Discrimination in Employment Act and similar state or local statute, and you understand and agree that:

A.  this waiver is written in a manner that you understand;
B.  you are not waiving any claims against KCI that may arise after this agreement is executed;
C.  the KCI Consideration is in addition to any other consideration or benefits owed to you by KCI;
D.  you have the right and have had the opportunity to consult with an attorney of your choice regarding the terms of this agreement;
E.  you have twenty-one (21) days to consider the terms of this agreement and whether you will execute it; and
F.  this agreement will only become effective or enforceable if you execute it timely and do not revoke it during the seven (7) day revocation period.

Mailing:
P.O. Box 659508
San Antonio, Texas 78265-9508
1-800-275-4524 / FAX (210) 255-6995

Corporate:
8023 Vantage Drive
San Antonio, Texas 78230-4726
(210) 524-9000

Manufacturing:
4958 Stout Drive
San Antonio, Texas 78219-4334
(210) 225-5500

**Exhibit E
Page 64**

Mr. Steven J. Hartpence
July 31, 2007
Page 2 of 3

**2.** <u>Non-compete</u>. In exchange for the KCI Consideration provided pursuant to this agreement, and because of your position as an executive with the company and your close contact with many confidential affairs of KCI, you agree that for period of two (2) years from your termination date (a) you will not, alone or as an officer, director, stockholder (except for investments in securities of publicly traded companies that are not in excess of one percent (1%) of such entity's securities), be a partner, associate, employee, agent, principal, or in any other capacity, participate with or become associated with any person, firm, partnership, corporation or other entity that is engaged in a business that competes directly with the NPWT business of the Company. This Non-Competition provision shall be limited to the specific areas of responsibility or geographic areas served by you during your employment with the Company.

**3.** <u>Non-solicitation.</u>  You agree that for a period of two (2) years from your separation of employment with the Company, you will not directly or indirectly: (i) influence or attempt to influence customers or suppliers of the Company or any of its present or future subsidiaries or affiliates of the Company, either directly or indirectly, to divert their business to any other entity then in competition with the business of the Company or any subsidiary or affiliate of the Company, or (ii) solicit or attempt to solicit any of the employees, agents, or consultants of the Company out of their employment, contractual, or other relationship with the Company to work for any business, individual, partnership, firm, or corporation.

**4.** <u>Confidentiality.</u>  In exchange for the KCI Consideration provided pursuant to this agreement, and because of your position as an executive in the company and your close contact with many confidential affairs of KCI, including all matters related to KCI's business, such as information concerning customers, business plans, costs, profits, markets, operations, sales, trade secrets, and plans for future developments and any other proprietary information which is not publicly available, which information was imparted to you because of and during your employment by KCI (hereinafter collectively referred to as "Confidential Matters"), you agree at all times to protect from damage or destruction and to keep secret and confidential all Confidential Matters of KCI.  Additionally, you agree not to disclose any Confidential Matters to anyone outside of KCI or otherwise use those Confidential Matters or your knowledge of the Confidential Matters for your own benefit or for the benefit of any other person other than KCI.

**5.** <u>Equity Grants</u>.  In exchange for your promises contained herein, KCI agrees that your stock options issued November 6, 2006 as listed in Exhibit A (herein "KCI Consideration") will vest.  You understand that you have until August 12, 2007 to exercise such options and you agree you will not exercise such options prior to expiration of the seven (7) day period referenced in paragraph 1(F) above.

**6.** <u>Miscellaneous</u>.  Notwithstanding anything herein, this Agreement does not release, waive or discharge your rights and benefits in: 1) the vested 25,000 options (# 00003189) as referenced in Exhibit A, which would become exercisable upon the expiration of the seven (7) day period referenced in paragraph 1(F) above; 2) your vested benefits in the KCI Company 401(k) program; and 3) the vested 584 stock awards as referenced in Exhibit A.  You agree that as of the execution of this agreement, KCI has no outstanding obligations to you, other than the consideration set forth herein.  You specifically acknowledge and agree that as a result of your separation of employment, you will not be entitled to any consideration under your Executive Retention Agreement dated February 21, 2007.

On or before the date you execute this agreement, you will return all property in your possession, custody or control which belongs to KCI, including without limitation, keys, credit cards, computers, phone cards and any of KCI's documents, whether kept in paper or electronic format.  Neither you nor anyone acting on your behalf has maintained copies of any of these documents.

**Exhibit E
Page 65**

Mr. Steven J. Hartpence
July 31, 2007
Page 3 of 3

Except as required by applicable law, the terms and conditions of this agreement shall remain confidential and you shall not respond to or participate in any public discussion or other publicity concerning or relating to your employment with or separation from KCI.  Both parties agree and covenant not to make any derogatory or negative comments about either party or the management, operations or financial condition of KCI and agree to cooperate with KCI to the extent reasonably necessary regarding the transition of matters worked on by you during your employment with KCI.  You agree to be available by phone for consulting as needed by the Company.

You agree to indemnify KCI and agree to hold it harmless for any claims brought by any taxing authority against any of the Releasees seeking payment of taxes, penalties and/or interest related to the assessment, determination and/or reporting of taxes under federal, state and/or local law, including, without limitation, payment of attorneys' fees for counsel selected by KCI for its defense of such matters and costs.

This agreement is being executed voluntarily and without duress or coercion.  Any claim or controversy arising out of or relating to this agreement, your employment with or separation from KCI, or arising out of any other transaction or occurrence with the Releasees, shall be submitted to final and binding arbitration in Bexar County Texas according to the procedures set out in KCI's Arbitration Policy. With an adequate opportunity to consult with legal counsel, you have knowingly and voluntarily waived any right to trial by jury of any dispute with any of the Releasees, notwithstanding contrary provisions of any federal, state or local law, regulation or ordinance.  Notwithstanding the foregoing provisions, if you breach any of the non-disclosure provisions of this agreement, KCI shall have the right to seek immediate injunctive relief in the form of a temporary restraining order or preliminary injunction, enjoining you from such further breach of those provisions of this agreement, pending a final ruling by the arbitrator. This agreement is governed by the laws of the state of Texas, without regard to conflict of laws rules.

Please indicate your agreement to the foregoing terms by signing and dating the agreement in the space provided below.  If you decide to revoke the agreement, it must be in writing and be received by me at the above address before the close of business on the seventh day after execution of this agreement.

Kinetic Concepts, Inc.

By: _Stephen D. Seidel_
Name: _Stephen D. Seidel_
Title: _Sr. VP & General Counsel_

AGREED AND ACCEPTED:

_Steven J. Hartpence_
Steven J. Hartpence

Date: _7/31/07_

**Exhibit E
Page 66**

## WAIVER

I, Steven J. Hartpence, understand that I may take up to twenty-one (21) days from receipt of the July __, 2007 Letter Agreement to which this is attached, to review the document and determine whether to accept it. I hereby knowingly and voluntarily waive the 21-day review provision of the Letter Agreement. I acknowledge and understand that this Waiver is part of the Letter Agreement between myself and Kinetic Concepts, Inc., and as such includes all rights and claims arising prior to or on the effective date of the Letter Agreement, including, but not limited to, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, the Texas Commission on Human Rights Act and the Older Workers' Benefits Protection Act.

I have been advised by Kinetic Concepts, Inc. to consult with my attorney prior to executing the Letter Agreement, and I acknowledge that I fully understand the terms of the Letter Agreement. I have not been compelled into signing it by anyone associated with Kinetic Concepts, Inc. and have entered into the Letter Agreement and this Waiver voluntarily and of my own free will.

_____7/31/07_____          _____

Date                           Steven J. Hartpence

# Exhibit F

Case Nos.
12-55396, 12-56117

---

### In the United States Court of Appeals
### for the Ninth Circuit

---

U.S. ex rel. Steven J. Hartpence
Plaintiff-Appellant,

v.

Kinetic Concepts, Inc., et al.
Defendants-Appellees

U.S. ex rel. Geraldine Godecke
Plaintiff-Appellant,

v.

Kinetic Concepts, Inc., et al.
Defendants-Appellees

---

Appeal from the United States District Court
for the Central District of California,
D.C. No. 08-cv-06403-GHK-AGR
D.C. No. 08-cv-01885-GHK-AGR

The Honorable George H. King, United States District Judge

---

## DECLARATION OF MARK KLEIMAN IN OPPOSITION TO MOTION TO DISQUALIFY RELATORS' COUNSEL DUE TO POSSESSION AND USE OF PRIVILEGED DOCUMENTS AND WORK PRODUCT

Mark A. Kleiman, Esq
LAW OFFICES OF
MARK ALLEN KLEIMAN
2907 Stanford Avenue
Venice, CA 90292
Tel: 310-306-8094 / Fax: 310-306-8491

Altomease R. Kennedy (*Pro Hac Vice*)
McKnight & Kennedy LLC
Lee Plaza, Suite 1010
8601 Georgia Avenue
Silver Spring, MD 20910
Tel:  301-565-5281 / Fax: 301-565-5285

William A. Hritsco
DAVIS, WARREN & HRITSCO
P. O. Box 28
122 E. Glendale Street
Dillon, MT 59725
Tel: 406- 683-2363 / Fax: 406-683-6790

*Attorneys for Plaintiffs-Appellants Steven J. Hartpence and Geraldine Godecke*

**Exhibit F**
**Page 68**

# DECLARATION OF MARK KLEIMAN

I, Mark Kleiman, hereby declare as follows:

1.      I am an attorney duly licensed to practice before this Court and am one of the attorneys of record for Steven J. Hartpence and Geraldine Godecke.  If called upon to do so, I could and would testify competently to the following based upon firsthand knowledge, except as to those matters which I aver based on information and belief.

2.      On May 21, 2008 Hartpence met with the US Attorney's Office (USAO)  for  the first time. He was accompanied by my co-counsel, Altomease Kennedy and me.  It was Hartpence's first meeting with me as well.

3.      On that day, and in subsequent conversations, I stressed to Mr. Hartpence that I did not want him to show me any privileged documents or tell me about conversations with KCI lawyers in which they offered legal opinions or had discussions with him leading up to legal opinions.

4.      After the meeting I agreed to take custody of several electronic files which might implicate attorney client communications for the purpose of assessing their status and transmitting them to a USAO taint reviewer.

5.      On July 2, 2008 I sent the USAO taint reviewer (AUSA Kent Kawakami) the files I had gotten from Hartpence and a spreadsheet of  my own

**Exhibit F
Page 69**

creation.  To create the spreadsheet I glanced at each of the six documents to determine the author, the primary recipient, to whom they were copied, and the subject of the document.  I did not study the content, made no notes about the content, and did not look at the documents after that.  I never sent the electronic files or copies of them to Hartpence's original counsel, Altomease Kennedy.[1]

6.    On July 18 and July 30, 2008, Mr. Kawakami wrote me, suggesting that two of the documents were probably privileged, and that two more were probably not privileged, but ought not be shown to the government investigative team to be ultraconservative in protecting the USAO team from any possibility of taint.

7.    On August 19, 2008, Howard Daniels, the AUSA then working on the case, emailed Hartpence's counsel that an email Hartpence had written and sent to KCI counsel Dennis Noll and the rest of the KCI Executive Committee (of which Hartpence was a member) had been determined not to be privileged.

8.    On September 29, 2008, I, Kennedy, and William Hritsco filed a *qui tam* suit on behalf of Geraldine Godecke.

---

[1] At this time Ms. Kennedy was with the Washington D.C. area firm, Ashcraft & Gerel, which were attorneys of record for Hartpence.  After she and Vincent McKnight left to form a new firm, Hartpence was substituted that new firm, McKnight & Kennedy in lieu of Ashcraft & Gerel.

**Exhibit F Page 70**

9.     In March of 2009 Godecke forwarded all documents "that had a lawyers name anywhere on it" that addressed False Claims Act allegations.  She later advised that she had a great many other documents that might be attorney-client communications or work product, that had nothing to do with the FCA allegations.  Those documents were never shown to me, Kennedy, or Hritsco.

10.     On May 21, 2009, I sent AUSA Kawakami a set of sixty-two documents and an assessment spreadsheet.  As with the Hartpence documents, I merely glanced at these documents to note author, the primary and secondary recipients, subject matter, and whether legal advice was being sought or given.  As with the Hartpence documents, I did not study the content, made no notes about the content, have not looked at the documents since then.  As with the Hartpence documents, I never sent copies to Kennedy or Hritsco.

11.     The Hartpence case was unsealed on April 27, 2011 and the Godecke case was unsealed on May 3, 2011.  The operative complaints were served on defendants May 26 and May 27, 2011.

12.     On June 7, 2011, KCI's counsel, Greg Luce of Skadden Arps called Relators' counsel, to discuss the documents.

**Exhibit F
Page 71**

13.     Luce followed up with a letter on June 8, 2011, requesting return of all allegedly privileged or work product protected communications and the deletion of them from counsels' files.

14.     On June 10, 2011 I responded, stating that I had identified seven items from Hartpence, one of which appeared to be a duplicate, making a total of six discrete items.  I asked how KCI wanted them delivered, offering to either deliver a flash drive to Skadden"s office, or to send them via a secure file transfer site.

15.     On the evening of Saturday, June 11, 2011 Luce wrote me asking if Godecke also had privileged documents.  On June 17, 2011 Christopher Oprison, Luce's colleague, wrote a follow-up email about this.

16.     On June 18, 2011, I wrote Luce to discuss derivative use of what I believed was non-privileged attorney-client communications in Hartpence's  Third Amended Complaint (TAC).  A copy of this letter is attached as Exhibit "A".  I identified five KCI documents which were mentioned in the TAC, pointing out that KCI had itself produced three of the five without objection in response to government requests.  I informed Luce that one of the remaining documents, an email Hartpence had sent to Dennis Noll while he was employed at KCI had been

reviewed by the DOJ taint reviewers and cleared for release, and that the AUSA then leading the investigation asked Hartpence to tell him more about it.

17.    On June 23, 2011, Hartpence voluntarily filed a Corrected Third Amended Complaint which removed any potentially privileged language. On July 5, 2011 Judge King  entered an order finding that [d]efendants have made no showing that the paragraph in question is actually protected, and that the paragraph appears to be a factual assertion and not a disclosure of a privileged communication.  Dkt. # 45, p. 1.

18.    Skadden had taken eleven days to respond to my suggestion that I return the documents via a file transfer site or by messengering a flash drive to them.  Instead, Skadden suggested that I **have my** "Law Technology Department" install proprietary Skadden software on my computer without any assurance of security or compatibility.  Just two days later I wrote Luce pointing out that unlike, Skadden, my office had only two lawyers in it, and that there *was* no "Law Technology Department," so that placing blind faith in the compatibility of Skadden's software, or my ability to maintain computer security with unknown code running on my computer, was not an ideal solution.  I suggested that the six (or seven) Hartpence documents be put on a CD and sent to Luce's firm.

19.     Skadden continued to insist that all of Hartpence's documents be returned to KCI.  The very general nature of this position did not clarify for me that when I had my assistant send the Hartpence emails back to Skadden, the emails did not include their attachments.  This was finally clarified by another Skadden partner, Christopher Oprison, in December, 2011.  The very next day after receiving Oprison's email, I sent Skadden a flash drive containing the attachments, as well as the emails.   (Because I had scrupulously respected Skadden's insistence that I not even look at these documents, I had not appreciated that when they had previously been sent, the emails had been separated from the attachments when they had originally transmitted.)

20.     Although KCI continued to demand that Hartpence return all documents, privileged or not, Judge Rosenberg did not believe this was required. Attached as Exhibit "B" is pp. 54-60 of the June 6, 2012 hearing. Ultimately, on July 24, 2012, Judge Rosenberg ordered that Hartpence furnish KCI with an electronic copy of all of his KCI documents so that KCI could search them for allegedly privileged materials. (My clerk had run exhaustive and exhausting searches through all of those electronic documents and had not found any hits using the names of KCI's in-house and outside lawyers as search terms.) I fully complied with that order, sending KCI's counsel two CDs, one labeled "Geri's

Electronic Files" which consisted of documents Ms. Godecke had sent Mr.

Hartpence, and one CD containing all electronic documents Mr. Hartpence had,

except for the six he had already given to KCI twice in 2011,  as well as a box of

documents Godecke had given to Hartpence, which Hartpence sent to my office

for delivery to Skadden.  Neither I nor anyone in my office ever looked at the

contents of that box.

     21.    On November 9, 2012 Judge Rosenberg issued a ruling as to which of

Hartpence's documents were privileged and which were not.  One of the

documents Judge Rosenberg found privileged was the final draft of a document

which was ultimately sent to Medicare.  The final draft of another document which

was ultimately distributed to several hundred KCI employees, including both

Relators, was likewise determined to be privileged.  Counsel have moved swiftly

to redact discussion of these documents from Hartpence's Corrected Third

Amended Complaint and have indeed filed a proposed Redacted Corrected Third

Amended Complaint..  (Hartpence Dist. Ct. Dkt. 81-1 #1109).  I apologize for

having permitted this material to be quoted in the Third Amended Complaint and

respectfully submit that the public, non-privileged  versions of the same

documents which were sent to third parties were turned over by KCI during the

Government's investigation, and  would ultimately be obtained in discovery so

that no actual material harm has befallen defendants because of this accidental misuse.

22.      In April, 2009, Ms. Godecke sent me sixty-two files where the names of KCI's in-house or outside counsel appeared, either in the body or as an author or recipient.  As with the six Hartpence documents, I only glanced at these to verify that the names were present, note the author, the recipient, the recipients of copies, and the subject line.  I did not read the documents for substance, and took no notes other than the chart which I sent to the AUSA taint reviewer, Mr. Kawakami.  I have not looked at these documents in three (3) years and could not even guess as to their content.

23.      On July 21, 2011, I sent KCI's counsel a CD containing all of the documents Ms. Godecke gave me which had hits for the names of inside and outside counsel, and therefore implicated attorney-client communications, whether privileged or not.  I also included a list of the search terms used and invited KCI to tell me if I should include additional terms to broaden the search.  They never responded.

24.      At the time Ms. Godecke gave me these 62 files, I did not understand that these were only from those documents she felt had bearing on the False Claims Act allegations.  That is why my July 21, 2011 letter transmitting the CD

to Skadden said: "Enclosed as promised, please find a CD containing all of the documents Ms. Godecke had in her possession when she was field that reflected possible attorney-client communications." In fact, this was only a subset of all of Ms. Godecke's KCI documents. (Ms. Godecke traveled frequently for KCI and also worked from home on evenings and weekends, so she had a great many work documents at her home.) I later learned that Ms. Godecke had many documents which she believed were irrelevant to the FCA allegations, and that neither I nor any of her other counsel had seen these documents. They became a topic of discussion when Judge Rosenberg ordered Ms. Godecke to deliver copies of all of her documents to the court's chambers, with a duplicate set sent to Skadden's Los Angeles office. Neither I nor any of Ms. Godecke's other counsel received these documents, and we have no idea at all about their contents. KCI makes much of the fact that it produced a log claiming that 742 of these documents were privileged, and that hundreds of them were found to be privileged. Neither I, Ms. Kennedy nor Mr. Hritsco have ever seen these documents.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 21st day of December, 2012, in Venice, California.


    /s/ Mark Kleiman         
Mark Kleiman

# EXHIBIT "A"

Case 2:08-cv-01885-CAS-AGR Document 155-21 Filed 04/08/13 Page 83 of 157 Page ID
Case 2:08-cv-01885-GHK -JWJ Document #:2493 Filed 10/13/11 Page 100 of 120 Page ID
#:1203

# LAW OFFICES OF MARK ALLEN KLEIMAN

LAWYER

2907 STANFORD AVENUE
VENICE, CALIFORNIA 90292

TELEPHONE (310) 306-8094
FACSIMILE (310) 306-8491

*Mark A. Kleiman*
MKLEIMAN@QUITAM.ORG

*Pooja Rajaram*
PRAJARAM@QUITAM.ORG

June 18, 2011

***VIA ELECTRONIC MAIL***

Gregory M. Luce, Esq.
Skadden, Arps, Slate, Meagher & Flom
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
greg.luce@skadden.com

Re:  U.S. ex rel Hartpence v KCI, et al.
2:08-cv-01885 GHK (CD-CA)

Dear Mr. Luce:

This is a follow-up to my letter of June 10, 2011 regarding attorney-client communications in our possession. We have identified references to what we believe to be nonprivileged attorney-client communications in the Third Amended Complaint. This is the sole derivative use which has ever been made of these. Although we do not believe that the communications are privileged, I wished to call your attention to them nonetheless, out of an abundance of caution.

The items are:

(1)  A memorandum Susan Morris sent to the entire KCI field force in February, 2004. In the Complaint we quoted from the final version of that memo, but Mr. Hartpence also has in his possession a draft version which was circulated to a number of KCI executives (including Mr. Hartpence), as well as Dennis Noll. An excerpt of what we believe is the final version is quoted in ¶136 of the Third Amended Complaint.

(2)  An October 20, 2004 draft by Susan Morris of the response that KCI ultimately sent to the DMERCs. It is referenced in ¶145 of the complaint.

(3)  A draft of the letter that Dr. Wayne Schroeder, KCI's Medical Director, sent to the DMERC Medical Directors. We have now realized that the draft had been attached to an email which was circulated to several KCI executives including Susan Morris' supervisor, Dennis Noll. The letter is attached to the Third Amended Complaint as Exhibit 7. The email came from Carol Lanham who at the time was Ms. Morris' assistant, as well as Mr. Noll's.

Case 2:08-cv-01885-CAS-AGR Document 158-21 Filed 04/06/13 Page 84 of 157 Page ID
Case 2:08-cv-01885-GHK -JWJ Document 82-4 Filed 10/13/11 Page 101 of 120 Page ID
#:1204

Gregory M. Luce
June 18, 2011
page two

    (4)    A draft of the language KCI ultimately used to insert in the HAO field. It is referenced in
¶171 of the Third Amended Complaint. The text quoted appears in an email sent to a
number of KCI executives (including Mr. Hartpence) by Jackie Roerink, a KCI attorney.

    (5)    An email Mr. Hartpence sent to members of KCI's executive committee who were concerned
with reimbursement issues, including Dennis Noll, who was included in his capacity as Ms.
Morris' supervisor. The email is quoted in full at ¶271 of the Third Amended Complaint.

We note that items 1, 2, and 3 are all documents which KCI has given to the Government. As you
know, the Government allowed Relators to assist in reviewing these documents as Government Disclosed
Information under an Agreement Regarding Common Interest and Disclosure of Information between
relators and the Government and although we neither copied nor retained any of them, we have distinct
recollections of seeing the first three items in the production. Item 4 may in itself be a privileged
communication, but the text is virtually a verbatim recitation of that which, again, appears in documents KCI
gave to the Government, based upon our recollection of what was reviewed.

It therefore appears that not even KCI maintains that a privilege attaches to these communications.

Item 5 is included out of an abundance of caution. Mr. Hartpence sent the email to Mr. Noll solely
in Mr. Noll's capacity as Susan Morris' direct supervisor, and not out of any desire to obtain legal advice.
Likewise the attachments referred to in Mr. Hartpence's email were prepared at Mr. Hartpence's request and
instruction, without any request or guidance from KCI's counsel. On August 19, 2008, following a DOJ
taint review of the attorney-client communications in Mr. Hartpence's possession, the Assistant United
States Attorney then working on the case, Mr. Howard Daniels, emailed Item 5 to us, indicating that it had
been released by the taint team, and asked us to review it with Mr. Hartpence and explain its context and
significance. We have all treated that document as a non-privileged communication.

Under the circumstances we would be willing to discuss with you our filing a Notice of Errata
redacting the text referenced in Paragraph 171 from the Third Amended Complaint.

I am working to establish a time when Altomease, Bill and I are all available on Monday. Al and I
are both available after 3:30 Eastern. I do not yet know Bill's schedule and will respond further as soon as
I can.

    Sincerely,

    Mark Kleiman

MAK:prs

# EXHIBIT "B"

```
 1    UNITED STATED DISTRICT COURT
      CENTRAL DISTRICT OF CALIFORNIA
 2    WESTERN DIVISION

      _____
 3    Hearing in the matter of:
 4    UNITED STATES OF AMERICA, ex rel.,
      GERALDINE GODECKE,
 5
              Plaintiff,
 6                                No. CV 08-06403 GHK-AGR
 7    vs.                         Volume I
 8           KINETIC CONCEPTS, INC., and KCI CONCEPTS,
      INC.,
 9
              Defendants.
10    _____
11    and
12    UNITED STATES OF AMERICA, ex rel.,
      STEVEN J. HARTPENCE,
13
              Plaintiff,
14                                No. CV 08-01885 GHK (JWJx)
15    vs.                         Volume I
16    KINETIC CONCEPTS, INC., and KCI CONCEPTS, INC.,
17            Defendants.
18    _____
                          HEARING
19              312 North Spring Street, Room 8D
                     Los Angeles, California
20                        June 6, 2012
                          10:06 A.M.
21
      B E F O R E:
22    Honorable Alicia G. Rosenberg
23    Reporter by:
      Ingrid J. Saracione
24    CSR No. 11960
      Job No. CA147684
25    PAGES 1 - 64

                                            Page 1
```

Exhibit F
Page 83

1    they are not necessarily entitled to it or not entitled to

2    it.

3              THE COURT:  But we don't --

4              MR. LUCE:  If it is discovery they asked for it

5    we would need protective order for the private health

6    information.  But for privilege materials the ALJ ruling

7    frequently, and we have examples of it that were among the

8    box will be analyzed by outside counsel Donna Fields, or

9    Stuart Kurlander or in-house they have something they call

10   their Region B audit team, they're responding to audits in

11   which the same material is there.  So we can provide a

12   privileged log from the materials that they -- if they

13   still have their copies, we can look at that and provide

14   that.  But, again, I think the issue isn't what materials

15   they get to have.  I think the issue is whether or not

16   there is any basis upon which they had attorney-client --

17   the right to have attorney-client privilege information.

18   As you know, I sound like a broken record, they don't have

19   a right to have it in the first place so they shouldn't

20   have it now, but I understand the process we are in the

21   middle of here.

22             THE COURT:  Okay.  KCI will provide the privilege

23   log once you get the whole universe of documents, I don't

24   want you to do that from the box.  And you are right, the

25   discovery issues are not really before me, the only issue

Page 54

Exhibit F
Page 84

```
 1    is privilege.  All we will do is work from your log.

 2              MR. LUCE:  Yes, Your Honor.

 3              THE COURT:  Okay.  Well, I think in terms of my

 4    questions when I just read Table 1 I was just prepared to

 5    discuss certain documents with you.  I don't think that is

 6    worth taking the time.  I think we probably should do this

 7    all at one time.

 8              MR. LUCE:  Like we were planning on today?

 9              THE COURT:  Right.  I think we should hold off on

10    that.  What I wanted to address, though, is in terms of

11    the confidential non-privilege document.  When we had the

12    status conference you said that this motion also covers

13    confidential but not privileged documents and you're

14    seeking the return of that.  Now, the only issue I have

15    with you, though, isn't that the relief you are requesting

16    in your claim as opposed -- if we were looking at a

17    discovery dispute I would not have an issue like that

18    before me.  I could order production of the documents so

19    that you would have them.  I mean, I think you would have

20    a strong argument that they are relevant to your claim of

21    a breach of agreement.  But I really don't see any

22    authority for me to order the return of these documents.

23    I leave it open to you to argue with me.

24              MR. LUCE:  No.

25              THE COURT:  I mean, that seriously because --

                                              Page 55
```

**Exhibit F
Page 85**

```
1              MR. LUCE:  Appropriately.
2              THE COURT:  -- I'm searching for some -- I just
3      don't see any authority for that request.
4              MR. LUCE:  Your Honor, that's one of the reasons
5      as I came in here your clerk was kind enough of get us a
6      copy of the order so I understood exactly what the frame
7      work of relief was before Your Honor's court today.  And
8      we think we are entitled that.  We have a motion return of
9      all of our documents based upon that.  We had understood
10     that, perhaps imperfectly, that the -- that Judge King
11     wanted you to rule on privileged materials and so that's
12     been the focus where we are today.  If it's not Your
13     Honor's understanding that that is an element of the
14     relief in our motion that is with the magistrate court,
15     then we will just reserve that with the Article III court.
16     Either way, we think it is relief we are entitled to, not
17     because we have counterclaims but that is, in fact, a
18     motion that we think we are entitled to based on the
19     retrieval of information and attention to it that we think
20     is unlawful.
21             THE COURT:  Okay.
22             MR. LUCE:  So I think the heart of the case is
23     before Your Honor is clearly the privilege.  I think that
24     without waiving that we could at least table consideration
25     of the return of all that because to a degree we're going
```

Page 56

Exhibit F
Page 86

1    to get at least some aspect of that relief from what I

2    understand Your Honor's order that they provide us

3    everything that we log attorney-client privilege

4    materials.  If we have that I think we're far enough down

5    the road that we can then determine when the Court will

6    conclude they have to surrender all the copies.  I still

7    think they need to surrender all copies, but that middle

8    ground will get us there at least part of the way.

9         THE COURT:  Okay.  One last point.  I started out

10   before -- I should have done the attorney-client issue

11   first, but I started out with crime-fraud exception based

12   on the documents that I have already reviewed.  Now it

13   appears that I might end up having to review additional

14   documents, that's unknown at this point.  So am I going

15   to -- I think the order that I issue today will be

16   logistical.  I think you already have what my tentative is

17   based on what I have already reviewed.  To the extent that

18   in the future other documents are submitted for in camera

19   review, and I don't know if that is going to happen, but

20   if it does happen I will leave this open so that I will

21   review them with all issues in mind.  But you know where I

22   am at based on what I have seen so far.

23        MR. KLEIMAN:  We do Your Honor, thank you.

24        THE COURT:  Okay.  All right.  Is there anything

25   further?  I think I have addressed everything in my notes?

Page 57

Exhibit F
Page 87

1    Does anyone have anything?

2           MR. LUCE:  Your Honor, only as sort of as a point

3    of reference.  There is an appeal and now a consolidated

4    appeal likely in the 9th Circuit for the dismissal of both

5    the relators false claims act cases, and the procedure.

6    You will recall Ms. Godecke still has a retaliation claim

7    pending before the court.  There is motion of

8    disqualification that is pending based on the number of

9    items, including the use of these privilege materials, so

10   timing becomes an issue.  Briefs are going to be due early

11   August, as I recall.  There is article -- there is a 9th

12   Circuit mediation/arbitration effort which is likely to be

13   unavailing from what I've seen, but timing now has become

14   a bit of a thing too.  So I think we need some

15   representation from relator's counsel about how quickly

16   they can gather these materials, get them to us in a way

17   that we get them so we can look at them promptly and then

18   make a submission to the court of privilege log along the

19   lines that the Court indicated would be appropriate.

20          THE COURT:  Yeah, we can start working on the

21   outlines of the order.  So how long are we talking?  I

22   can't since -- we're talking about making a copy of an

23   electronic that's not going it take any time at all.  The

24   hardcopies, I don't know.  It seems to me within a week?

25          MR. KLEIMAN:  We need to briefly check in with

                                              Page 58

```
1    Ms. Godecke to ascertain the volume of hardcopy documents.
2    We agree the electronic documents can be copied and we
3    will meet and confer regarding the flash drive to get that
4    sorted out right away.  All I know, Your Honor, about
5    Ms. Godecke's hardcopy documents is that she this is still
6    in Montana.  I said, "I have a bunch of boxes that are in
7    my barn."  I don't know whether -- now, originally her
8    estimate was that that set of documents Your Honor was
9    going to require two boxes, in fact, it doesn't quite fill
10   one.  I don't know if a bunch of documents means three
11   boxes of stuff that can be taken up to Boseman where there
12   is a highspeed copier or whether it means more than that.
13   We will find that out today, and we will let counsel know
14   right away what the volume is.  And if the Court would
15   like we will submit a letter, of course copying counsel,
16   indicating what we have learned about that when we believe
17   will we'll get it done.  We will get it done as quickly as
18   we can because we want to get it resolved as well.  I
19   can't -- I can't -- I will represent to the court right
20   now whether a bunch of documents means there are two or
21   four boxes to copy or less or more, and I would like to
22   find that out before providing an overly rosie estimate.
23            THE COURT:  Let's do this, because I need to have
24   a date so I can have something I can work off of.  Why
25   don't I have in here the deadline to be June 15 for
```

Page 59

Exhibit F
Page 89

```
 1   receipt by KCI's counsel and then if there's a problem you
 2   need to contact my clerk and we can all get on the
 3   phone -- I mean, I usually will say June 15 or a date that
 4   is mutually agreed by both sides.  Then the problem is
 5   there is no agreement by both sides.  I encourage people
 6   to work toward agreement as much as possible.  But then if
 7   there is no agreement then contact my clerk, we set up a
 8   telephonic conference and we -- you know, I will rule one
 9   way or the other.  But I need some kind of a target to put
10   in the order I can't just leave things hanging.  So June
11   15 will be the date.  If there is any problem at all, you
12   need to contact the other side as promptly as possible so
13   that you have a chance to meet and confer.  And if there
14   is a -- if you can't agree, then contact the clerk and she
15   will let me know and we can set up a telephonic hearing.
16   But try not to do that for -- don't contact my clerk June
17   15 and say, you know -- that's what I mean, just use this
18   as soon as you get the information try to pass it along
19   properly so you can talk about it, we don't have to
20   address everything in the last minute.  That's what I we
21   want to avoid.
22            MR. KLEIMAN:  Certainly, Your Honor.
23            THE COURT:  Okay.  In terms of the thumb drive
24   issue, same deadline for meet and confer.  You probably
25   are going to talk to her about all the issues anyhow, so
```

Page 60

9th Circuit Case Number(s) | 12-55396, 12-56117

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | December 21, 2012 | .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) | /s/ Mark Allen Kleiman

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE
### When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) | | .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format) |

**Exhibit F**
**Page 91**

# Exhibit G

# LAW OFFICES OF MARK ALLEN KLEIMAN

LAWYER

2907 STANFORD AVENUE
VENICE, CALIFORNIA 90292

TELEPHONE  (310) 306-8094
FACSIMILE   (310) 306-8491

*Mark A. Kleiman*
MKLEIMAN@QUITAM.ORG

*Pooja Rajaram*
PRAJARAM@QUITAM.ORG

June 18, 2011

***VIA ELECTRONIC MAIL***

Gregory M. Luce, Esq.
Skadden, Arps, Slate, Meagher & Flom
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
greg.luce@skadden.com

Re:   U.S. ex rel Hartpence v KCI, et al.
2:08-cv-01885 GHK (CD-CA)

Dear Mr. Luce:

This is a follow-up to my letter of June 10, 2011 regarding attorney-client communications in our possession.  We have identified references to what we believe to be nonprivileged attorney-client communications in the Third Amended Complaint.  This is the sole derivative use which has ever been made of these.  Although we do not believe that the communications are privileged, I wished to call your attention to them nonetheless, out of an abundance of caution.

The items are:

(1)   A memorandum Susan Morris sent to the entire KCI field force in February, 2004.  In the Complaint we quoted from the final version of that memo, but Mr. Hartpence also has in his possession a draft version which was circulated to a number of KCI executives (including Mr. Hartpence), as well as Dennis Noll.  An excerpt of what we believe is the final version is quoted in ¶136 of the Third Amended Complaint.

(2)   An October 20, 2004 draft by Susan Morris of the response that KCI ultimately sent to the DMERCs.  It is referenced in ¶145 of the complaint.

(3)   A draft of the letter that Dr. Wayne Schroeder, KCI's Medical Director, sent to the DMERC Medical Directors.  We have now realized that the draft had been attached to an email which was circulated to several KCI executives including Susan Morris' supervisor, Dennis Noll. The letter is attached to the Third Amended Complaint as Exhibit 7. The email came from Carol Lanham who at the time was Ms. Morris' assistant, as well as Mr. Noll's.

**Exhibit G
Page 92**

Gregory M. Luce
June 18, 2011
page two


(4)     A draft of the language KCI ultimately used to insert in the HAO field.  It is referenced in
        ¶171 of the Third Amended Complaint.  The text quoted appears in an email sent to a
        number of KCI executives (including Mr. Hartpence) by Jackie Roerink, a KCI attorney.

(5)     An email Mr. Hartpence sent to members of KCI's executive committee who were concerned
        with reimbursement issues, including Dennis Noll, who was included in his capacity as Ms.
        Morris' supervisor.  The email is quoted in full at ¶271 of the Third Amended Complaint.

We note that items 1, 2, and 3 are all documents which KCI has given to the Government.  As you
know, the Government allowed Relators to assist in reviewing these documents as Government Disclosed
Information under an Agreement Regarding Common Interest and Disclosure of Information between
relators and the Government and although we neither copied nor retained any of them, we have distinct
recollections of seeing the first three items in the production.  Item 4 may in itself be a privileged
communication, but the text is virtually a verbatim recitation of that which, again, appears in documents KCI
gave to the Government, based upon our recollection of what was reviewed.

        It therefore appears that not even KCI maintains that a privilege attaches to these communications.

        Item 5 is included out of an abundance of caution.  Mr. Hartpence sent the email to Mr. Noll solely
in Mr. Noll's capacity as Susan Morris' direct supervisor, and not out of any desire to obtain legal advice.
Likewise the attachments referred to in Mr. Hartpence's email were prepared at Mr. Hartpence's request and
instruction, without any request or guidance from KCI's counsel.   On August 19, 2008, following a DOJ
taint review of the attorney-client communications in Mr. Hartpence's possession, the Assistant United
States Attorney then working on the case, Mr. Howard Daniels, emailed Item 5 to us, indicating that it had
been released by the taint team, and asked us to review it with Mr. Hartpence and explain its context and
significance.   We have all treated that document as a non-privileged communication.

        Under the circumstances we would be willing to discuss with you our filing a Notice of Errata
redacting the text referenced in Paragraph 171 from the Third Amended Complaint.

        I am working to establish a time when Altomease, Bill and I are all available on Monday. Al and I
are both available after 3:30 Eastern.  I do not yet know Bill's schedule and will respond further as soon as
I can.


                                        Sincerely,



                                        Mark Kleiman


MAK:prs

# Exhibit H

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C. 20005-2111

———

TEL: (202) 371-7000

FAX: (202) 393-5760

www.skadden.com

DIRECT DIAL
(202) 371-7310
EMAIL ADDRESS
GREG.LUCE@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

**CONFIDENTIAL**

August 11, 2011

*VIA ELECTRONIC MAIL*

Abraham C. Meltzer, Esq.
Assistant U.S. Attorney
Central District of California
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, CA 90012

RE:    *U.S. ex rel. Geraldine Godecke v. Kinetic Concepts, Inc., et al.*,
Case No. 2:08-cv-06403 GHK (CDCA); *U.S. ex rel. Steven J.
Hartpence v. Kinetic Concepts, Inc. et al.*, Case No. 2:08-cv-
01885 GHK (CDCA)

Dear Mr. Meltzer:

This letters follows our phone call of August 9, 2011 regarding privileged or work product documents that Relators Godecke and Hartpence may have provided to your office in the course of DOJ's investigation of KCI.

By way of background, in 2009 we inquired whether any of KCI's privileged or work product material had been provided to DOJ in the course of the *qui tam* investigation and, if so, requested that they undergo a taint team review. Although unknown to us at that time, it is our present understanding that in or about May 2009 Ms. Godecke provided certain KCI documents to your office that were subjected to a taint team review. Based on our discussions with Ms. Godecke's counsel and as confirmed in your email of August 4, 2011, we understand that the 62 emails and attachments we recently received from Ms. Godecke's counsel, which are reflected in the attached schedule, were among those subject to a taint team review. Of those

**Exhibit H
Page 94**

Abraham C. Meltzer, Esq.
August 11, 2011
Page 2

62 documents, we understand that your office's taint team determined 33 were
privileged in their entirety, and an additional 4 documents were partially privileged
and redacted accordingly.[1]  We also believe that Mr. Hartpence may have taken or
retained certain KCI documents, some of which constitute privileged
communications or work product.  Indeed Mr. Hartpence, through counsel, conceded
reliance on a privileged communication in preparing his Third Amended Complaint,
causing him to file a "Corrected Third Amended Complaint" with the privileged
references omitted.  We are uncertain, however, whether he or his counsel provided
any of those documents to your office.  Nor have we been able to confirm whether
any such material underwent a taint team review or were deemed privileged.

As we discussed, questions have arisen regarding the taking, retention and
potential use of KCI's privileged or work product documents by Relators Godecke
and Hartpence and their counsel.  In order to raise this issue with the Court without
the necessity of calling on anyone from your office to provide testimony, we
appreciate your willingness to respond to the following questions in declaration
form:

- Of the 62 KCI documents provided by Ms. Godecke as noted on the
  attached schedule, please identify the 33 documents that your taint team
  concluded were privileged in their entirety, and the 4 documents that
  were subject to redaction.

- Did Ms. Godecke or Mr. Hartpence provide any other documents that,
  after undergoing a taint team review, were determined to be privileged in
  whole or in part?  If so, please identify those documents in a format
  similar to that set forth in the enclosed schedule.

- Were the taint team's privilege determinations made known to Ms.
  Godecke, Mr. Hartpence or their counsel?  If so, on what date(s).

- Please explain the disposition of any KCI documents determined by the
  taint team to be privileged.

---

[1]   We do not agree that the remaining 25 documents among the 62 provided by Ms. Godecke are
not privileged and reserve the right to present this issue for the Court's consideration at the
appropriate time.

Abraham C. Meltzer, Esq.
August 11, 2011
Page 3

As we discussed, we do not view your responses to the foregoing questions as a waiver of any common interest privilege DOJ may claim exists. This will also serve to confirm that, upon receiving sufficiently adequate responses to our questions in a declaration, we would not seek a deposition of anyone from your office or testimony at a hearing except as may be required by the Court. In the event counsel for Ms. Godecke or Mr. Hartpence were to seek a deposition of or testimony by anyone in your office on these topics, we necessarily reserve the right to examine the witness during that deposition.

We appreciate your consideration of the foregoing and look forward to hearing from you. Please feel free to contact me with any questions.

Very truly yours,

Gregory M. Luce

Enclosure

cc:   Matthew Sloan, Esq.
      Skadden Arps Slate Meagher & Flom LLP

1141097-D.C. Server 1A - MSW

**Exhibit H
Page 96**

US ex rel Godecke/Hartpence v. KCI, et al

DOCUMENT LOG FOR RELATOR GODECKE MATERIAL

| DATE | SUBJECT | IN-HOUSE COUNSEL | OUTSIDE COUNSEL | NON-ATTORNEY KCI EMPLOYEE(s) | DESCRIPTION |
|---|---|---|---|---|---|
| July 13 - 14, 2006 | Collecting Medical Records | | B. Johnson (Latham & Watkins); D. Thiel (Latham & Watkins) | G. Godecke; S. Morris, D. Smith | Communication between KCI and outside counsel re: medical records |
| July 14, 2006 | "New" DMERC Policy | K. Behrens | | G. Godecke; S. Hartpence, M. Lendon; K. Jones; T. Johnson; J. Sitton; D. Smith; T. Wellers | Communication between KCI employees and in-house counsel re: cycle 5 claims policy |
| July 14 - 18, 2006 | Need for outside medical testimony | | D. Thiel (Latham & Watkins) | G. Godecke, S. Morris, J. Sitton; P. Smith; S. Truman | Communication between KCI and outside counsel re: medical opinion on cases |
| July 14 - 18, 2006 | Need for outside medical testimony | | D. Thiel (Latham & Watkins) | G. Godecke, S. Morris; P. Smith; S. Truman | Communication between KCI and outside counsel re: potential expert witnesses |
| July 26, 2006 | Region B Pre-pay NPWT Review | S. Seidel | | M. Carbeau; G. Godecke; S. Hartpence; D. Hohne, D. Jernigan; S. Morris, J. Sitton; D. Smith; D. Ware | Communication between KCI employees and in-house counsel re: Region B audit; w/ attachment |
| August 1 - 14, 2006 | GREEN FOLDER: New Restart Letter of Necessity Cover Letter | B. Kraemer | | R. Brinkley; G. Godecke; S. Hartpence; A. Hunter; D. Jernigan; G. Jernigan, S. Morris; S. Obo; S. Ballwell, E. Shapiro; J. Sitton; D. Smith; S. Truman | Communication between KCI employees and in-house counsel re: approval of medical necessity form |
| August 16 - 17, 2006 | Attached Document | K. Behrens; B. Kraemer | S. Kurlander (Latham & Watkins); E. Scherb (Latham & Watkins); D. Thiel (Latham & Watkins) | S. Brandt; A. Hunter; G. Godecke | Communication among outside counsel and in-house counsel re: draft medical necessity form |
| August 22, 2006 | Mtg with Dr. Hughes | S. Seidel | D. Thiel (Latham & Watkins) | S. Brandt; M. Carbeau; G. Godecke; D. Hohne; S. Hartpence; A. Hunter; D. Jernigan, S. Morris; J. Sitton; E. Shapiro; D. Smith; P. Smith | Communication among KCI employees, in-house counsel, and outside counsel re: meeting with Dr. Hughes |
| September 5, 2006 | text from Donna | | D. Thiel (Latham & Watkins) | G. Godecke, S. Morris | Communication between G. Godecke and S. Morris re: NPWT Policy forwarding comments and proposed language from outside counsel D. Thiel. |
| September 8, 2006 | Choate Decisions | | B. Johnson (Latham & Watkins); D. Thiel (Latham & Watkins) | G. Godecke | Communication between G. Godecke and outside counsel re: ALJ decisions |
| September 7 - 8, 2006 | CO Medicaid | K. Behrens | D. Thiel (Latham & Watkins) | G. Godecke, S. Morris; D. Jernigan | Communications with in-house, outside counsel requesting legal review re: billing Colorado Medicaid |
| September 25, 2006 | Secondary Insurance | | D. Thiel (Latham & Watkins) | G. Godecke | Communication with outside counsel re: billing Colorado Medicaid and secondary insurance |
| April 5 - 6, 2007 | Updated denial spread | | D. Thiel (Latham & Watkins) | G. Godecke | Communication between KCI employees and outside counsel re: ALJ appeals strategy |
| June 14, 2007 | Document2 | | D. Thiel (Latham & Watkins) | G. Godecke | Communication between G. Godecke and D. Thiel requesting legal advice re: LCD policy revision; w/ attachment |
| July 13 - 15, 2007 | Pre-Hearing Conference with Judge Schroeder | K. Behrens; Region D Probe Audit DL* | B. Johnson (Latham & Watkins); S. Kurlander (Latham & Watkins); E. Scherb (Latham & Watkins); D. Thiel (Latham & Watkins) | R. Brinkley; G. Godecke; S. Morris | Communication between KCI and outside counsel re: ALJ appeals representation |
| July 31 - August 1, 2007 | More Claims | K. Behrens; Region D Probe Audit DL | Region D Probe Audit DL | G. Godecke; Region D Probe Audit DL | Communication between KCI, in-house course, and outside counsel re: audit claims |
| August 1, 2007 | Regarding claim documentation | K. Behrens; Region D Probe Audit DL | S. Lundy (Fulbright & Jaworski); Region D Probe Audit DL | T. Duffy; T. Johnson; G. Godecke; D. Smith; Region D Probe Audit DL | Communication between KCI and outside counsel re: Region C audit |
| August 7, 2007 | Updated NPWT LCD | K. Behrens; S. Seidel | S. Lundy (Fulbright & Jaworski); Strickland (Fulbright & Jaworski); Lori Ann Bellan (Fulbright & Jaworski) | M. Arnold; R. Brinkley; S. Brewer; T. Duffy; C. Eccleston; M. Flaher; G. Godecke; A. Hunter; D. Jernigan; T. Johnson; S. Jones; A. Kale; S. Langford; S. Naselio; C. North; S. Palmer; C. Place; P. Sesy; D. Smith; S. Truman; T. Wellers | Communication among KCI employees, in-house counsel, and outside counsel re: NPWT LCD update |
| August 8 - 9, 2007 | Region D Cover Letter | K. Behrens | S. Lundy (Fulbright & Jaworski); Lori Ann Bellan (Fulbright & Jaworski) | S. Jones, T. Johnson; G. Godecke S. Morris; D. Smith | Communications among KCI, in-house counsel, and outside counsel re: draft letter to Region D |
| August 13 - 23, 2007 | RAC contractor names | K. Behrens; Region D Probe Audit DL | Region D Probe Audit DL | T. Johnson; G. Godecke; D. Jernigan; D. Smith; Region D Probe Audit Contractors | Communication among KCI employees, in-house counsel, and outside counsel re: Recovery Audit Contractors |

*Region D Probe Audit distribution list (DL) includes in-house and outside counsel, as well as non-attorney KCI employees or consultants, but not third parties.

CONFIDENTIAL

Exhibit H
Page 97

US ex rel Godecke/Hartpence v. KCI, et al

DOCUMENT LOG FOR RELATOR GODECKE MATERIAL

| Date | Document | | | | Description |
|---|---|---|---|---|---|
| August 15, 2007 | 00054363.tif | K. Behrens | R. Brinkley, S. Jones, T. Johnson; D. Smith | | Communication between KCI employees and in-house counsel re: RAC audit |
| August 15, 2007 | Letter to Service Centers and PFS | K. Behrens; Region D Probe Audit DL | B. Berbetter; G. Godecke; Region D Probe Audit DL | S. Lundy (Fulbright & Jaworski); Region D Probe Audit DL | Communication among KCI employees, in-house counsel, and outside counsel re: draft memorandum |
| August 15 – 16, 2007 | Medicare Audit Meeting Agenda 81607 | Region D Probe Audit DL | M. Dixon; G. Godecke; S. Jones; Region D Probe Audit DL | Region D Probe Audit DL | Communication among KCI employees, in-house counsel, and outside counsel re: Region D audit |
| August 16, 2007 | Tracking Our Progress-Medicare RegionC 8.0 2007 w-percent complete.xls | Region D Probe Audit DL | G. Godecke; A. Hunter; Region D Probe Audit DL | Region D Probe Audit DL; S. Lundy (Fulbright & Jaworski); Lori Ann Bellan (Fulbright & Jaworski) | Communication among KCI employees, in-house counsel, and outside counsel re: legal review of claims; w/ attachment |
| August 17 – 20, 2007 | RAC – Confirmation Request | K. Behrens | G. Godecke; S. Jones; T. Johnson, D. Smith | | Communication among KCI employees, in-house counsel, and outside counsel re: draft correspondence to RAC auditor |
| August 20, 2007 | Document1 | K. Behrens | G. Godecke; S. Jones | | Communication between G. Godecke and in-house counsel re: letter to RAC, w/ two attachments |
| August 20 – 22, 2007 | Letter | K. Behrens | R. Brinkley; M. Fisher; G. Godecke, S. Jones, T. Johnson; D. Smith | | Communications between G. Godecke and in-house counsel re: RAC audit letter |
| August 20 – 22, 2007 | Letter | K. Behrens | R. Brinkley; M. Fisher; G. Godecke, S. Jones, T. Johnson; D. Smith | | Communication between KCI employees and in-house counsel re: audit letter |
| August 22, 2007 | RAC audits | K. Behrens | G. Godecke; S. Jones; T. Johnson; D. Smith | | Communication between KCI employees and in-house counsel re: communication with auditors |
| August 22, 2007 | Trust Solutions | K. Behrens | G. Godecke; S. Jones; T. Johnson, D. Smith | | Communication between KCI employees and in-house counsel re: audit request; w/ attachment |
| August 20, 2007 | Database meeting this morning | K. Behrens | G. Godecke; S. Jones; T. Johnson; D. Smith | | Communication between KCI employees and in-house counsel re: claims audits; w/ attachment |
| August 23 – 24, 2007 | Regional RAC Audit Timeline | K. Behrens | R. Brinkley; G. Godecke; T. Johnson; D. Smith; B. Williams | | Communication between KCI employees and in-house counsel re: RAC audit |
| August 27, 2007 | Audit Count MMD 82607.xls | K. Behrens | R. Brinkley; M. Fisher; G. Godecke, S. Jones; T. Johnson; D. Smith | | Communication between KCI employees and in-house counsel re: audits; attachment missing |
| August 27 – 28, 2007 | Follow up info on 109 locate denials from this morning's call | K. Behrens | M. Fisher; G. Godecke; T. Johnson; S. Nasello; D. Smith | | Communication between KCI employees and in-house counsel re: 109 issue |
| August 27 – September 4, 2007 | updated spread | K. Behrens | M. Fisher; G. Godecke; S. Jones; T. Johnson; S. Nasello; D. Smith | | Communication between KCI employees and in-house counsel re: claims analysis |
| August 28, 2007 | KCI risk position | K. Behrens | G. Godecke; T. Johnson | | Communication between G. Godecke and in-house counsel re: risk assessment |
| August 29, 2007 | Region D info | K. Behrens | G. Godecke; S. Jones; T. Johnson; D. Smith | | Communication between KCI employees and in-house counsel re: Region D audit |
| August 29, 2007 | Audit refunds | | G. Godecke; L. Harrison | | Communication between J. Harrison and G. Godecke re: audit refunds; attachment missing |
| August 29-30, 2007 | Audit DB | K. Behrens | M. Fisher; G. Garza; G. Godecke; T. Johnson; A. Kale; D. Smith | | Communication between KCI employees and in-house counsel re: DMAC audit |
| August 29-30, 2007 | Audit DB | K. Behrens | M. Fisher; G. Garza; G. Godecke; T. Johnson; A. Kale; D. Smith | | Communication between KCI employees and in-house counsel re: DMAC audit |
| August 29 – September 6, 2007 | Connolly schedule | K. Behrens | M. Fisher; G. Godecke, T. Johnson; S. Nasello; D. Smith | S. Lundy (Fulbright & Jaworski) | Communication among KCI employees, in-house counsel, and outside counsel re: denied claims |
| August 31 – September 1, 2007 | Fulbright Opinion | K. Behrens | R. Brinkley; G. Godecke, T. Johnson; D. Smith; L. Waldron | | Communication between KCI employees and outside counsel re: legal advice from outside counsel |
| September 4 - 5, 2007 | Shannon – Did you send me this and I missed it? | | G. Godecke; S. Truman | D. Thiel (Latham & Watkins) | Communication between KCI employees and outside counsel re: patient claims spreadsheet; w/ attachment |
| September 4-25, 2007 | wishlist | | G. Godecke | D. Thiel (Latham & Watkins) | Communication between G. Godecke and D. Thiel re: LCD; w/ attachment |
| September 7, 2007 | Schroeder spread | | G. Godecke; T. Shannon | D. Thiel (Latham & Watkins) | Communication between KCI employees and outside counsel re: patient claims spreadsheet; w/ attachment |
| September 12 - 13, 2007 | SNF refunds | | G. Godecke | S. Lundy (Fulbright & Jaworski) | Communication between G. Godecke and outside counsel re: refund policy |
| September 13, 2007 | Acute Transition process 0907 | | R. Brinkley, G. Godecke; T. Johnson | | Communication among KCI employees re: advice from outside counsel regarding billing issues |
| September 17, 2007 | reopening new option | | G. Godecke | S. Lundy (Fulbright & Jaworski) | Communication between G. Godecke and outside counsel re: 100 issue |
| September 19 – 24, 2007 | Resolved Claims that are a couple of days off due to inpatient days | K. Behrens | T. Duffy; G. Godecke; T. Johnson; D. Smith; T. Wellens | | Communication between KCI employees and in-house counsel / outside counsel regarding communication with DMAC Region C representatives re: claims |
| September 24, 2007 | policy and procedures | K. Behrens | G. Godecke; T. Johnson | | Communication between KCI employees and in-house counsel re: compliance risks |

*Region D Probe Audit distribution list (DL) includes in-house and outside counsel, as well as non-attorney KCI employees or consultants, but not third parties.

CONFIDENTIAL

**Exhibit H**
**Page 98**

US ex rel Godecke/Hartpence v. KCI, et al

DOCUMENT LOG FOR RELATOR GODECKE MATERIAL

| September 26, 2007 | Timeline 109 issues | K. Behrens | G. Godecke, T. Johnson | Communication between KCI employees and in-house counsel re: 109 issue; w/ attachment |
|---|---|---|---|---|

*Region D Probe Audit distribution list (DL) includes in-house and outside counsel, as well as non-attorney KCI employees or consultants, but not third parties.

CONFIDENTIAL

**Exhibit H**
**Page 99**

# Exhibit I

## DECLARATION OF KENT A. KAWAKAMI

I, Kent A. Kawakami, declare:

1.   I am an Assistant U.S. Attorney in the Office of the United States Attorney for the Central District of California. I was the taint review attorney for the cases entitled <u>U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.</u>, case no. CV 08-01885 GHK, and <u>U.S. ex rel. Godecke v. Kinetic Concepts, Inc., et al.</u>, case number CV 08-04406 GHK. I have personal knowledge of the facts stated herein, unless otherwise noted. I give this declaration with the explicit understanding that Kinetic Concepts, Inc. ("KCI") has agreed that this declaration is not intended to, and does not, waive any common interest privilege the United States has with relators Geraldine Godecke and Steven Hartpence, or any attorney work product privilege. I further give this declaration with the explicit understanding that KCI also has agreed that KCI will not seek to depose me or anyone else from our U.S. Attorney's Office, or seek testimony at a hearing (except as may be required by the Court).

2.   My involvement in these two *qui tam* cases was solely to review documents, which relators had provided to our office, for potential privilege, and to screen out any documents that in my judgment were likely privileged. I had no other involvement in these cases. The AUSAs who were substantively assigned to the case were first Howard Daniels, and then subsequently Abraham

Exhibit I
Page 100

Meltzer.

3.   The first question KCI asks in its letter of August 11, 2011 is: "Of the 62 documents provided by Ms. Godecke as noted on the attached schedule, please identify the 33 documents that your taint team concluded were privileged in their entirety, and the 4 documents that were subject to redaction."

3.A. In response to this first question, I was the sole taint attorney on this matter and constituted the entire "taint team."

3.B. My review concluded that 33 documents appeared to be privileged, and that portions of 4 other documents also appeared to be privileged.  In determining that these documents, and portions of documents, appeared to be privileged, I exercised a high abundance of caution and consciously attempted to err on the side of over inclusion, and make no representation that I believe that a court would find them privileged.

3.C.  Attached to this declaration as Exhibit A is a schedule of documents equivalent to the one KCI provided to our U.S. Attorney's Office ("USAO").  I have identified on the schedule the 33 documents that I determined appeared to be privileged, and the additional 4 documents that had portions that I determined appeared to be privileged.

3.D.  Attached as Exhibit B are the redacted 4 documents as I redacted them (the redacted portions being what I

Exhibit I
Page 101

determined appeared to be privileged).

4.     The second question KCI asks in its letter is: "Did Ms. Godecke or Mr. Hartpence provide any other documents that, after undergoing a taint team review, were determined to be privileged in whole or in part?  If so, please identify those documents in a format similar to that set forth in the enclosed schedule."

4.A. In response to this second question, before providing the 62 documents discussed in paragraph 3 above, relators had previously provided other documents to our USAO.  I determined that 4 of those documents appeared to be privileged (exercising the high abundance of caution and attempting to err on the side of over inclusion, as discussed above).  Attached as Exhibit C is a list of those 4 documents.

4.B. At or about the same time that I reviewed the 62 documents discussed in paragraph 3 above, the relators provided an additional 10 documents to our USAO for a privilege review. All of these documents, however, were duplicates of documents included in the 62 documents discussed in paragraph 3 above.

5.     The third question that KCI asks in its letter is: "Were the taint team's privilege determinations made known to Ms. Godecke, Mr. Hartpence or their counsel?  If so, on what date(s)."

5.A. In response to this third question, I made my determinations that the documents appeared to be privileged known

**Exhibit I**
**Page 102**

to Mark Kleiman, counsel for relators.  (I had no direct communications with either Ms. Godecke or Mr. Hartpence.)

5B.  In approximately April, 2008, I informed Mr. Kleiman by phone that one document that had been included in Mr. Hartpence's initial disclosure statement appeared to be privileged, again using the same standards of erring on the side of caution and over inclusion.

5C.  On July 18, 2008, I informed Mr. Kleiman by e-mail that 2 documents appeared to be privileged.  On July 30, 2008, I informed Mr. Kleiman that 2 more documents may also be privileged.  I again used the same standards of erring on the side of caution and over inclusion.  One of the two documents, referenced in the July 30 e-mail, was a duplicate of the document included in Mr. Hartpence's initial disclosure statement, as discussed in paragraph 5B.

5.D. On July 27, 2009, I informed Mr. Kleiman by e-mail of my findings regarding the 62 documents (33 of which were determined to appear to be privileged) discussed in paragraph 3.

6.  KCI's fourth and final question in its letter is: "Please explain the disposition of any KCI documents determined by the taint team to be privileged."

6.A. I segregated and set aside the documents, and portions of documents, that I determined appeared to be privileged.  Those documents, and portions of documents, were not

Page 4 of  5

**Exhibit I**
**Page 103**

provided to anyone else.  I am the only person in our USAO who has reviewed those documents, and portions of documents, that I determined appeared to be privileged, and I am the only person in our USAO who retains custody of them.

Executed at Los Angeles California on September _12_ ,2011.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Kent Kawakami_
KENT A. KAWAKAMI

Page 5 of  5

Exhibit I
Page 104

| | | |
|---|---|---|
| July 13 - 14, 2006 | Collecting Medical Records | potential ACP |
| July 14, 2006 | "New" DMERC Policy | potential ACP |
| July 14 - 18, 2006 | Need for outside medical testimony | potential ACP |
| July 14 - 18, 2006 | Need for outside medical testimony | potential ACP |
| July 26, 2006 | Region B Pre-pay NPWT Review | not ACP |
| August 1 - 14, 2006 | GREEN FOLDER: New Restart  Letter of Necessity Cover Letter | not ACP |
| August 16 - 17, 2006 | Attached Document | potential ACP |
| August 22, 2006 | Mtg with Dr. Hughes | not ACP |
| September 5, 2006 | text from Donna | not ACP |
| September 6, 2006 | Choate Decisions | potential ACP |
| September 7 - 8, 2006 | CO Medicaid | potential ACP |
| September 25, 2006 | Secondary Insurance | potential ACP |
| April 5 - 6, 2007 | Updated denial spread | potential ACP |
| June 14, 2007 | Document2 | potential ACP; and attachment potential ACP |
| July 13 - 15, 2007 | Pre-Hearing Conference with Judge Schroeder | potential ACP |
| July 31 - August 1, 2007 | More Claims | potential ACP |
| August 1, 2007 | Regarding claim documentation | potential ACP |
| August 7, 2007 | Updated NPWT LCD | not ACP |
| August 8 - 9, 2007 | Region D Cover Letter | potential ACP |
| August 13 - 23, 2007 | RAC contractor names Audit DL | not ACP |
| August 15, 2007 | 00054363.tif | not ACP |
| August 15, 2007 | Letter to Service Centers and PFS | potential ACP |
| August 15 - 16, 2007 | Medicare Audit Meeting Agenda 8/16/07 | not ACP |
| August 16, 2007 | Tracking Our Progress-Medicare RegionC & D 2007 w-percent complete.xls | not ACP |
| August 17 - 20, 2007 | RAC - Confirmation Request | potential ACP |
| August 20, 2007 | Document1 | not ACP |
| August 20 - 22, 2007 | Letter | potential ACP |
| August 20 - 22, 2007 | Letter | potential ACP |
| August 22, 2007 | RAC audits | not ACP |
| August 22, 2007 | Trust Solutions | not ACP |
| August 23, 2007 | Database meeting this morning | not ACP |
| August 23 - 24, 2007 | Regional RAC Audit Timeline | potential ACP |
| August 27, 2007 | Audit Count MMO 82607.xls | not ACP |
| August 27 - 28, 2007 | Follow up info on 109 acute denials from this morning's call | not ACP |
| August 27 - September 4, 2007 | updated spread | redacted |
| August 28, 2007 | KCI risk position | potential ACP |
| August 29, 2007 | Region D info | not ACP |
| August 29, 2007 | Audit refunds | did not review |
| August 29-30, 2007 | Audit DB | not ACP |
| August 29-30, 2007 | Audit DB | not ACP |
| August 29 - September 6, 2007 | Connolly schedule | potential ACP |
| August 31 - September 1, 2007 | Fulbright Opinion | redacted |
| September 4 - 5, 2007 | Shannon - Did you send me this and I missed it? | redacted; and attachment potential ACP |
| September 4, 2006 - September 26, 2007 | wishlist | potential ACP; and attachment potential ACP |
| September 7, 2007 | Schroeder spread | potential ACP; and attachment potential ACP |

EXHIBIT A

**Exhibit I**
**Page 105**

| September 12 - 13, 2007 | SNF refunds | potential ACP |
|---|---|---|
| September 13, 2007 | Acute Transition process 0907 | potential ACP |
| September 17, 2007 | reopening new option | potential ACP |
| September 19 - 24, 2007 | Resolved Claims that are a couple of days off due to inpatient days | redacted |
| September 24, 2007 | policy and procedures | potential ACP |
| September 26, 2007 | Timeline 109 Issues | potential ACP; and attachment potential ACP |

EXHIBIT A

Exhibit I
Page 106

| DATE | SUBJECT | COUNSEL | NON-ATTORNEY KCI EMPLOYEE(S) | DESCRIPTION | DATE INFORMED RELATOR'S COUNSEL OF POTENTIAL ACP |
|---|---|---|---|---|---|
| Jan. 16, 2004 | Draft 1.6 of Field Memo on VAC Documentation review guidelines | Noll, Kurlander, Scherb | Morris, Fashek, Hartpence, Pahwa, Schroeder | Email; w/ 2 attachments | 4/2008, 7/30/2008 |
| Nov. 6-27, 2006 | Attorney-Client Privledge FW: Medicare HA0 Comment File | Lundy, Seidel, Behrens | Hartpence, Roerink, Reynolds | Emails | 7/18/2008 |
| Nov. 6-10, 2006 | Attorney-Client Privledge FW: Medicare HA0 Comment File | Lundy, Seidel | Hartpence, Roerink, Reynolds | Emails | 7/18/2008 |
| Oct. 20-21, 2004 | FW DMERC Response – Draft 1.0 | Noll | Hartpence, Morris, Ware, Fashek, Rush, Philbeck, Swindle | Emails; w/ 2 attachments | 7/30/2008 |

EXHIBIT C

Exhibit I
Page 107

# Exhibit J

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, DC 20005-2111
———
TEL: (202) 371-7000

FAX: (202) 393-5760

www.skadden.com

DIRECT DIAL
202.371.7310
DIRECT FAX
202.661.2310
EMAIL ADDRESS
GREG.LUCE@SKADDEN.COM

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
STONEY
TOKYO
TORONTO
VIENNA

**CONFIDENTIAL**

July 10, 2009

*VIA FEDERAL EXPRESS*
Ms. Geri Godecke
2312 Hwy 91S
Dillon, Montana 59725

RE:   Kinetic Concepts, Inc.

Dear Ms. Godecke:

I write on behalf of our client, Kinetic Concepts, Inc. ("KCI").   We understand you were previously employed by KCI, which has authorized us to contact you.

We have reason to believe you retained KCI's documents, information, and communications ("KCI material") after your employment ended in September 2007. During your employment, for instance, you were routinely observed saving and storing KCI material to a portable electronic device such as a thumb drive or memory stick.   It is our understanding that this and perhaps other material was not returned to KCI upon your departure.   Accordingly, we request the immediate return of any KCI material taken, together with all copies thereof.

To the extent privileged KCI material was taken, KCI did not authorize you to do so, nor did KCI authorize you to waive any privilege or work product protection on its behalf.   Indeed, there has not been such a waiver.   Accordingly, we request that you promptly notify us of any person or persons with whom you have shared or disclosed any privileged KCI material and when we can expect its return.

**Exhibit J**
**Page 108**

Ms. Geri Godecke
July 10, 2009
Page 2


     In the absence of a response from you on the issues raised above, KCI has directed us to take all measures reasonably necessary to secure the return of KCI material.

     We appreciate your anticipated cooperation.  Please feel free to contact me if you wish to discuss further.

        Sincerely,

        Gregory M. Luce

# Exhibit K



Aug 5, 2009

Mr Luce,

I returned home to a
letter I received by fedex
dated July 10, 2009 I don't
know where you got your
information, but I took nothing
from KCI after I was
fired. In fact, I wasn't
even allowed back into my
office to do anything. I can't
believe KCI continues to use
intimidation and threatening letters
from lawyers to bully me 22 months
after I was fired off-site in a
hotel room. KCI has already scared
its Montana employees away from
any kind of interaction with me,
feeling if they are caught they'll lose



their job. Consequently, our hometown
business has been impacted by the
100 plus families that no longer
feel they can patronize our resteraut.

It is very Stressful for me to
be the target of KCI's demaning
tactics. Do not Hallmark contact me again

Geri Godelke

# Exhibit L

# LAW OFFICES OF MARK ALLEN KLEIMAN

LAWYER

2907 STANFORD AVENUE
VENICE, CALIFORNIA 90292

TELEPHONE  (310) 306-8094
FACSIMILE   (310) 306-8491

*Mark A. Kleiman*
MKLEIMAN@QUITAM.ORG

*Pooja Rajaram*
PRAJARAM@QUITAM.ORG

June 23, 2011

***VIA ELECTRONIC MAIL***

Gregory M. Luce, Esq.
Skadden, Arps, Slate, Meagher & Flom
1440 New York Avenue, N.W.
Washington, D.C. 20005-2111
greg.luce@skadden.com

Re:   U.S. ex rel Hartpence v KCI, et al.
2:08-cv-01885 GHK (CD-CA)

Dear Mr. Luce

This letter is intended to memorialize the items discussed during our telephone call of June 21.

You inquired about the number of documents reflecting attorney client communications which Mr. Hartpence had.  I confirmed that the six documents we had previously enumerated were the only six documents reflecting attorney client communication in his possession.  I also informed you that shortly after KCI fired him, Mr. Hartpence was told that KCI would send someone to his home to pick up documents and other company property he had there, but that no one ever came.

For purposes of completeness I also told you about some attorney work product he had which had been given him by Ms. Godecke.  The material in question was the basic brief (including exhibits) prepared by Donna Thiel, Esq., who was then at Latham and Watkins,  entitled "Pre Hearing Brief in Support of Claims Submitted by Appellant, Kinetic Concepts Inc. Before the Office of Medicare Hearings and Appeals." As best we can tell it is a generic compilation that was used in many, if not all of KCI's Medicare appeals.  As we discussed no one has an electronic copy of this document.  However, I am securing one of the paper copies and will forward it to your office.

We discussed your request that we electronically forward the six documents Mr. Hartpence has reflecting attorney client communications.  Along with this letter, which is being sent electronically, I am attaching that file.  I stated that before sending it electronically, I had wanted to discuss with you whether your client required that it be transmitted via a secured FTP site, or whether email transmission was acceptable.  I had wanted to discuss that because arguments have been raised in past cases that using unsecured email to transmit documents somehow waived claims about the documents' ostensibly privileged character.  I assured you that the Relators would not take the position that KCI's consent to have this document transmitted via electronic mail somehow constituted a waiver of KCI's claims that the documents

**Exhibit L**
**Page 113**

Gregory M. Luce
June 23, 2011
Page Two

enjoy privileged status.  (Although we dispute their privileged status, that dispute is based upon other grounds, and not on the grounds that KCI has requested that we use an unsecured form of transmission.) You told me that transmission via electronic mail was sufficient.

We briefly touched on attorney-client communications which Ms. Godecke had.  I explained to you during our call, as I had in previous emails, that Mr. Hritsco was in trial, and that Ms. Kennedy and I were not comfortable having a detailed discussion about Ms. Godecke's documents without him.  (I have since been able to confirm that he is available on Monday, June 27, and I would propose any time after 2 p.m. Eastern.)  While not going into details about Ms. Godecke's case without him, I was able to confirm to you that (a) Ms. Godecke has sixty-two documents that reflected attorney-client communications (although we dispute their privileged nature), and (b) None of the documents were used in preparing any of Ms. Godecke's or Mr. Hartpence's pleadings. I offered to return the documents to you electronically.  We discussed the fact that sending sixty-two attachments via email was cumbersome and apt to lead to confusion.  I offered to transmit the documents via a secured, commercial FTP site I use.  Mr. Oprison of your firm has provided me with a memorandum containing three pages of instructions on how to accomplish this.  The instructions apparently require that I be willing to install Skadden software on my firm's computer. This is a two-person office. I do not have a "Law Technology Department" that can guarantee the security of my systems and this just strikes me as a bad idea.  Since we are talking about files small enough to easily fit on a CD, I would propose that I simply burn them onto a CD and send it to you.

I raised the question of the content of ¶171 of Mr. Hartpence's Third Amended Complaint.  I reminded you, as I had stated in my immediately prior letter to you,  that although Mr. Hartpence had intended the last sentence in this paragraph to quote from documents KCI had previously submitted to Medicare (copies of which had been produced by KCI to the Department of Justice), he had inadvertently used language from a draft containing very similar language, which draft had been forwarded (or written) by one of KCI's company lawyers.  I offered to file a notice of errata with the Court, indicating that ¶171 should actually end after the existing phrase, "[T]his was rejected as too straightforward.".  You stated that you wanted a couple of days to mull this over.

When I asked how you had handled issues of this nature which had arisen in your practice before, you said that you had filed motions to strike the offending language.  Such a motion is not necessary here because we agree that the language referred to in ¶171 should be removed; and we are filing a Notice of Filing a Corrected Third Amended Complaint to achieve that goal.  A courtesy copy of that Notice accompanies this letter.  Out of an abundance of caution the Notice of Filing a Corrected Third Amended Complaint will cover a similar redaction of two lines in ¶241 which describe KCI's use in Medicare appeals hearings of a passage in a book that was referenced in Ms. Thiel's material.  Although we know that this portion of the book was specifically cited in the Medicare appeals hearings, some of our information is derived from Ms. Thiel's brief and we wished to err on the side of caution. We do not agree that a 91-page complaint should be entirely sealed when removing four lines from that complaint would give  KCI the protection it says that it needs.  The Corrected Third Amended Complaint has been received by the court and as soon as it is deemed filed, we will stipulate that the previously filed Third Amended Complaint may be sealed.  Please contact me so that we have sufficient time to work out agreed language for the stipulation.

**Exhibit L
Page 114**

Gregory M. Luce
June 23, 2011
Page Three

More generally, I briefly discussed the other things you had requested in your letter of June 11, 2011. I explained to you that I did not believe that the California state authority you cited in that letter was controlling in a case over which Article III courts exercised original jurisdiction, and that I believed that federal common law controlled. I told you that this was a new issue to Relators' counsel and that we wanted to prudently discharge our duties to our clients, as well as to you and to the courts, and that this prudence was going to require research on our part. I explained that we had nearly six hundred pages of secondary source material and case analyses to digest, and that the issues were complicated by the factual setting. I pointed out, by way of example, that although the questions you had posed in your June 11 letter were reasonable, answers to some of them could not be given without implicating the privilege jointly claimed by the Department of Justice, as well as the Relators, and that this would require some sorting out and consultation with the Government. I also pointed out that your request for the immediate return of *all* documents reflecting attorney client communications would, if honored, prevent anyone on our team from fully reviewing the two complaints, which between them comprise over one hundred fifty pages, to ensure that we have fully accounted for any possible derivative use of the materials in the pleadings. I proposed that as soon as that review was completed, that you and I agree as to some mutually acceptable third party to act as a sort of escrow agent, and to hold onto the documents pending further instruction from the court. The review was completed this morning, so the next step is to consider how the documents are to be preserved pending judicial evaluation of KCI's claims of privilege and our disputes as to whether privilege attaches, and our further claims that privileges which may have attached have been waived.

Lastly, you renewed KCI's request that the Relators stipulate to unsealing of the previously filed complaints. I replied that in our view the "relation back" doctrine obviated the need for unsealing the prior complaints, but that we were open to carefully reviewing any authority you might advance in support of your position.

If you think I've omitted anything material, or that I've gotten any of this wrong, please let me know.

Sincerely,

Mark Kleiman

MAK/prs

Attachments

**Exhibit L
Page 115**

# Exhibit M

# Skadden, Arps, Slate, Meagher & Flom llp

FOUR TIMES SQUARE

NEW YORK 10036-6522

———

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

DIRECT DIAL
202.371.7310
DIRECT FAX
202.661.2310
EMAIL ADDRESS
Greg.Luce@Skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

June 11, 2011

*VIA EMAIL*

Mark Allen Kleiman, Esq.
Law Offices of Mark Kleiman
2907 Stanford Avenue
Venice, California 90292
mkleiman@quitam.org

RE:   <u>U.S. ex rel Steven J. Hartpence v. Kinetic Concepts,
      Inc., et al., Case No. 2:08-cv-01885 GHK (CDCA)</u>

Dear Mr. Kleiman:

I have received your letter dated June 10, 2011, which responded to my June 8, 2011 letter concerning your client's possession of our client's privileged documents.

Your response appears to concede that you and your client are currently in possession of communications between KCI and its attorneys. Such communications are presumptively confidential and privileged. *Gordon v. Superior Court of L.A. County*, 55 Cal. App. 4th 1546, 1557 (1997) ("[C]ommunications between a lawyer and his client are presumed confidential . . . .").

As I am sure you are aware, the appropriate course upon discovering potentially privileged material is to notify opposing counsel and follow counsel's instructions, or refrain from reviewing or using the materials until the matter can be litigated. *See* Am. Bar Ass'n Standing Comm. on Ethics and Prof. Resp., Formal Op.

**Exhibit M**
**Page 116**

Mark Allen Kleiman, Esq
June 11, 2011
Page 2

94-382 (1994) ("A lawyer who receives on an unauthorized basis materials of an
adverse party that she knows to be privileged or confidential should, upon
recognizing the privileged or confidential nature of the materials, either refrain from
reviewing such materials or review them only to the extent required to determine
how appropriately to proceed; she should notify her adversary's lawyer that she has
such materials and should either follow instructions of the adversary's lawyer with
respect to the disposition of the materials, or refrain from using the materials until a
definitive resolution of the proper disposition of the materials is obtained from a
court."); *see also* Am. Bar Ass'n Standing Comm. on Ethics and Prof. Resp., Formal
Op. 92-368 (1992); *Rico v. Mitsubishi Motors*, 42 Cal. 4th 807 (2007).

Our instructions regarding communications between any employee of KCI
and any in-house or outside attorney representing KCI ("KCI Attorney-Client
Communications") in your possession or your client's possession are as follows:

1.  Cease any and all review or use of KCI Attorney-Client
    Communications.

2.  Deliver to our offices an electronic copy and all hard copies (and
    destroy all other electronic copies) of KCI Attorney-Client
    Communications in your possession, custody or control or your
    client's.

3.  If KCI Attorney-Client Communications or any portions thereof are
    contained or referenced in any work product, please (a) segregate and
    seal all copies of such work product, (b) permanently redact all
    references to KCI Attorney-Client Communications from the work
    product, or (c) permanently expunge all references to KCI Attorney-
    Client Communications from the work product.

4.  Identify when you first determined that your client possessed KCI
    Attorney-Client Communications.

5.  Identify in writing all recipients of KCI Attorney-Client
    Communications or any portions thereof and the dates they received
    them, notify any recipients of the privilege issue, and ensure that they
    take steps 1 through 3.

6.  Identify any and all communications in which KCI Attorney-Client
    Communications were disclosed, summarized, characterized, or
    repeated in any manner.

Mark Allen Kleiman, Esq
June 11, 2011
Page 3

   7.    Identify any other use, whatsoever, made of the information contained in KCI Attorney-Client Communications during the course of the your representation of Mr. Hartpence.

   8.    Confirm in writing that the foregoing has been accomplished and that you, your co-counsel, and your client will not further review, copy, disclose, disseminate, or use in any manner whatsoever KCI Attorney-Client Communications or any portion of their contents.

We propose that following your adherence to these instructions, we will conduct our own review of any KCI Attorney-Client Communications, and will produce back to you any communications we conclude are not subject to the attorney-client privilege, along with a privilege log identifying all documents we conclude are subject to the attorney-client privilege.

We wish to avoid litigation over an issue like this at such an early stage of the proceedings.  Preserving the privilege, however, is of paramount importance. Accordingly, please advise by close of business Monday, June 13, 2011 whether you assent to the foregoing.  In the absence of your assent, we will have no choice but to raise this issue with the Court.

Sincerely,

Greg Luce /CGL/

Gregory M. Luce

cc:    All Counsel of Record

**Exhibit M**
**Page 118**

# Exhibit N

**From:**      Oprison, Christopher G (WAS)
**To:**        'Mark Kleiman'; akennedy@mcknightandkennedy.com;
               hritsco@qwestoffice.net; 'Mark Kleiman';
               akennedy@mcknightandkennedy.com; hritsco@qwestoffice.net
**Subject:**   US ex rel Hartpence v. KCI et al; US ex rel Godecke v. KCI et al
**Date:**      6/21/2011 6:02:36 PM
**CC:**        Luce, Gregory M (WAS); Umhofer, Matthew D (LAC); Napolitano,
               Steven F (NYC); Ram, Colin V (WAS); Luce, Gregory M (WAS);
               Umhofer, Matthew D (LAC); Napolitano, Steven F (NYC); Ram, Colin V
               (WAS)

**BCC:**

**Message:**
Counsel

This email follows our telephone conference today during which you revealed your client Mr.
Hartpence relied on and quoted from at least one privileged attorney-client communication of KCI,
if not more, in preparing his now publicly-available Third Amended Complaint.  We also confirmed
during our call that your other client, Ms. Godecke, shared privileged information and
communications with Mr. Hartpence and may have relied on such communications in the
preparation of her now publicly-available Second Amended Complaint.  Upon further reflection
following our call, and given the emergent need to preserve KCI's privilege and work product
protections, we believe Relators should seek immediate restoration of the seals over their
respective complaints until resolution of this issue.  Accordingly, please advise by 9 am Pacific on
Wednesday June 22 whether Relators will agree to submit an emergency stipulation (under seal)
regarding sealing the Third Amended Complaint in *US ex rel Hartpence v. KCI, et al* and the
Second Amended Complaint in *US ex rel Godecke v. KCI, et al.*. Should we not hear from you,
we will need to seek *ex parte* relief from the Court.

As we also discussed during our call, you agreed to provide copies of all attorney-client
communications or work product of KCI currently in the possession of Ms. Godecke and Mr.
Hartpence.  Electronic documents can be posted to our secure FTP site
at https://secureftp.skadden.com, Username: 692010_0020 and Password (case
sensitive): 8t6nrk.  Uploading instructions are attached.  Please return by overnight mail or federal
express any hard copy documents, including the legal analysis document authored by KCI's
outside counsel that, as you indicated during our call, Ms. Godecke shared with Mr. Hartpence.

Finally, despite our prior demands, you declined during our call to immediately destroy or return
to us *all* copies of KCI's attorney-client communications or work product in your or your clients'
possession.  Until resolution of this issue, please refrain from using, reviewing, relying on or
disseminating any attorney-client communications or work product of KCI.  In the interim, all
such material should be segregated and sealed.  On behalf of yourself, your co-counsel, and both
of your clients, please provide written confirmation agreeing to these terms.

We look forward to hearing from you.

**Christopher G. Oprison**
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W. | Washington | D.C. | 20005-2111
T: 202.371.7795 | F: 202.661.0595 | C: 202.664.6543
christopher.oprison@skadden.com

Skadden

**Attachments:**
Skadden FTP Upload Instructions.doc

**Legal Technology Department**
Skadden, Arps, Slate, Meagher & Flom LLP

# Skadden Secure-FTP Instructions

UPLOADING FILES TO SKADDEN'S FTP SITE

1. From an Internet browser, access the Skadden ftp site at the following address: https://secureftp.skadden.com



2. Log into the site using the login and password that was provided.

NOTE: If the following Wizard Installation message appears, the Java Wizard must be installed to upload files. To install Java, click the **Try to install the Java Wizard** link.



3. Click the **CLICK HERE to Launch the Java Upload Wizard** link under the "Upload a file now" section.



**Legal Technology Department**
Skadden, Arps, Slate, Meagher & Flom LLP

*The following dialog box opens.*



4.  Click the **Add File** button and select the files to upload.
5.  Click the **Next** button.
    *The following dialog box opens.*



**Legal Technology Department**
Skadden, Arps, Slate, Meagher & Flom LLP

6. Click the **Next** button.
   *The files begin to upload to Skadden's ftp site.*



7. Click the **OK** button when the transfer is complete.
   *The upload is complete.*

**Exhibit N**
**Page 123**

## Legal Technology Department
Skadden, Arps, Slate, Meagher & Flom LLP

### DOWNLOADING FILES FROM SKADDEN'S FTP SITE

1. From an Internet browser, access the Skadden ftp site at the following address:
   https://secureftp.skadden.com



2. Log into the site using the login and password that was provided.
   *The following web page opens.*



**Legal Technology Department**
Skadden, Arps, Slate, Meagher & Flom LLP

3. Click the **Go To Your Home Folder** link to download a file
   *The following screen appears.*



4. Click the file name to download from the File Name section.
   *The following option appears.*



5. Click Download link to download the file.

**Exhibit N**
**Page 125**

# Exhibit O

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

300 SOUTH GRAND AVENUE

LOS ANGELES, CALIFORNIA 90071-3144

TEL: (213) 687-5000

FAX: (213) 687-5600

www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
CHICAGO
HOUSTON
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
—
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
213.687.5276
DIRECT FAX
213.621.5276
EMAIL ADDRESS
MaSloan@Skadden.com

July 25, 2011

*VIA E-MAIL AND FEDERAL EXPRESS*

Mark Allen Kleiman, Esq.
Law Offices of Mark Kleiman
2907 Stanford Avenue
Venice, California 90292
mkleiman@quitam.org

RE:   *U.S. ex rel. Steven J. Hartpence v. Kinetic Concepts, Inc., et al.*, Case No. 2:08-cv-01885 GHK (CDCA), and *U.S. ex rel. Geraldine Godecke v. Kinetic Concepts, Inc., et al.*, Case No. 2:08-cv-06403-GHK (CDCA)                .

Dear Mr. Kleiman:

I write on behalf of our clients, Kinetic Concepts, Inc. and KCI USA, Inc. (collectively, "KCI" or the "Defendants"), to summarize and confirm our understanding of your representations during our phone call of July 21, 2011 regarding the requested unsealing of relators' prior filings and the return of our attorney client communications and work product in your clients' possession.[1]  In addition, we repeat our demand that you immediately return all KCI company documents in your clients' possession.

---

[1]   In addition to ourselves, your co-counsel, Altomease Kennedy and William Hritsco, and my colleagues, Matthew Umhofer and Chris Oprison, also participated on the conference call.  In the course of this letter, I will sometimes refer to Ms. Kennedy, Mr. Hritsco and yourself collectively as "you."

**Exhibit O**
**Page 126**

Mark Allen Kleiman, Esq.
July 25, 2011
Page 2


A.     Proposed Unsealing of Relators' Prior Filings


Following several prior requests, we asked you during our call to stipulate to the limited unsealing of all filings that the relators have made in this case.  By seeking your stipulation to a limited unsealing, we hoped to avoid the time and expense of unnecessary litigation over what is virtually automatic in cases such as this once the government makes its intervention decision.  We explained that there is no basis for maintaining the seal over these prior filings particularly where, as here, the United States has concluded its investigation and opted not to intervene in either of relators' claims and there are currently two unsealed versions of Ms. Godecke's complaints.


You confirmed that, other than the prior complaints, relators had made no other substantive filings in this case, including their respective disclosure statements. You explained, however, that relators were not inclined to stipulate to the proposed unsealing, in part because the government had not requested the Court to unseal such prior filings.  We explained that, in fact, the United States Attorney's Office indicated that it would not oppose our request for limited unsealing and sent you AUSA Meltzer's email setting forth the government's position.  This morning, however, you informed my colleague Mr. Oprison, by email, that the government's notice that it would not oppose the KCI's motion to unseal did not change your refusal to stipulate to our proposed limited unsealing of the documents. Accordingly, we have no choice but to move ahead with our Motions to Unseal, which we plan to file today, pursuant to the briefing schedule agreed to by both parties.


B.     Return and Handling of KCI's Privileged Information and Work Product


We also inquired about the 62 documents possessed by Relator Godecke that you have identified as attorney-client communications, as well as the underlying documents in Mr. Hartpence's possession.  You agreed to send us these materials on a CD via overnight delivery.  On Friday, July 22, we received a disc containing the 62 documents taken and/or retained by Ms. Godecke, along with a list of the attorney's names Ms. Godecke apparently employed when determining whether any of the material was privileged.  We have not yet received any of the material taken and/or retained by Mr. Hartpence.  As discussed, we maintain that all such material is KCI's property taken or retained by Ms. Godecke or Mr. Hartpence without authority and must be promptly returned to KCI, or destroyed.  You agreed to

**Exhibit O**
**Page 127**

Mark Allen Kleiman, Esq.
July 25, 2011
Page 3

provide, by early this week, a written response to our June 11, 2011 letter discussing the steps you have taken to identify and safeguard potentially privileged documents and work product. Please confirm that you will promptly either return or destroy all copies of these documents in your or your clients' possession.

In addition to responding to our June 11 letter, please clarify whether Ms. Godecke personally performed the searches of company documents in her possession to identify potentially privileged documents, or whether you and your co-counsel have personally reviewed all such KCI company documents in relators' possession. Please also provide the criteria that Ms. Godecke, whom we understand has no legal training, employed to determine what documents potentially qualified as privileged or work-product information.

We would also appreciate written confirmation that other than the documents already produced to us from Mr. Hartpence and the 62 documents from Ms. Godecke, neither you nor your clients possess any other potentially privileged or work product documents. In connection with this, please provide a detailed explanation of the steps you and your co-counsel have taken to ensure that the relators do not have any additional potentially privileged or work-product documents in their possession.

C.     Request for the Immediate Return of All KCI Company Documents

Finally, we asked you for more details on the KCI documents in your and your clients' possession and repeated our demand that all such company documents be returned to us immediately. You represented that, in addition to the 62 potentially privileged documents referenced above, there are *hundreds* of additional documents (including e-mails) in Ms. Godecke's possession that you and Ms. Godecke have determined to be non-privileged. You also stated that Mr. Hartpence retained documents already in his possession when his employment ended. You indicated that Mr. Hartpence anticipated that KCI would retrieve the documents from his home at the time his employment ended, and that he would have been willing to return them at that time if KCI had requested them. You stated, however, that we are now in a different "forum" because litigation has commenced, and that you therefore were not willing to return KCI's documents absent KCI's agreement to engage in informal discovery and produce documents to the relators.

Mark Allen Kleiman, Esq.
July 25, 2011
Page 4


As you must know, holding KCI's company documents hostage in this manner is wholly improper and without foundation. These documents are KCI's company property and the relators had an obligation *not* to take them and to immediately return them to KCI upon their termination, whether requested to do so or not.   In addition to the fact that such continued possession may subject your clients to a potential conversion action, their refusal to return such documents is in clear violation of the confidentiality agreements which each signed as a condition of his or her employment.  Indeed, Mr. Hartpence's and Ms. Godecke's confidentiality agreements expressly provided that upon the termination of his or her employment, for any reason, each agreed to promptly deliver to the Company all lists, books, records, memorandum and all other tangible property or documents related to the business and affairs of the Company which were then in his or her possession or control.


In light of the unequivocal language in these agreements, we repeat our demand that the relators immediately return all KCI company documents in their possession to Defendants.  If you do not, we will consider seeking all available relief, including moving the court in this matter to compel their return and/or filing separate actions  for breach of the confidentiality agreements and conversion of KCI property. *See, e.g., Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 915 (4th Cir. 1997) (affirming summary judgment on counterclaim for breach of confidentiality agreements against plaintiff under False Claims Act who retained documents after leaving defendant's employment); *Deaton v. United Mobile Networks*, 926 S.W. 2d 756, 762-63 (Tex. App. 1996) (affirming claim against former employee for conversion of company documents).   Please inform us by the close of business on Friday, July 29 whether you are willing to return all KCI documents (originals and copies) in your clients' possession so that we may promptly consider whether to seek further legal remedies.


We appreciate your consideration of the foregoing.  Please do not hesitate to contact us if you should have any questions.

Sincerely,

Matthew E. Sloan


cc:   All Counsel of Record


637500-Los Angeles Server 1A - MSW

# Exhibit P

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C. 20005-2111

TEL: (202) 371-7000

FAX: (202) 393-5760

www.skadden.com

DIRECT DIAL
202.371.7795
DIRECT FAX
202.661.0595
EMAIL ADDRESS
CHRISTOPHER.OPRISON@SKADDEN.COM

FIRM/AFFILIATE OFFICES

BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

September 23, 2011

*VIA EMAIL AND FEDERAL EXPRESS*

Mark Allen Kleiman, Esq.
Law Offices of Mark Kleiman
2907 Stanford Avenue
Venice, California 90292
mkleiman@quitam.org

RE:   *U.S. ex rel Steven J. Hartpence v. Kinetic Concepts, Inc., et al.,*
      Case No. 2:08-cv-01885 GHK (CDCA); *U.S. ex rel Geraldine*
      *Godecke v. Kinetic Concepts, Inc., et al.,* Case No. 2:08-cv-
      06403 GHK (CD CA)

Dear Mr. Kleiman:

I write on behalf of our clients, Kinetic Concepts, Inc. and KCI-USA Inc. (collectively "KCI"). As you recall, our letter of July 25, 2011 followed a series of discussions regarding your and your clients' knowing continued possession of KCI's attorney-client communications and work product. We repeated our standing requests in the July 25 letter that you explain what steps you, your co-counsel and your clients have taken to identify and safeguard KCI's privileged documents and work product in your possession. We also requested that you immediately return all copies of KCI's documents in your or your clients' possession – whether privileged or not. You have refused to do so.

**Exhibit P**
**Page 130**

Mark Allen Kleiman, Esq
September 23, 2011
Page 2


Enclosed herewith, please find a declaration executed on September 12, 2011 by Assistant U.S. Attorney Kent Kawakami in the US Attorney's Office for the Central District of California.[1]  Mr. Kawakami, as you may recall, conducted a "taint" review of KCI's documents that Mr. Hartpence and Ms. Godecke took from KCI prior to or upon their respective terminations.   Mr. Kawakami's declaration confirms what you, Ms. Kennedy, and Mr. Hritsco already knew: you were aware in 2008 and 2009 that a large number of the documents in Ms. Godecke's and Mr. Hartpence's possession had been determined to be privileged and work product. Indeed, the privileged nature of those documents was facially apparent.  Your failure and refusal to return all privileged documents to KCI upon learning of their privileged nature is in clear contravention of your ethical and legal obligations. Additionally, as we suspected, you have continued to use and rely upon those privileged communications and work product in the pursuit of your qui tam actions against KCI.


Absent the immediate return of any and all KCI documents in your or your clients' possession, including all privileged and work product material, we intend to petition the Court to compel their prompt return.  Please advise by close of business Monday, September 26, 2011 whether you will agree to return KCI's documents. Failure to respond will be construed as a refusal to do so.


Transmittal of this letter satisfies our meet and confer obligations.


Sincerely,

Christopher G. Oprison


cc:     Counsel of Record
        AUSA Abraham C. Meltzer

---

[1]   Mr. Kawakami's Declaration included an Exhibit A, a schedule of the 62 documents reviewed that had been provided by Ms. Godecke, and an Exhibit C, a list of 4 additional privileged documents reviewed that had been provided to DOJ by relators, both of which are enclosed herewith.  Exhibit B to the Declaration, comprised of four redacted documents determined to be partially privileged, are not enclosed.  Although we agree with Mr. Kawakami's findings as to those documents he determined to be privileged in their entirety, we do not concede that the remaining documents are not privileged in their entirety as well.

DECLARATION OF KENT A. KAWAKAMI

I, Kent A. Kawakami, declare:

1.    I am an Assistant U.S. Attorney in the Office of the United States Attorney for the Central District of California.  I was the taint review attorney for the cases entitled <u>U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.</u>, case no. CV 08-01885 GHK, and <u>U.S. ex rel. Godecke v. Kinetic Concepts, Inc., et al.</u>, case number CV 08-04406 GHK.  I have personal knowledge of the facts stated herein, unless otherwise noted.  I give this declaration with the explicit understanding that Kinetic Concepts, Inc. ("KCI") has agreed that this declaration is not intended to, and does not, waive any common interest privilege the United States has with relators Geraldine Godecke and Steven Hartpence, or any attorney work product privilege.  I further give this declaration with the explicit understanding that KCI also has agreed that KCI will not seek to depose me or anyone else from our U.S. Attorney's Office, or seek testimony at a hearing (except as may be required by the Court).

2.    My involvement in these two *qui tam* cases was solely to review documents, which relators had provided to our office, for potential privilege, and to screen out any documents that in my judgment were likely privileged.  I had no other involvement in these cases.  The AUSAs who were substantively assigned to the case were first Howard Daniels, and then subsequently Abraham

Page 1 of  5

Meltzer.

3.    The first question KCI asks in its letter of August 11,
2011 is: "Of the 62 documents provided by Ms. Godecke as noted on
the attached schedule, please identify the 33 documents that your
taint team concluded were privileged in their entirety, and the 4
documents that were subject to redaction."

3.A. In response to this first question, I was the sole
taint attorney on this matter and constituted the entire "taint
team."

3.B. My review concluded that 33 documents appeared to
be privileged, and that portions of 4 other documents also
appeared to be privileged.  In determining that these documents,
and portions of documents, appeared to be privileged, I exercised
a high abundance of caution and consciously attempted to err on
the side of over inclusion, and make no representation that I
believe that a court would find them privileged.

3.C.  Attached to this declaration as Exhibit A is a
schedule of documents equivalent to the one KCI provided to our
U.S. Attorney's Office ("USAO").  I have identified on the
schedule the 33 documents that I determined appeared to be
privileged, and the additional 4 documents that had portions that
I determined appeared to be privileged.

3.D.  Attached as Exhibit B are the redacted 4
documents as I redacted them (the redacted portions being what I

Page 2 of  5

determined appeared to be privileged).

4.   The second question KCI asks in its letter is: "Did Ms. Godecke or Mr. Hartpence provide any other documents that, after undergoing a taint team review, were determined to be privileged in whole or in part?  If so, please identify those documents in a format similar to that set forth in the enclosed schedule."

4.A. In response to this second question, before providing the 62 documents discussed in paragraph 3 above, relators had previously provided other documents to our USAO.  I determined that 4 of those documents appeared to be privileged (exercising the high abundance of caution and attempting to err on the side of over inclusion, as discussed above).  Attached as Exhibit C is a list of those 4 documents.

4.B. At or about the same time that I reviewed the 62 documents discussed in paragraph 3 above, the relators provided an additional 10 documents to our USAO for a privilege review.  All of these documents, however, were duplicates of documents included in the 62 documents discussed in paragraph 3 above.

5.   The third question that KCI asks in its letter is: "Were the taint team's privilege determinations made known to Ms. Godecke, Mr. Hartpence or their counsel?  If so, on what date(s)."

5.A. In response to this third question, I made my determinations that the documents appeared to be privileged known

Page 3 of  5

Exhibit P
Page 134

to Mark Kleiman, counsel for relators. (I had no direct communications with either Ms. Godecke or Mr. Hartpence.)

5B. In approximately April, 2008, I informed Mr. Kleiman by phone that one document that had been included in Mr. Hartpence's initial disclosure statement appeared to be privileged, again using the same standards of erring on the side of caution and over inclusion.

5C. On July 18, 2008, I informed Mr. Kleiman by e-mail that 2 documents appeared to be privileged. On July 30, 2008, I informed Mr. Kleiman that 2 more documents may also be privileged. I again used the same standards of erring on the side of caution and over inclusion. One of the two documents, referenced in the July 30 e-mail, was a duplicate of the document included in Mr. Hartpence's initial disclosure statement, as discussed in paragraph 5B.

5.D. On July 27, 2009, I informed Mr. Kleiman by e-mail of my findings regarding the 62 documents (33 of which were determined to appear to be privileged) discussed in paragraph 3.

6. KCI's fourth and final question in its letter is: "Please explain the disposition of any KCI documents determined by the taint team to be privileged."

6.A. I segregated and set aside the documents, and portions of documents, that I determined appeared to be privileged. Those documents, and portions of documents, were not

Page 4 of 5

Exhibit P
Page 135

provided to anyone else.  I am the only person in our USAO who has reviewed those documents, and portions of documents, that I determined appeared to be privileged, and I am the only person in our USAO who retains custody of them.

Executed at Los Angeles California on September _12_ ,2011.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


_Kent Kawakami_
KENT A. KAWAKAMI

Page 5 of  5

| | | |
|---|---|---|
| July 13 - 14, 2006 | Collecting Medical Records | potential ACP |
| July 14, 2006 | "New" DMERC Policy | potential ACP |
| July 14 - 18, 2006 | Need for outside medical testimony | potential ACP |
| July 14 - 18, 2006 | Need for outside medical testimony | potential ACP |
| July 26, 2006 | Region B Pre-pay NPWT Review | not ACP |
| August 1 - 14, 2006 | GREEN FOLDER: New Restart Letter of Necessity Cover Letter | not ACP |
| August 16 - 17, 2006 | Attached Document | potential ACP |
| August 22, 2006 | Mtg with Dr. Hughes | not ACP |
| September 5, 2006 | text from Donna | not ACP |
| September 6, 2006 | Choate Decisions | potential ACP |
| September 7 - 8, 2006 | CO Medicaid | potential ACP |
| September 25, 2006 | Secondary insurance | potential ACP |
| April 5 - 6, 2007 | Updated denial spread | potential ACP |
| June 14, 2007 | Document2 | potential ACP; and attachment potential ACP |
| July 13 - 15, 2007 | Pre-Hearing Conference with Judge Schroeder | potential ACP |
| July 31 - August 1, 2007 | More Claims | potential ACP |
| August 1, 2007 | Regarding claim documentation | potential ACP |
| August 7, 2007 | Updated NPWT LCD | not ACP |
| August 8 - 9, 2007 | Region D Cover Letter | potential ACP |
| August 13 - 23, 2007 | RAC contractor names Audit DL | not ACP |
| August 15, 2007 | 00054363.tif | not ACP |
| August 15, 2007 | Letter to Service Centers and PFS | potential ACP |
| August 15 - 16, 2007 | Medicare Audit Meeting Agenda 8/16/07 | not ACP |
| August 16, 2007 | Tracking Our Progress-Medicare RegionC & D 2007 w-percent complete.xls | not ACP |
| August 17 - 20, 2007 | RAC - Confirmation Request | potential ACP |
| August 20, 2007 | Document1 | not ACP |
| August 20 - 22, 2007 | Letter | potential ACP |
| August 20 - 22, 2007 | Letter | potential ACP |
| August 22, 2007 | RAC audits | not ACP |
| August 22, 2007 | Trust Solutions | not ACP |
| August 23, 2007 | Database meeting this morning | not ACP |
| August 23 - 24, 2007 | Regional RAC Audit Timeline | potential ACP |
| August 27, 2007 | Audit Count MMO 82607.xls | not ACP |
| August 27 - 28, 2007 | Follow up info on 109 acute denials from this morning's call | not ACP |
| August 27 - September 4, 2007 | updated spread | redacted |
| August 28, 2007 | KCI risk position | potential ACP |
| August 29, 2007 | Region D info | not ACP |
| August 29, 2007 | Audit refunds | did not review |
| August 29-30, 2007 | Audit DB | not ACP |
| August 29-30, 2007 | Audit DB | not ACP |
| August 29 - September 6, 2007 | Connolly schedule | potential ACP |
| August 31 - September 1, 2007 | Fulbright Opinion | redacted |
| September 4 - 5, 2007 | Shannon - Did you send me this and I missed it? | redacted; and attachment potential ACP |
| September 4, 2006 - September 26, 2007 | wishlist | potential ACP; and attachment potential ACP |
| September 7, 2007 | Schroeder spread | potential ACP; and attachment potential ACP |

EXHIBIT A

| September 12 - 13, 2007 | SNF refunds | potential ACP |
|---|---|---|
| September 13, 2007 | Acute Transition process 0907 | potential ACP |
| September 17, 2007 | reopening new option | potential ACP |
| September 19 - 24, 2007 | Resolved Claims that are a couple of days off due to Inpatient days | redacted |
| September 24, 2007 | policy and procedures | potential ACP |
| September 26, 2007 | Timeline 109 Issues | potential ACP; and attachment potential ACP |

EXHIBIT A

| DATE | SUBJECT | COUNSEL | NON-ATTORNEY KCI EMPLOYEE(S) | DESCRIPTION | DATE INFORMED RELATOR'S COUNSEL OF POTENTIAL ACP |
|------|---------|---------|------------------------------|-------------|--------------------------------------------------|
| Jan. 16, 2004 | Draft 1.6 of Field Memo on VAC Documentation review guidelines | Noll, Kurlander, Scherb | Morris, Fashek, Hartpence, Pahwa, Schroeder | Email; w/ 2 attachments | 4/2008, 7/30/2008 |
| Nov. 6-27, 2006 | Attorney-Client Privledge FW: Medicare HAO Comment File | Lundy, Seidel, Behrens | Hartpence, Roerink, Reynolds | Emails | 7/18/2008 |
| Nov. 6-10, 2006 | Attorney-Client Privledge FW: Medicare HAO Comment File | Lundy, Seidel | Hartpence, Roerink, Reynolds | Emails | 7/18/2008 |
| Oct. 20-21, 2004 | FW DMERC Response - Draft 1.0 | Noll | Hartpence, Morris, Ware, Fashek, Rush, Philbeck, Swindle | Emails; w/ 2 attachments | 7/30/2008 |

EXHIBIT C

# Exhibit Q

**From:**      Oprison, Christopher G (WAS)
**To:**        mkleiman@quitam.org; akennedy@mcknightandkennedy.com;
               hritsco@qwestoffice.net
**Subject:**   KCI - Return/Destruction of Privileged Documents
**Date:**      12/14/2012 3:10:49 PM
**CC:**        Luce, Gregory M (WAS); Sloan, Matthew E (LAC); Ram, Colin V (WAS)
**BCC:**

**Message:**
Counsel

This email is in furtherance of our meet and confer obligations.  It is KCI's position that Relators and Relators' counsel are in violation of the Court's November 9, 2012 Order.  The Court-imposed December 10 deadline for the return of hard copy privileged documents and destruction of all privileged documents maintained in electronic format has now passed.  The following deficiencies should be redressed immediately:

**Hartpence Matter**

- Harddrive or other electronic media: to the extent that any of the KCI privileged documents in Hartpence's possession were maintained electronically (email attachment or saved to a computer), those must be destroyed.

- Hardcopy documents: all original KCI privileged documents taken by Mr. Hartpence must be returned, regardless of whether KCI has previously received *copies* of the hard copy documents in his possession.

- Certifications of compliance: we have received no certifications of compliance from Mr. Hartpence, Mr. Kleiman, Ms. Rajaram, or Ms. Kennedy.  We have received declarations from Mr. Hartpence (Dkt. 138), Altomease Kennedy (Dkt. 139), and William Goldstein for Mr. Kleiman (Dkt. 140), purporting that the declarants have complied with the November 9, 2012 Order.  The declarations do not satisfy the Court' directive.  Mr. Hartpence also filed redacted complaints purportedly in compliance with the Court's order, but has taken no steps to ensure the unredacted complaints have been placed under seal.

1

**Exhibit Q
Page 140**

**Godecke Matter**

- <u>Laptop Harddrive</u>:  Ms. Godecke's laptop hard drive was only received by Alix Partners  yesterday and the electronic data has not yet been deleted.

- <u>Hard Copy Documents</u>: we have received no KCI privileged documents in hard copy format from Ms. Godecke, regardless of whether KCI may have previously received *copies* of the hard copy documents.  To be clear, all hardcopy KCI privileged documents in Godecke's possession must be turned over.  All original copies of the "bankers box" documents, for instance, should be returned to KCI with *original* exhibit stickers affixed.

- <u>Certifications of compliance</u>: we have received no certifications of compliance from Ms. Godecke, Mr. Kleiman, Ms. Rajaram, Ms. Kennedy, or Mr. Hritsco that KCI's privileged documents in her and her counsel's possession have been returned (if hard copy) or destroyed (if maintained in electronic format).  You filed an identical set of Hartpence documents under the Godecke case number, which does not comply with the Order.  Ms. Godecke's complaints have not been redacted and the unredacted complaints have not been placed under seal.  Neither Ms. Godecke, Mr. Kleiman, Ms. Rajaram, Ms. Kennedy, nor Mr. Hritsco have taken any further action to ensure KCI's privileged documents retained by Godecke have been returned.

We intend to file a motion for a rule to show cause why Relators and Relators' counsel should not be held in contempt if the foregoing deficiencies are not resolved by close of business Tuesday, December 18.

Chris Oprison

**Christopher G. Oprison**
**Skadden, Arps, Slate, Meagher & Flom LLP**
1440 New York Avenue, N.W. | Washington | D.C. | 20005-2111
T: 202.371.7795 | F: 202.661.0595 | C: 202.664.6543
christopher.oprison@skadden.com
www.skadden.com

**Exhibit Q**
**Page 141**

# Exhibit R

**From:**     Mark Kleiman [mkleiman@quitam.org]
**To:**       Oprison, Christopher G (WAS)
**Subject:**  United States ex rel Hartpence / Godecke v KCI
**Date:**     12/18/2012 6:19:51 PM
**CC:**       Altomease Kennedy (akennedy@mcknightandkennedy.com); Bill Hritsco
              (hritsco@qwestoffice.net); PRS
**BCC:**

**Message:**

Chris,

Your haste is unseemly given that you have filed a motion that you had weeks or months to prepare and we have only eight days to oppose.  We will be happy to talk with you about this after we are filed on the 21st.

For now I would (briefly) remind you of the following:

1.  When we had a telephone conference with AlixPartners to discuss Ms. Godecke's computer you said that our approach seemed reasonable but that you wanted to run it past some of your colleagues and get back to me.  You never did.  Instead, I had to get back to you,  The four-day delay this caused can scarcely be laid at our doorstep.

2.  The distinction you seek to draw between a certification and a declaration is truly the elevation of form over substance.  Ms. Rajaram, by the way, never had any of these documents on her computer, so there is nothing to delete.  The outside counsel I hired to do this work is far more able than I to certify to what he did -- especially since KCI opposed my looking at documents to see to deletions.

3.  Both Ms. Kennedy and Mr. Hartpence have furnished declarations attesting to having removed the material.

4.  Additionally, we have in good faith sought to file a redacted version of the Corrected Third Amended Complaint.

I will be available to talk with you December 22, 23, 24, 26, and 27.

Mark

**Mark Kleiman | Law Office of Mark Allen Kleiman**
2907 Stanford Avenue |Venice, California 90292
T: 310.306-8094 | mkleiman@quitam.org  / www.quitamspecialist.com

**WARNING!!**

This email is protected by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521 and is legally privileged. The information contained in this email is only for use by the individual or entity named above. If you are not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, any dissemination, distribution or copying of this message is strictly prohibited. If you have received this message in error, please immediately call us collect at (310) 306-8094 and destroy the original message. Thank you.

1

**Exhibit R
Page 142**