# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

Present: The Honorable    CHRISTINA A. SNYDER

| CATHERINE JEANG | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

N/A          N/A

**Proceedings:**    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 454, filed January 31, 2019)

RELATOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY (Dkt. 456, filed January 31, 2019)

DEFENDANTS' MOTION IN LIMINE TO EXCLUDE EXHIBITS 1, 2, & 3 TO RELATOR'S SECOND SUPPLEMENTAL RESPONSE TO KCI'S FIRST SET OF INTERROGATORIES (Dkt. 455, filed January 31, 2019)

DEFENDANTS' MOTION TO STRIKE AND EXCLUDE DOCUMENTS FILED WITH RELATOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 465, filed February 15, 2019)

DEFENDANTS' MOTION IN LIMINE TO EXCLUDE DOCUMENTS WITH UNIDENTIFIED HANDWRITING AND MOTION TO STRIKE PARAGRAPH 38 OF THE LABATON DECLARATION (Dkt. 466, filed February 15, 2019)

DEFENDANTS' MOTION TO STRIKE AND EXCLUDE DOCUMENTS LODGED BY RELATOR ON FEBRUARY 16, 2019 (Dkt. 481, filed February 22, 2019)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

## I.   INTRODUCTION

On March 20, 2008, relator Steven J. Hartpence filed this qui tam action alleging that Kinetic Concepts, Inc. and KCI USA, Inc. (collectively, "KCI"), submitted false claims for payment to the U.S. government in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733. On March 20, 2008, Hartpence filed his original complaint under seal. Dkt. 1. On April 27, 2011, following a three-year investigation of the allegations in this matter and in a related action filed by another relator, Geraldine Godecke, the government declined to intervene. Dkt. 30. On June 23, 2011, Hartpence filed his Corrected Third Amended Complaint, dkt. 51, which is the operative pleading.

When the government chose not to intervene and the initial complaint was unsealed, KCI filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), arguing that the FCA's public disclosure bar deprived the Court of subject matter jurisdiction. Dkt. 74. On January 30, 2012, the Honorable George King, to whom this case was then assigned, granted KCI's Rule 12(b)(1) motion. Dkt. 102. The Court held that (1) the alleged fraud had been "publicly disclosed" and (2) Hartpence failed to qualify as an "original source" because he had not shown that he had a "hand in the public disclosure" of the fraud, a requirement by the Ninth Circuit announced in <u>Wang ex rel. United States v. FMC Corp.</u>, 975 F.2d 1412, 1418 (9th Cir. 1992). Hartpence appealed the dismissal, and in an en banc opinion, the Ninth Circuit overruled <u>Wang</u> and remanded the case to the district court[1] for reconsideration based on a new two-part test. See <u>U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.</u>, 792 F.3d 1121, 1123, 1129, 1132 (9th Cir. 2015). The court denied KCI's renewed 12(b)(1) motion on November 16, 2016. Dkt. 214.

On December 23, 2016, KCI filed a Rule 12(b)(6) motion to dismiss. Dkt. 218. On March 6, 2017, KCI's motion was denied in part and granted in part. Dkt. 235. Though Hartpence was given leave to amend, he did not file a fourth amended complaint.

On January 31, 2019, KCI filed a motion for summary judgment, dkt. 454 ("D. Mot."), and submitted a statement of uncontroverted facts and conclusions of law in

---

[1]     Upon Judge King's retirement, the case was randomly reassigned to the Honorable Beverly Reid O'Connell. Following the untimely death of Judge O'Connell, the case was reassigned to this Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

support thereof, dkt. 454-1 ("DSUF"). Hartpence filed an opposition on February 16, 2019, dkt. 468 ("R. Opp'n"), and submitted a statement of disputed facts and additional facts precluding summary judgment, dkt. 469 ("RSF"). On March 1, 2019, KCI filed a reply. Dkt. 488 ("D. Reply").

On January 31, 2019, Hartpence filed a motion for partial summary judgment as to liability, dkt. 456 ("R. Mot."), and submitted a statement of uncontroverted facts and conclusions of law in support thereof, dkt. 460 ("RSUF"). KCI filed an opposition on February 15, 2019, dkt. 464 ("D. Opp'n"), and submitted a response to Hartpence's statement of uncontroverted facts and conclusions of law, dkt. 464-1. On March 1, 2019, Hartpence filed a reply. Dkt. 489 ("R. Reply").

On January 31, 2019, KCI also filed a motion in limine to exclude Exhibits 1, 2, and 3 to Hartpence's supplemental response to KCI's first set of interrogatories. Dkt. 455. Hartpence filed an opposition on February 15, 2019. Dkt. 467. KCI filed a reply on March 4, 2019. Dkt. 494.

On February 15, 2019, KCI filed a motion to strike and exclude documents lodged with Hartpence's motion for partial summary judgment, dkt. 465, a motion in limine to exclude documents with unidentified handwriting, and a motion to strike paragraph 38 of a declaration filed by Hartpence, dkt. 566. Hartpence filed oppositions on February 25, 2019. Dkts. 482, 485. KCI filed replies on March 4, 2019. Dkts. 495, 496.

The Court held a hearing on March 18, 2019, and issued a tentative order granting summary judgment in KCI's favor. At the hearing, counsel for Hartpence contended that the Court's tentative order did not consider certain material facts in the record. The Court provided Hartpence with leave to file a supplemental brief identifying those exhibits in the record that he believed were overlooked by the Court. Hartpence filed his supplemental brief on May 3, 2019, dkt. 509, and later submitted a reformatted version of that brief on May 10, 2019, dkt. 512 ("Supp.").[2] KCI filed its response to that Hartpence's supplemental brief on May 16, 2019. Dkt. 512 ("Supp. Opp'n").

---

[2]     In contravention of the Court's explicit directions at the hearing, Hartpence included new legal arguments in his supplemental brief and attached several exhibits to were not before the Court in either party's earlier summary judgment submissions. As

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

The following facts are not meaningfully disputed and are set forth for purposes of background.  Unless otherwise noted, the Court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

### A.    KCI and Medicare Billing

### i.    KCI and Its Products

KCI is now a privately held company headquartered in San Antonio, TX, that manufactures and supplies durable medical equipment ("DME") for the delivery of negative pressure wound therapy ("NPWT").  DSUF No. 1.  Relator was KCI's Vice President and then Senior Vice President of Business Systems from approximately 2001 through July 2007.  DSUF No. 2.

KCI's NPWT products operate by delivering negative pressure (a vacuum) to a wound site through foam dressing, which draws the wound edges together, removes infectious materials, reduces edema, and promotes granulation tissue formation.  DSUF Nos. 5–6.  KCI's NPWT products include Vacuum Assisted Closure Therapy ("V.A.C. Therapy") devices.  DSUF No. 5.  Centers for Medicare and Medicaid Services ("CMS") approved NPWT as reimbursable under Medicare Part B on October 1, 2000, and CMS has continuously reimbursed KCI for NPWT services since that date.  DSUF No. 8.  As a supplier of durable medical equipment, KCI does not make the decision to treat a patient with V.A.C. Therapy.  DSUF No. 9.  Rather, the decision to prescribe V.A.C. Therapy is made by a patient's treating physician.  DSUF No. 10.  KCI bills the government for V.A.C. Therapy on behalf of Medicare beneficiaries who receive it.  D. Mot. at 4.

---

set forth herein, the Court nonetheless considers these new legal arguments and newly submitted evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

### ii.   Medicare Coverage and Local Coverage Determinations

Medicare covers treatment that is "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). CMS regulations reflect this same standard. 42 C.F.R. § 402.3. To process and pay reimbursement claims under this standard, CMS contracts with private companies known as Durable Medical Equipment Regional Carriers, or "DMERCS."[3] See 42 U.S.C. § 1395kk-1.

CMS divides the nation into four geographic regions for purposes of processing claims, called Regions A, B, C, and D, and each region is overseen by a DMERC. DSUF Nos. 12, 13; D. Ex. 11. DMERCs are permitted to issue "local coverage determinations" or "LCDs," which are sub-regulatory guidance reflecting the DMERCs' interpretation of Medicare coverage and what is "reasonable and necessary." See 42 U.S.C. §§ 1395kk-1(a)(4); 1395ff(f)(2)(B). LCDs are not binding in any review of a claim by CMS, by an ALJ, or by a reviewing court. See 42 C.F.R. § 405.1062(a). DSUF No. 53.

### iii.   LCDs Concerning NPWT Pumps

On October 1, 2000, each DMERC published substantially identical LCDs discussing NPWT. DSUF Nos. 16, 17. The LCDs list certain "coverage and payment" considerations and reflect the DMERCs' views as to the conditions under which the placement and continued use of a V.A.C. Therapy device is "reasonable and necessary" and thus covered by Medicare Part B. DSUF Nos. 18, 19. For wounds encountered in the outpatient setting, the LCDs state that "[a]n NPWT pump and supplies are covered when . . . [t]he patient has a chronic Stage III or IV pressure ulcer, neuropathic (for example, diabetic) ulcer, venous or arterial insufficiency ulcer, or a chronic (being present for at least 30 days) ulcer of mixed etiology." DSUF No. 20.

---

[3]   On October 1, 2005, the DMERCs were converted to Durable Medical Equipment Medicare Administrative Contractors ("DME MACs"), but the differences between DMERCs and DME MACs are immaterial for purposes of this case. See D. Mot. at 4. The Court refers to these CMS contractors as DMERCs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

### Continuous Wound Improvement

With respect to continuous wound improvement, the LCDs state that Medicare coverage for an NPWT pump ends when "[a]ny measurable degree of wound healing has failed to occur over the prior month."[4] DSUF No. 22. The LCDs define "[l]ack of improvement of a wound" as "a lack of progress in quantitative measurements of wound characteristics including wound length and width (surface area), or depth measured serially and documented, over a specified time interval." DSUF No. 24.

### Surgically Created Wounds

The LCDs cover an NPWT pump when "[t]he patient has complications of a surgically created wound (for example, dehiscence) or a traumatic wound (for example, pre-operative flap or graft) where there is documentation of the medical necessity for accelerated granulation tissue which cannot be achieved by other available topical wound treatments (for example, other conditions of the patient that will not allow for healing times achievable with other topical wound treatments)." DSUF No. 25.

### Monthly Wound Measurements

The LCDs state that "once placed on an NPWT pump and supplies, in order for coverage to continue a licensed medical professional must do the following: . . . On at least a monthly basis, document changes in the ulcer's dimensions and characteristics." DSUF No. 27 (emphasis added).

### iv.    KCI's Billing of V.A.C. Therapy Devices

KCI bills Medicare prospectively for V.A.C. Therapy equipment rental and supplies on a monthly basis by submitting reimbursement claims to the DMERC with jurisdiction over the geographic region of the beneficiary. DSUF Nos. 28, 32. Each month of V.A.C. Therapy is called a "cycle" for billing purposes. DSUF No. 31. KCI submits reimbursement requests electronically using CMS's "Form 837." DSUF No. 33.

---

[4]    This language was revised on October 1, 2005, but retained the same meaning. DSUF No. 23.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

If the V.A.C. Therapy is reasonable and necessary on the first day of a billing cycle, Medicare reimbursement is available for the entirety of that cycle. DSUF Nos. 34, 25. After the first cycle, the LCDs direct KCI to assess the wound's healing over the past month to sustain claims made prospectively for treatment provided the following month. DSUF No. 28.

Medicare requires suppliers to use the Healthcare Common Procedure Coding System ("HCPCS") when submitting claims to describe the specific items and services covered by Medicare. D. Mot. at 7. The HCPCS provides for the use of billing "modifiers," which are two-character strings of letters added to HCPCS codes to communicate information about the particular claim. DSUF No. 36. The LCDs initially stated that, if all the conditions for coverage listed in the LCD are met, "a ZX modifier is to be added to the HCPCS codes on each month's claims for initial and continued use of NPWT equipment and supplies." DSUF No. 37. On July 1, 2002, the ZX modifier was replaced with the KX modifier. DSUF No. 38. According to the DMERCs, affixing the KX modifier to a claim for reimbursement is a representation that: "Documentation is on file," and "Requirements specified in the medical policy have been met." DSUF No. 39. The LCDs provide that "[s]uppliers must add a KX modifier to a code only if all of the criteria in the 'Indications and Limitations of Coverage and/or Medical Necessity' section of this policy have been met." DSUF No. 40. Use of the KX modifier benefitted KCI by expediting and simplifying claims processing. RSUF No. 203.

When billing for NPWT, the LCDs require "an ICD-9-CM diagnosis code (specific to the 5th digit or narrative diagnosis, describing the wound being treated by NPWT" to be "included on each claim for the equipment and related supplies." DSUF No. 42. ICD-9-CM diagnosis codes are strings of characters reflecting a prescribing physician's diagnosis of the patient's wound. DSUF No. 43. KCI provided the ICD-9-CM code in each claim made to Medicare for V.A.C. Therapy reimbursement as required by the LCD. DSUF No. 44.

For a given claim submitted to a DMERC, the DMERC makes an initial determination as to whether Medicare will reimburse the underlying therapy. DSUF No. 45. Upon receiving a claim for KCI for reimbursement of V.A.C. Therapy, the corresponding regional DMERC determines whether in its judgment the treatment is reasonable and necessary. DSUF No. 46. If it determines the claim should be paid, Medicare reimburses the claim. DSUF No. 47. If the DMERC instead determines that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

the claim should be initially denied, KCI is permitted to, and did frequently, appeal the decision through a multi-stage appellate review process.  DSUF No. 48.

## B. KCI's Billing of Stalled Cycles and Efforts to Change the LCDs

Patients treated with V.A.C. Therapy could experience a "stall" in the healing of their wound—i.e., a period of time during which the wound fails to improve in terms of its surface area or depth—for any number of reasons unrelated to the application of NPWT to the wound.  DSUF No. 56.  For example, medically cleaning the wound (i.e., "debridement"), gaps in adequate nutrition, or infection of the wound all could cause a stall in wound healing, even during a period of time when a patient's physician continues to believe that V.A.C. Therapy is appropriate, reasonable, and necessary.  DSUF No. 57. KCI and the DMERCs at times used the term "stalled cycle" to refer to a month affected by a wound's stalled healing.  DSUF No. 58.

The LCDs governing KCI's other product line, therapeutic support surfaces, permitted Medicare coverage of a therapeutic support surface to continue through one stalled cycle provided that wound healing resumed in the following cycle.  DSUF No. 59. The LCDs governing V.A.C. Therapy, however, did not.  DSUF No. 22.  Because KCI understood wounds to heal in the same manner regardless of the therapy used to promote healing, KCI believed it would have been appropriate for the NPWT LCDs to permit a similar approach to Medicare coverage of stalled cycles of V.A.C. Therapy.  DSUF No. 60.

KCI started to discuss billing for stalled cycles with the DMERCs' Medical Directors in 2002.  DSUF No. 60–62.  Specifically, in or about December 2002, KCI sought clarification from the Medical Directors as to how to submit claims for V.A.C. Therapy when the month after a stalled cycle showed significant healing.  DSUF No. 61. KCI and the Medical Directors subsequently engaged in written communication, telephonic conferences, and in-person meetings concerning KCI's request to amend the LCDs so that KCI could submit claims for stalled cycles using the KX modifier if the wound improved in the month immediately following a stalled cycle.  DSUF Nos. 62, 64.

On June 13, 2003, the Medical Directors responded to KCI's December 2002 request and stated: "Lack of improvement in one cycle of use (i.e., a month) would not justify coverage of NPWT for the months following the month in which improvement is lacking. . . . If this cessation of healing occurs within the first 4 months of therapy, then

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

the claim for the month of use after which healing ceased, must be submitted without the KX modifier." DSUF No. 70. Dr. Oleck, Medical Director for Region B, issued a memorandum on July 21, 2003 which stated: "If there is no improvement in a wound during a particular month, then use of an NPWT pump in that wound should be denied for the subsequent month and all following months." DSUF No. 71 (emphasis in original). Dr. Oleck's memorandum also stated that "the policy directs that a KX modifier should not be added to the code for the subsequent months." DSUF No. 72. On September 12, 2003, the Region D DMERC issued a bulletin about NPWT Coverage which stated: "If healing of a wound fails to occur in a particular month, the KX modifier must not be added to any claims for any subsequent months for use of the pump on that particular wound."[5] DSUF No. 74.

On or about September 16, 2003, KCI temporarily ceased seeking reimbursement from Medicare for claims featuring stalled cycles. DSUF No. 76. On September 26, 2003, Susan Morris (KCI's Vice President for Reimbursement Policy & Compliance) and Wayne Schroeder (KCI's Vice President and Medical Director), sent a letter to the Medical Directors in response to the issuance of the September 12, 2003 Region D bulletin. DSUF No. 77. The letter stated that the topic of stalled cycles was "an area we would like to discuss with you further" and provided examples of situations in which KCI viewed V.A.C. Therapy to be medically necessary despite a stall in healing. DSUF No. 77. On October 14, 2003, Morris and Schroeder participated in a call with Dr. Robert Hoover, Medical Director of Region D. DSUF No. 78. KCI's internal notes of the call indicate that Dr. Hoover agreed that criteria could be established for Medicare coverage of stalled cycles and that he would retract Region D's September 2003 bulletin. DSUF No. 78.

Following the October 14, 2003 call with Dr. Hoover, a number of KCI staff, including Morris and Hartpence, met at KCI's headquarters on October 27, 2003 to discuss Medicare billing issues related to V.A.C. Therapy. DSUF No. 80. On the second day of the meeting, the staff decided to resume billing under what they termed a "risk sharing approach": "If one cycle does not improve i.e., wound healing stalled, OK to bill that cycle. If the next cycle does not improve, KCI will NOT bill and VAC will be

---

[5]     The Region A DMERC issued a substantively identical bulletin in December 2003. DSUF No. 75.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

picked up." DSUF No. 81; D. Ex. 56. KCI thereafter resumed billing using the risk sharing approach. DSUF No. 81.

In January 2004, an employee from KCI's billing company, Laurie Waldron, emailed the president of that company, Deb Smith, and shared that she looked up Region D's December 2003 bulletin online and was concerned that KCI's policy contradicted the bulletin with respect to billing for a stalled cycle. RSF No. 291; R. Ex. 35. Waldron "wondered if it would be fraudulent to submit a bill that is different from what they indicate in this bulletin." Id. Smith forwarded this email to Bob Curlee, the Human Resources Manager of the billing company, who responded: "Does challenging the policy actually get us off the hook when crunch time comes? You don't play a game assuming the rules may change the score when you challenge it at the end. You play by the rules you have while trying to get the rules changed for the future. Just my thoughts and I don't know this stuff very well, but I can tell when something is right or wrong." Id.

Schroeder subsequently sent the Medical Directors a letter, dated January 30, 2004, explaining KCI's positions on stalled cycles. DSUF No. 83. In that letter, KCI informed the DMERC Medical Directors that it was "prepared to take the risk of allowing patients to remain on NPWT for one month following the 'stalled' cycle in order to allow healing to restart in the next cycle." DSUF No. 85; D. Ex. 28. KCI added that "[i]f healing resumes, we request that coverage be approved for both cycles. If there is no documented progress in the subsequent cycle, we do not expect either cycle to be covered." DSUF No. 86; D. Ex. 28.

KCI memorialized its risk sharing practice for billing stalled cycles in a February 1, 2004 memorandum to all of its USA Field Sales and Service Personnel ("Billing Memo"). DSUF No. 89; D. Ex. 60. The Billing Memo stated: "Cycles with an acceptable reason for no improvement . . . will be held pending the outcome of the subsequent cycle. If the subsequent cycle shows significant progress toward wound healing, both cycles will be paid and commissions will be paid on both cycles. If the subsequent cycle shows no improvement or minimal improvement, both cycles will be billed for automatic denials, no commissions will be paid on either cycle, and the product will be picked up." DSUF No. 90. The Billing Memo was forwarded to KCI's USA Sales Team on February 19, 2004. DSUF No. 91.

Around March 2, 2004, Dr. Paul Hughes, the Region A Medical Director, contacted Schroeder to discuss open issues regarding the LCDs and Medicare billing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

DSUF No. 92.  KCI and the Medical Directors arranged further calls to continue their discussions.  DSUF No. 93.

On March 29, 2004, KCI further memorialized its risk sharing practice for billing stalled cycles in an email circulated among senior management by Morris which stated:

> KCI has made the decision to use the ZX modifier on claims with stalled healing only when the following conditions are met:
>
> 1) Patients who have experienced insufficient progress toward wound healing will be authorized for continued use of the VAC for one additional month ONLY if there is a modification of the care plan to include additional nutritional support, treatment of infection and/or serial debridement.
>
> 2) No claims will be filed on these patients until the wound progress report for the subsequent cycle can be reviewed.  If the subsequent cycle shows significant progress, both cycles will be billed using the ZX modifier.  If the subsequent cycle does not show significant progress toward wound healing, both cycles will be billed using the GZ (i.e., denial) modifier.
>
> 3) Patients with stalled cycles where there is no documentation of debridement, infection or nutrition will not be authorized for continued use.

DSUF No. 95; D. Ex. 38.  The email further noted that "[i]n a telephone conference with Dr. Hoover on October 14, 2003, he agreed that medical necessity could be established in these types of patients when similar selection and review criteria are applied."  DSUF No. 96.  The email concludes by stating that "KCI continues to seek written clarification from the DMERCs on this issue."  D. Ex. 38.

On April 12, 2004, Morris emailed Dr. Hughes in preparation for a telephone call with all the DMERC Medical Directors.  DSUF No. 97.  The email explained that KCI "thought that it might be helpful to share with you an internal memo outlining the review criteria we use to evaluate medical necessity for each cycle and for each patient."  DSUF No. 98; D. Ex. 60.  Morris attached a copy of the Billing Memo to this email.  DSUF No. 97.  Dr. Hughes responded on April 14, 2004, "This is a very interesting and helpful document, in my view.  Perhaps it would be useful to share."  DSUF No. 100; D. Ex. 60.

On April 23, 2004, KCI staff and the DMERC Medical Directors conducted a teleconference about billing for the V.A.C. Therapy device.  DSUF No. 102.  After that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

teleconference, Morris sent an email to all four DMERC Medical Directors containing an outline of the "internal criteria we discussed today." DSUF No. 103; D. Ex. 64. The email again describes KCI's risk sharing approach for billing stalled cycle claims: "Cycles with 'stalled' healing . . . will be held pending outcome of the subsequent cycle. If the subsequent cycle shows significant progress toward wound healing, both cycles will be billed for payment. If the subsequent cycle shows no improvement or minimal improvement, both cycles will be billed for automatic denials and the therapy will be discontinued." DSUF No. 104; D. Ex. 64.

On June 23, 2004, Morris sent an email memorandum to Dr. Oleck with several recommendations, including:

> 3.   To better evaluate continued medical necessity, we have continued to tighten our internal review criteria over time. You saw our current criteria in a message I sent to all four [Medical Directors] following our first group call. Our tracking data shows a significant shift of patients to earlier discharge as a result. Today nearly 80% of all patients come off by the end of cycle 2 and over 90% come off by end of cycle 3.

> Moving forward, we will continue to submit claims in cycles 2-6 only for wounds that show significant progress month to month with the following exceptions:

> a)   "Stalled" cycles followed by a subsequent cycle with significant improvement would also be covered. . . . For these cases, we will hold the claim for the stalled cycle but may allow continued use for one month if recommended by the referring physician. If the subsequent cycle shows significant progress, we will submit claims for both cycles with the KX modifier. If the subsequent cycle does not show significant progress, we will submit claims for both cycles with the GZ modifier and will not seek payment or appeal the denial. We take the risk for those where no progress occurs in the subsequent cycle.

DSUF No. 107; D. Ex. 68. Morris forwarded this email the next day to the other three Medical Directors. D. Ex. 68. On June 24, 2004, Hartpence replied to Morris's June 23, 2004 email memorandum and wrote, "we are close to an agreement on how to handle all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

our open issues with the DMERCs," and "I suggested and [Morris] agreed that we should begin operating as if the new rules are in effect." DSUF No. 108; Ex. 36.

On June 28, 2004 and June 29, 2004, the Medical Directors exchanged emails in preparation for a teleconference with KCI scheduled to occur on June 29, 2004. DSUF Nos. 109–111. Dr. Oleck indicated that he "would only agree to use of a KX modifier if the wound dimensions in the month after the stalled month, were less tha[n] the measurement in the month before the stalled healing. . . ." DSUF No. 110. Dr. Oleck added that he believed the Medical Directors for Regions C and D were in agreement, and a DMERC staff member responded that her notes reflected that "everyone agreed to accept if stalled healing occurred with the surface and depth wounds being i.e.. 20" [sic] – 15 – 18 – 15. The wound which was not accepted was 20 – 15 – 28 – 18." DSUF Nos. 110, 111.

On July 1, 2004, Morris sent an email to all four Medical Directors summarizing the June 29, 2004 call stating, "At the end of the call, we agreed on the following points: . . . Stalled healing cycles and restarts could be covered with defined criteria and documentation requirements." DSUF No. 113. The email further set forth "Proposed Medical Necessity Criteria & Documentation Requirements for Medicare Part B Negative Pressure Wound Therapy [LCD]." Id. It discussed stalled cycles as follows: "Billed with the KX modifier: . . . Wounds with one cycle of stalled healing (defined as a failure to show improvement over a prior cycle) followed by a cycle with documented objective improvement in surface area, depth undermining and/or tunneling based on the dimensions of the cycle immediately prior to the stalled cycle." Id. On July 7, 2004, the Medical Directors prepared minor revisions to Morris's proposal which did not alter KCI's risk sharing approach. DSUF No. 116.

On August 24, 2004, Dr. Oleck sent an email to the other Medical Directors summarizing a call held the same day and wrote: "We are planning to accept [KCI's] concept of a 'stalled' healing cycle, paying for the stalled month and the subsequent month only if the subsequent month shows improvement compared to the month before the stalled month." DSUF No. 119. The next day, KCI and the Medical Directors had another teleconference, and Morris subsequently sent an email to several KCI executives summarizing the call:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

 Here are the summary points from today's DMERC call: . . .

3) For stalled cycles followed by a cycle with improvement at or better than before the stalled cycle, both cycles will be covered.

4) For stalled cycles due to debridement, where it is unrealistic to achieve improvement at or better than before the stalled cycle, both cycles will be covered for a defined number of cycles to be determined after additional research. . . .

DSUF No. 121.  The Medical Directors subsequently prepared and distributed to KCI a draft "NPWT Guidelines" document on September 16, 2004 that permitted use of the KX modifier in accordance with KCI's risk sharing approach.  DSUF No. 124.

In or around 2005, CMS reorganized the structure of the DMERCs.  As a result, the dialogue between the DMERCs and KCI regarding potential revisions to the LCD slowed, but KCI continued following its risk sharing practice.  DSUF No. 126.  On June 1, 2005, the DMERCs rescinded their 2003 bulletins which had instructed providers not to add the KX modifier to cycles following a stalled cycle because those bulletins had been issued without required public notice and comment.  DSUF Nos. 128, 129. However, KCI's proposed changes to the LCDs were never officially implemented. RSUF No. 214.  KCI contends that its leadership nonetheless believed that the company had fully disclosed to the DMERCs that it was billing risk sharing claims with a KX modifier.[6]  DSUF No. 125.

---

[6]     In a September 4, 2006 email to Morris in preparation for a meeting with Dr. Hughes, Hartpence wrote that the KCI representatives going to that meeting should ask Dr. Hughes to "[p]lease communicate the following to the ALJ Judges: . . . Risk sharing on stalled cycles is an agreed policy and should be paid."  DSUF No. 130.  And when asked in his deposition if Morris ever told him that KCI was billing for stalled cycles using a KX modifier, Dr. Hughes responded that although he did not have any direct recollection of his conversations with Morris and KCI, "it's clear in some of those documents Susan Morris talked to the medical directors about KCI's use of stalled cycles."  DSUF No. 131; D. Ex. 34, Paul Hughes Deposition Transcript 237:3–17.  Dr. Brennan, Medical Director for Region C, on the other hand, testified that she did not recall having been aware that KCI used a KX modifier under a "risk sharing policy." RSUF No. 213.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

On September 3, 2010, the four DMERC Medical Directors held a conference call to discuss KCI's billing practices, and Dr. Hoover took notes during that call. DSUF No. 133–134. Dr. Hoover's notes state:

> NPWT – Stalled cycles
> - Literal reading of policy says not to use KX if wound size increases
> - KCI will hold claim for stalled month and if next month improves, will bill stalled month with KX
> - KCI does this based on discussions in 2003 and 2004; however no action was taken by [Medical Directors] in policy to memorialize decisions
> - Action: Take no action immediately to address KCI's stalled billing. Longer-term action to revise policy once DMDs decide what needs to be done with multiple policy issues (i.e., stalled billing, minimum depth of wound for use, tighten to curb off-label use, etc.)

DSUF No. 136.

### C.  KCI's SEC Filings

KCI was a publicly traded company until 2010. RSF No. 255. In a Form 10-Q filed on November 13, 2003, KCI represented that: "In the event that the medical directors do not revise their interpretations on these issues, the rate of VAC revenue growth would be impacted." RSF No. 253. In an IPO filing on February 23, 2004, KCI filed a Form S-A/A which addressed KCI's disagreement with DMERCs regarding several issues, including stalled cycles:

> We do not believe the DMERC medical directors' interpretation reflects the current Negative Pressure Wound Therapy policy or current medical practice. As a result, we have responded to the most recent letter from the medical directors in an effort to clarify the policy while at the same time maintaining coverage for all Medicare Part B beneficiaries for whom V.A.C. treatment is medically necessary. In the event that the medical directors do not revise their interpretations on these issues, the rate of V.A.C. revenue growth would be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

impacted.  Although difficult to predict, we believe that reimbursement issues addressed by the medical directors relate to approximately 20% of our annual V.A.C. Medicare revenue or about 2.2% of our overall annual revenue.

RSF No. 254; R. Ex. 8.  KCI's subsequent filings in May, August, and November 2004 include substantially similar language.  RSF Nos. 257–260.

### D.     Approval of KCI's Alleged False Claims

Relator contends that KCI submitted claims to Medicare with the KX and ZX modifier between March 2002 and December 2009 that did not meet the billing requirements set forth in the LCDs.[7]  RSF No. 207.  For each alleged false claim filed by KCI, a physician prescribed V.A.C. Therapy as reasonable and necessary for the patient's particular wound.  DSUF No. 157.  And for each alleged false claim, the treated wound ultimately improved.  DSUF No. 158.  And for each alleged false claim, the government reimbursed KCI for the associated V.A.C. Therapy.  DSUF No. 159.

### i.     Stalled Cycles

**Pre-Payment Review**

Periodically since October 2000, the DMERCs elected to conduct pre-payment reviews of KCI's claims for V.A.C. Therapy reimbursement.  DSUF No. 160.  During such pre-payment reviews, the DMERCs reviewed wound measurement data for claims that were submitted with the KX modifier.  DSUF No. 161.  The reviewing DMERC would request medical records from KCI for each claim subject to review prior to issuing its initial determination of payment on those claims.  Id.  For example, the DMERC for Region B commenced a pre-payment review of all claims submitted to it for V.A.C. Therapy in late 2007, lasting into 2008.  DSUF No. 162.  The DMERC reviewed and approved claims for stalled healing cycles submitted during this review.  Id.  There is no evidence in the record showing that a DMERC has ever denied a claim submitted by KCI

---

[7]     KCI does not dispute the substance of this fact but argues that relator has not provided any admissible evidence identifying or substantiating KCI's alleged false claims.  D. Mot. at 16–20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

as a result of prepayment review on the grounds that KCI's risk sharing approach is invalid under the LCDs.  DSUF No. 163.

### Medicare Region D Audit of 2007

Medicare and its agents routinely conducted post-payment audits of KCI claims during the relevant period.  DSUF No. 172.  On June 26, 2007, CMS initiated a "postpayment error validation review" for Region D, auditing certain claims submitted by KCI for V.A.C. Therapy from January 1, 2006 through December 31, 2006 (the "Region D Audit").  DSUF No. 173.  The Region D Audit required KCI to submit detailed records for claims covered by the audit, including documentation of quantitative measurements of wound dimensions, including depth and amount of wound exudate, indicating progress of healing on at least a monthly basis.  DSUF No. 174.  KCI provided medical records pertaining to 250 claims, and all prior claims for the same patients, submitted for V.A.C. Therapy during 2006.  DSUF No. 178.  In total, auditors reviewed records relating to 241 of those claims, after removing some from the audit pool.  Id.  Dr. Hughes informed Morris by phone that all of the DMERC Medical Directors were closely monitoring the results of the Region D Audit.  DSUF No. 181.

The Region D Audit concluded on November 2, 2007, and the results were sent to the CMS.  DSUF No. 182; Dkt. 454-10 at 129.  The auditors determined that "[o]f the total 241 claims reviewed, Medicare reimbursement was allowed for 222 claims, and 19 claims were denied in full or in part.  This resulted in an .06% error rate based on total dollars paid in error divided by total charges medically reviewed.  This is indeed a very minor error rate."  Id.  The 241 claims reviewed in the audit included 19 risk sharing claims, for which KCI billed Medicare for a stalled cycle and the subsequent cycle using the KX modifier where the wound improved in the cycle following the stall.  DSUF No. 183.  Of the 19 risk sharing claims reviewed in the audit, 14 were approved for payment.  DSUF No. 184.  Five were denied in whole or in part for reasons unrelated to the fact that those patients had experienced a stalled cycle of healing.  DSUF Nos. 184, 185.

### ii.    Monthly Wound Measurements

According to KCI's internally established practices during the relevant period, KCI would require that a patient's wound measurements be provided and recorded, when possible, in the ten days prior to the beginning date of the following treatment cycle (in other words, within the last ten days of a cycle).  DSUF No. 189.  If KCI was unable to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

obtain measurements within that ten-day period, KCI would require that the patient's wound measurements be identified and recorded within the first five days of the start of the following treatment cycle. Id. Hartpence wrote in an email on September 2, 2004 that "the medical policy refers to months, not 30 day cycles in establishing the timeframe for necessary wound measurements," and explained:

> If you think of the logic of the [monthly wound measurement] situation, the closer in time you are to the due date, the more accurate picture you have of monthly progress. So a measurement on the actual due date would be best of all. If you accept that, then a measurement one day later should be nearly as good. And if there is substantial healing, no reasonable person would think it happened in a day. So while we might get initial denials from the green-eyeshade bureaucrats, it seems highly probable we would prevail at some point in the appeals process.

DSUF No. 193. KCI often appealed denials where wound measurements were more than 31 days apart, even as many as 40 days apart. DSUF No. 194. KCI prevailed on those appeals because it showed that the therapy was effective in treating the wound, without regard as to whether KCI could produce a measurement taken at least every 31 days. DSUF No. 195.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.  DISCUSSION

The FCA imposes liability where a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). To prevail under the FCA, a relator must prove: "(1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent." Hooper v. Lockheed Martin Corp., 688 F.3d 1037, 1047 (9th Cir. 2012). The falsity requirement can be satisfied by demonstrating either express or implied false certification of a claim. Express false certification "means that the entity seeking payment [falsely] certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted." Ebeid ex rel. United States v. Lungwitz, 616 F.3d 993, 998 (9th Cir. 2010). Implied false certification "occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation [,but does not,] and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." Id.

Hartpence contends that KCI falsely certified its compliance with the LCDs when it added the KX modifier to: (1) V.A.C. Therapy claims involving wounds that experienced a stall in healing during therapy ("Stalled Cycle Claims"); (2) V.A.C. Therapy claims involving "uncomplicated surgical wounds" ("Surgical Wound Claims");

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

and (3) V.A.C. Therapy claims where the wound measurements reflected in KCI's data occurred more than 31 days apart ("Monthly Measurement Claims"). According to Hartpence, KCI's claims were false under an express false certification theory because "KCI represented to Medicare its compliance with the reasonable and necessary criteria encompassed by its use of the KX modifier when it actually had not complied with those requirements." R. Opp'n at 6. Hartpence also contends that KCI's claims were false under an implied false certification theory because "[b]efore submitting the false claims, as part of its Medicare enrollment, KCI agreed to abide by all applicable statutes, regulations, and program instructions." Id. (internal quotation marks, citation, and alterations omitted).

KCI seeks summary judgment on all three theories advanced by Hartpence, and Hartpence seeks partial summary judgment on the Stalled Cycle Claims and the Monthly Measurement Claims. As explained below, the Court finds that Hartpence has failed to create a triable issue as to materiality and scienter with respect to each type of false claim he has identified.

### A.    Materiality

"A misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the Government's payment decision in order to be actionable under the False Claims Act." Universal Health Services, Inc. v United States ex rel. Escobar, —U.S.—, 136 S. Ct. 1989, 1996 (2016). In Escobar, which was decided on the pleadings, the Supreme Court enunciated the standard for materiality in FCA cases. The Supreme Court first held that an express representation that a claim for payment complies with statutory, regulatory, or contractual requirements is not required to establish a defendant's liability under the FCA: "When . . . a defendant makes representations in submitting a claim but omits its violations of statutory, regulatory, or contractual requirements, those omissions can be a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided." Id. at 1999. The Court rejected the defendant's argument that a special duty of disclosure must be shown to make an omission actionable, and instead the Court held that a representation that is a misleading half-truth could form the basis of liability under the FCA. Id. at 2000. The Court said two requirements are necessary to establish liability under the implied certification theory: "first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements make those representations misleading half-truths." Id. at 2001.

But the Court went on to reject the argument that any false representation that a claim satisfies statutory, regulatory, or contractual requirements is automatically material. Id. at 2001–04. The Court also rejected the defendant's argument that only those requirements expressly labeled as conditions of payment should be actionable. Id. at 2001. Instead, the Court, following common law concepts, found that materiality "look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." Id. at 2002 (quoting 26 R. Lord, Williston on Contracts § 69:12, p. 549 (4th ed. 2003) (Williston)). The Court adopted the following alternative tests of materiality: A misrepresentation is material "[if] a reasonable man would attach importance to [it] in determining his choice of action in the transaction." Id. at 2002–03 (citation omitted). This is an objective, reasonable man standard. A misrepresentation can also be material "if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter 'in determining his choice of action,' even though a reasonable person would not." Id. at 2003 (quoting Restatement (Second) of Torts § 538, at 80).

The Supreme Court declared that the standard of materiality is "demanding." Id. at 2003. The Court held that, as a matter of law, "[a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." Id. "Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." Id. Nor can materiality be shown "where the noncompliance is minor or insubstantial." Id.

In light of this standard of materiality, the Court distinguished between a situation where the defendant "knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement" from a situation where "the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position." Id. at 2003–04. In the latter situation, the government's payment of the claim would be "strong evidence that the requirements are not material." Id. at 2004.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

In saying this, the Supreme Court expressly rejected the defendant's argument that "materiality is too fact intensive for courts to dismiss False Claims Act cases on a motion to dismiss or at summary judgment." Id. at 2004 n.6. See also United States ex rel. Kelly v. Serco, Inc., 846 F.3d 325, 333 (9th Cir. 2017) ("Courts can properly dismiss an FCA claim on summary judgment on a claimant's failure to meet the rigorous standard for materiality under the FCA.").

### i.    Materiality of Stalled Cycle Claims

The LCDs state that Medicare coverage for an NPWT pump ends when "[a]ny measurable degree of wound healing has failed to occur over the prior month." DSUF No. 22. Here, although it is disputed whether Hartpence has submitted admissible evidence identifying specific false claims filed by KCI, it is undisputed that during the relevant time period, KCI submitted V.A.C. Therapy claims with the KX modifier for stalled cycles that did not comply with the LCDs.

Here, however, KCI has presented evidence of payment in full by the government on Stalled Cycle Claims despite the government's knowledge of KCI's noncompliance with the LCDs and its usage of the KX modifier when filing such claims. The undisputed evidence shows that the DMERCs approved KCI's Stalled Cycle Claims during pre-payment and post-payment audits. DSUF Nos. 162, 184.[8] These audits demonstrate that

---

[8]    In his supplemental brief, Hartpence resists this conclusion and argues that a claim was denied for lack of wound improvement in the Region D Audit. Supp. at 14–15. With respect to this particular claim, the Medical Director in charge of the Region D Audit explained that the claim was being denied because "the wound never improved . . . during the entire treatment period, developed additional necrosis requiring debridement, and actually [worsened]." Id. at 15. Hartpence also argues that KCI had been audited many other times and that those audits "revealed substantially higher error rates[.]" Id. The Court is unpersuaded because this action does not concern claims for wounds that never improved, nor does it concern KCI's general performance in its audits. Rather, the precise issue before the Court is whether KCI made materially false representations when it added the KX modifier to claims for wounds that ultimately improved but had experienced a cycle of stalled healing. Nothing in the explanation of the claim denial described above suggests that the claim was denied because the wound had experienced a cycle of stalled healing. Rather, it is evident from this explanation that the claim was denied because the wound *never* improved. The denial of this particular claim and KCI's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

KCI's treatment of stalled cycles was not material to the government.[9]  Moreover, in
2010, the Medical Directors explicitly noted that KCI had billed for stalled cycles using a
KX modifier based on discussions in 2003 and 2004, decided to take no immediate action
to address KCI's billing practices, and decided to focus on "longer-term action to revise
policy."  DSUF No. 136.  Hartpence has failed to come forward with any evidence to
show that the government would not have paid these claims if it had known that they
were not in strict compliance with the LCDs.  In fact, the evidence shows the contrary—
that the government knew of the noncompliant nature of the Stalled Cycle Claims and
paid in full anyway.[10]  See Escobar, 136 S. Ct. at 2003–04 ("[[I]f the Government

_____

allegedly poor performance in other audits are insufficient to create a triable issue as to
the materiality of the Stalled Cycle Claims.

[9]      In his supplemental brief, Hartpence argues for the first time that the Region D
audit was merely a "cursory review of 241 claims" that took "a grand total of
approximately two or three hours."  Supp. at 9.  According to Hartpence, "[s]uch a
perfunctory review is hardly enough to constitute informed approval of KCI's
practices[.]"  Id.  Hartpence's argument appears to be based on a misreading of Morris's
deposition testimony.  In her deposition, Morris was asked about a meeting KCI had with
the medical review team at Region D prior to the actual review of documents for the
Region D Audit.  Dkt. 510-1 at 14:1–7.  Morris testified that during this meeting, KCI
"reviewed all of the claims in the files that were in those 250 cases . . . and went through
all those billing practices with them at that time."  Id.  When asked how long that review
took, Morris responded that it took "two to three hours."  Id. at 145:2–3.  Morris was not
referring to the Region D Audit as a whole, but rather the meeting that KCI had with the
medical review team prior to that audit.  Moreover, KCI notes that the auditors did not
release their final determination in the audit until November 2, 2007, several months after
KCI submitted its 241 claims, and that the final determination itself stated that the audit
involved "an extensive post payment review of services billed to the Medicare Program."
Dkt. 454-10 at 124.  The Court thus finds that Hartpence's contention that the Region D
Audit was "cursory" to be erroneous and unsupported by the evidence in the record.

[10]      Hartpence also argues that the government's decision to continue paying KCI's
Stalled Cycle Claims despite its knowledge of KCI's noncompliance is "not proof that
the misconduct is immaterial under the FCA" because the government's inaction can be
attributable to a lack of resources or resourcefulness," and because the government may
have been "rely[ing] on [the instant case] to adjudicate the amount that KCI should pay

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material."). See also Kelly, 846 F.3d 325, 334–35 (9th Cir. 2017) (affirming district court's grant of summary judgment in favor of the defendant on the relator's FCA claim for submitting false claims under an implied false certification theory of liability because the government paid for the defendant's delivery orders despite the defendant's noncompliance with certain guidelines).

Instead, Hartpence relies on the fact that the Stalled Cycle Claims did not comply with the express terms of the LCDs. Although submitting a claim in violation of an LCD may form the basis of an FCA action, the Supreme Court has clearly held that noncompliance, standing alone, is insufficient to establish materiality. See Escobar, 136 S. Ct. at 2003.[11] According to Hartpence, "KCI's use of the KX modifier *automatically*

---

or not pay." R. Opp'n at 20–21. The Court is not persuaded by this argument because the government could have easily rejected a Stalled Cycle Claim during one of its pre-payment or post-payment audits, but it did not. Hartpence's mere speculation, unsupported by any evidence in the record, as to why the government would continue to pay KCI's Stalled Cycle Claims despite KCI's noncompliance with the LCDs is not sufficient to establish a triable issue of fact with respect to materiality.

[11]    Hartpence also argues in his supplemental brief that KCI bears the burden of "establishing with uncontested evidence that the Medical Directors . . . knowingly authorized or approved KCI's fraudulent billing practices, despite never revising the LCD that controlled those practices." Supp. at 8. Hartpence cites no authority for the proposition that KCI must show that the government knowingly authorized or approved KCI's billing practices. Rather, Hartpence's argument fails in light of Escobar's explanation that certain requirements are not material when "the Government regularly pays a particular type of claim in full despite actual knowledge [those] requirements were violated, and has signaled no change in position[.]" 136 S. Ct. at 2003–04. Although it is unclear from the record whether the Medical Directors ever explicitly authorized KCI's billing practices, the evidence in the record nonetheless demonstrates that the government regularly paid for Stalled Cycle Claims with full knowledge that they were not in compliance with the LCDs. Under Escobar, this is "strong evidence" that the language in the LCDs—which states that Medicare coverage for an NPWT pump ends when "[a]ny measurable degree of wound healing has failed to occur over the prior month"—was not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

*caused* payment to KCI on every claim to which the modifier was appended." Id. (emphasis in original). Hartpence thus contends that "[n]othing could be more 'material' than appending a modifier to a claim that makes the *payment* of the claim automatic, while use of an alternative modifier would make the *denial* of the claim automatic." R. Opp'n at 15 (emphasis in original). Hartpence provides no legal authority supporting his argument that the "automatic" nature of the government's payment of claims controls the materiality analysis. Moreover, Hartpence's argument that payment was automatic each time KCI used the KX modifier is contrary to the evidence. The audits enabled the government to review payments, which is exactly what occurred here. The Court also does not find this argument persuasive because the focus of the materiality analysis here is whether the government would have paid the Stalled Cycle Claims—regardless of whether such payments were automatic—if it had known that such claims did not comply with the LCDs. While KCI's usage of the KX modifier may have constituted a misrepresentation, Escobar makes it clear that "[a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." 136 S. Ct. at 2003.

Further, there is evidence that that KCI advised the government that it would, in fact, be submitting noncompliant Stalled Cycle Claims based on KCI's belief that the Medical Directors agreed that V.A.C. Therapy after a stalled cycle could be medically necessary in certain situations. See, e.g., DSUF No. 81 (KCI agreed to bill under a "risk sharing approach" after a discussion with Dr. Hoover wherein he indicated that criteria could be established for Medicare coverage of stalled cycles); DSUF No. 104 (email from Morris to the Medical Directors explaining that KCI will bill for cycles following a stalled cycle as long as the wound shows significant progress towards healing). Hartpence responds that KCI never actually disclosed that it was, in fact, using the KX modifier when billing Stalled Cycle Claims. Rather, Hartpence argues that KCI was merely proposing the use of the KX modifier in those situations. R. Opp'n at 21. This particular interpretation of KCI's communications to the Medical Directors in 2004 is controverted by the plain text of KCI's communications.[12] See DSUF No. 97 (email

---

material to the government's decision to pay KCI's claims for wounds that ultimately improved but had experienced a cycle of stalled healing.

[12]    Hartpence's argument that KCI was merely proposing the risk sharing approach, rather than disclosing that it was already using that approach, relies on KCI's use of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

from Morris to Dr. Hughes attaching the Billing Memo); DSUF No. 104 (email from Morris to all Medical Directors outlining KCI's risk sharing approach); DSUF No. 107 (email from Morris to Dr. Oleck explaining that KCI "will continue to submit claims only for wounds that show significant progress" with the exception of "'stalled' cycles followed by a subsequent cycle with significant improvement."). Hartpence's interpretation is also controverted by Dr. Hughes' deposition testimony wherein he stated that it was clear that Morris shared KCI's billing practices for Stalled Cycles with the Medical Directors, as well as Dr. Hoover's meeting notes from 2010 which indicated that KCI billed for Stalled Cycles using a KX modifier based on discussions in 2003 and 2004. DSUF Nos. 131, 136.

The other evidence proffered by Hartpence to show materiality are KCI's SEC filings that show that KCI acknowledged a risk that the government might disagree with KCI's position regarding the payment of Stalled Cycle Claims. But those disclosures show, at most, that KCI knew that its risk sharing approach had not been formally adopted by the DMERCs, which might have conceivably given the government an option not to pay those claims. This scenario is precisely what the Supreme Court held would be insufficient to establish materiality. See Escobar, 136 S.Ct. at 2003 ("Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance."). And as discussed below, KCI's public statements about this issue also tend to negate a finding of scienter.

In his supplemental brief, Hartpence also argues KCI's allegedly false claims were material because, in 2007, KCI appealed "$17.7 million in claims" and only collected $8.9 million. Supp. at 19. The Court is unpersuaded by this argument because KCI's general performance in its appeals has no relevance to whether KCI's noncompliance

---

future tense when describing KCI's billing practices, such as in the sentence: "If the subsequent cycle shows significant progress toward wound healing, both cycles *will be* billed for payment." DSUF No. 104 (emphasis added). However, the plain text of KCI's communications with the Medical Directors indicates that KCI was disclosing its then-current billing practices. See DSUF No. 97 ("KCI "thought it might be helpful to share with you an internal memo outlining the review criteria *we use* to evaluate medical necessity for each cycle and for each patient) (emphasis added); DSUF No. 107 ("Moving forward, *we will continue to submit claims* [in accordance with the risk sharing approach.]") (emphasis added).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

with the LCDs were material to the government's decision to pay claims for wounds that ultimately improved but had experienced a cycle of stalled healing. Hartpence also points to one ALJ decision, which was not previously submitted as part of the record, in which an ALJ denied KCI's claims for wounds that did not improve on a monthly basis. Supp. at 19; Dkt. 510-14 at 25. And in another case, the Medicare Appeals Counsel held that an ALJ did not err when strictly adhering to the LCDs to reject claims where there had been no wound improvement from month to month. See Dkt. 510-13 at 21–24.[13] It is unclear from these decisions whether these wounds continued to improve after experiencing a stalled cycle or whether they failed to heal altogether. KCI, on the other hand, submitted multiple ALJ decisions in support of its motion for summary judgment in which the ALJs considered claims with stalled cycles and determined that Medicare should reimburse those cycles for treatment. See DSUF ¶¶ 164–68. These decisions, to the extent they may conflict, demonstrate that there was no categorical rule imposed by the government against reimbursing Stalled Cycle Claims. But in any event, the Court finds these decisions to be tangential to the issues in this case because the claims appealed by KCI were not billed with a KX modifier and were denied in the first instance. See e.g., Dkt. 488-1 at ¶¶ 164, 165 (objections by Hartpence to ALJ decisions submitted by KCI because those appeals did not concern "KX modified claims which had been denied"). The issue before this Court is whether KCI made material misrepresentations to the government when it added the KX modifier to claims for wounds that had experienced a stalled cycle but eventually improved. The Court is not persuaded that two adverse ALJ decisions that concern claims for wounds that were not billed with a KX modifier are sufficient to create a triable issue as to the materiality of KCI's Stalled Cycle Claims.

In light of the demanding standard required for materiality under the FCA, and Hartpence's failure to adduce any evidence that would meet this standard under Escobar, the Court finds that Hartpence has failed to set out specific facts showing a genuine issue for trial regarding the materiality of KCI's misrepresentations related to the Stalled Cycle Claims.[14]

---

[13]   This document was also filed for the first time with Hartpence's supplemental brief.

[14]   Hartpence argues, for the first time, in his supplemental brief that the Court should consider the materiality of KCI's use of the KX modifier on a region-by-region basis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

### ii.   Materiality of Surgical Wound Claims

The LCDs cover an NPWT pump when "[t]he patient has complications of a surgically created wound (for example, dehiscence) or a traumatic wound (for example, pre-operative flap or graft) where there is documentation of the medical necessity for accelerated granulation tissue which cannot be achieved by other available topical wound treatments (for example, other conditions of the patient that will not allow for healing times achievable with other topical wound treatments)." DSUF No. 25. Hartpence contends that KCI's requests for reimbursements violated the LCDs if they were billed with a KX modifier and used one of 38 different ICD-9-CM diagnosis codes that refer to wounds "without mention of complication." R. Opp'n at 14. KCI argues Hartpence's

---

Suppl. at 4–11. According to Hartpence, there are triable issues of materiality as to claims submitted to Regions A, B, and C because the Medical Directors for those regions were not aware that KCI was submitting claims for stalled cycles with a KX modifier, and because the Region D Audit "does not pertain to Regions A, B, and C." Id. The Court is unpersuaded by Hartpence's argument because it is unsupported by the record and untimely. As explained earlier, CMS divides the nation into four geographic regions for purposes of processing claims. DSUF Nos. 12, 13. CMS initiated the Region D Audit and the results of that audit were forwarded to CMS. There is nothing in the record that demonstrates that CMS rejected the findings of that audit, which approved KCI's claims for stalled cycles that had been submitted with a KX modifier. There is no reasoned basis to segment the Court's analysis here because CMS—the federal agency responsible for administering Medicare across the country—both initiated and received the results of that audit. Moreover, although Dr. Brennan and Dr. Hughes could not directly recall being aware of KCI's billing practices during their depositions, this testimony is insufficient to create a triable issue of materiality because contemporaneous evidence demonstrates that all four Medical Directors agreed during a call on September 3, 2010, to "[t]ake no action immediately to address KCI's stalled billing." DSUF No. 136. Hartpence also argues for the first time in his supplemental brief that the Court should determine the materiality of KCI's claims separately as to certain time periods. See Supp. at 15–19. The Court is also not persuaded by this argument because Hartpence has not identified any evidence indicating that any of the DMERCs have ever denied a claim submitted by KCI with a KX modifier for a wound that had experienced a stalled cycle of healing but ultimately improved.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

theory of falsity is "devoid of support in any evidence, guidance, regulation or statute."
D. Mot. at 30.

There is no evidence in the record demonstrating that the Government would have
refused to pay a claim if it knew that KCI had used one of the 38 ICD-9-CM diagnosis
codes that refer to noncomplicated wounds.  Rather, it is undisputed that every claim
submitted for reimbursement explicitly provided the ICD-9-CM diagnosis code, DSUF
No. 42, which means that every time the DMERCs reviewed a claim, they saw both the
diagnosis code and the KX modifier in plain text on the face of the claim.  Hartpence
provides no argument whatsoever regarding the materiality of KCI's allegedly false
Surgical Wound Claims.

The Court thus finds that Hartpence has failed to set out specific facts showing a
genuine issue for trial regarding the materiality of KCI's misrepresentations related to the
Surgical Wound Claims.

### iii.    Materiality of Monthly Measurement Claims

The LCDs state that, "once placed on an NPWT pump and supplies, in order for
coverage to continue a licensed medical professional must do the following: . . . On at
least a monthly basis, document changes in the ulcer's dimensions and characteristics."
DSUF No. 27 (emphasis added).  Hartpence argues that this LCD requires that a patient's
wound must be measured at least every 31 days in order to meet the LCDs' "monthly"
measurement requirement.  DSUF 145.  According to Hartpence, any claim for
reimbursement based on wound measurements more than 31 days apart billed with a KX
modifier is a materially false claim.  R. Opp'n at 15.  However, the LCD itself does not
define "monthly," and Hartpence provides no evidence demonstrating that the
government, or even KCI itself, understood the LCDs to require all wound measurements
to be made within 31 days of each other.  Moreover, Hartpence provides no evidence
showing that the government has ever denied payment when the patients' wounds were
measured more than 31 days apart.  Accordingly, even if Hartpence is correct that the
term "monthly" requires measurements to be taken within 31 days, he has provided no
evidence that any misrepresentations associated with KCI's Monthly Measurement
Claims were material.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

Accordingly, Hartpence has failed to set out specific facts showing a genuine issue for trial regarding the materiality of KCI's misrepresentations related to the Monthly Measurement Claims.

### B.    Scienter

To prevail under the FCA, a relator must prove that a defendant had "actual knowledge" of a false claim or acted with "deliberate ignorance" or "reckless disregard." 31 U.S.C. § 3729(b)(1).  The FCA's scienter requirement, like its materiality requirement, is "rigorous."  Escobar, 136 S. Ct. at 2002.  Liability turns on "whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision."  Id. at 1996.  The Court finds that Hartpence has failed to establish the existence of a genuine issue of material fact with respect to KCI's scienter when it attached the KX modifier to the claims at issue here.

With respect to the Stalled Cycle Claims, Hartpence's primary argument as to why KCI acted with scienter is that KCI knew that it could not file KX-modified claims for stalled cycles per the LCDs and filed such claims anyway.  R. Mot. at 32.  Hartpence also points to the fact that KCI never successfully convinced the Medical Directors to officially change the language of the LCDs.  Id.  The Court finds that KCI's knowledge of the terms of the LCDs, and the fact that KCI was technically in violation of those LCDs when it filed Stalled Cycle Claims with a KX modifier, are insufficient to create a triable issue of fact as to scienter.  The issue here is not whether KCI knew it was submitting claims in violation of the LCDs, but whether it knew that submitting Stalled Cycle Claims with a KX modifier was material to the government's payment decision.

Here, KCI has adduced evidence demonstrating that KCI informed the Medical Directors about its billing practices with respect to the Stalled Cycle Claims in early 2004, and that KCI even secured a draft revision of the LCD terms in the summer of 2004 that embodied KCI's risk sharing approach.  DSUF Nos. 97, 124.  This evidence strongly negates a finding of scienter because KCI was open with the government about its use of the KX modifier on Stalled Cycle Claims, and because KCI was under the belief that the Medical Directors were in agreement with its risk sharing approach.  In fact, in an email from Hartpence to Morris in 2006, Hartpence even proposed asking Dr. Hughes to communicate to the ALJ judges that "Risk sharing on stalled cycles is an agreed policy and should be paid."  DSUF No. 130.  This email is further evidence that KCI was under the impression that the Medical Directors condoned KCI's risk sharing approach.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

Hartpence's remaining evidence is insufficient to create a triable issue of fact as to KCI's scienter.  Hartpence points to an email sent by Laurie Waldron, a member of KCI's billing staff, expressing concern that KCI was billing for Stalled Cycle Claims even though it appeared to be disallowed by the Region B Bulletin. R. Mot. at 33.  However, this statement merely reinforces Hartpence's point that KCI filed claims that did not technically comply with the LCDs, which is insufficient to establish scienter.  Waldron's email also cannot establish scienter because there is no evidence that Waldron was privy to the discussions between KCI and the Medical Directors regarding KCI's billing practices.  Hartpence also provides no evidence that her stated suspicions were confirmed, and there is no evidence that she had any knowledge one way or another as to whether the government ultimately approved KCI's claims.

Hartpence also relies on KCI's SEC filings to demonstrate scienter because, according to Hartpence, these filings reveal that KCI knew that the Medical Directors had not formally changed the LCDs regarding stalled cycles.  However, these SEC filings actually negate a finding of scienter because they demonstrate that KCI repeatedly disclosed to the public that it disagreed with the DMERCs' policy as written in the LCDs with respect to stalled cycles and that its earnings could be affected if the DMERCs ultimately did not revise their interpretations.  See, e.g., DSUF No. 254.  Rather than demonstrating scienter, these filings demonstrate that KCI was transparent about its billing practices with the government and the public at large.  The Court thus finds that Hartpence has failed to make a showing sufficient to establish a triable issue regarding KCI's scienter with respect to the Stalled Cycle Claims.

Hartpence also argues that KCI acted with scienter because it chose not to appeal claims for "Cycle 5 claims" and risk revealing its "prior false representations."  P. Opp'n at 17; Supp. at 20.  Hartpence relies on a chain of emails sent by Jera Sitton, who appears to be a KCI employee, in January 2009.  In these emails, Sitton explains that when the Social Security Administration "used to be the head judges of the ALJ[s] . . . [o]ur mindset at that time was to appeal anything-stalls, small wounds, etc.  We were very successful-won almost everything."  Dkt. 471-8 at 11.  In 2006, "the judges at the Department of Health and Human Services (DHHS) took over the ALJs. . . . In the beginning, it was very difficult obtaining consistent rulings from DHHS.  At first we had a few difficult judges who denied absolutely everything without consideration."  Id.  According to Sitton, by the end of 2007, KCI "started getting the same set of judges that were making consistent rulings."  Id.  Starting in September 2007, "[t]he directive we got

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

[from the new Vice President] was don't take anything we know we can't win." Id. When asked why substantial claims were being written off as "NWI" (no wound improvement) rather than being appealed, Sitton explained: "A major driver of No Wound Improvement adjustment during the appeals process occurs when we receive a denial for the fifth cycle and find that (for example) cycle 2 was stalled.  Historically, rather than appeal cycle 5 and risk the paid cycles of two, three, and four—we do not appeal cycle five and adjust it [ ] off to no wound improvement.  We have found that if we were to have pursued cycle 5 in appeal and there was a stalled cycle previously, Medicare would recoup their money up to and including the stalled cycle.  We can appeal the recoupments, however with a stalled cycle—it is basically uncollectable."  Dkt. 471-8 at 14.  Id.  KCI responds that this email merely confirms that "ALJs often approved stalled cycles, [and] sometimes they did not" therefore "KCI did not always appeal fifth cycle denials where there had been a stall."  D. Reply at 18.  KCI also responds that Sitton's email predates Administrative Law Judge Schroeder's holding that "those cases which show a reduction in the wound surface area cannot be denied on the basis that there has been no healing in the prior month."  DSUF No. 32.

The Court is not persuaded that Sitton's emails—which concern KCI's strategy of appealing claims to ALJs—is sufficient to raise a fact question as to KCI's scienter when submitting claims with a KX modifier pursuant to its risk sharing policy.  There is no evidence in the record indicating that the ALJs were privy to KCI's communications to the DMERCs about its risk sharing policy, and the record suggests otherwise.  See DSUF No. 130 (Hartpence's 2006 email to Morris suggesting that Dr. Hughes communicate to the ALJs that "[r]isk sharing on stalled cycles is an agreed policy and should be paid.").  Sitton's emails indicate that KCI chose not to appeal certain claims based on how the ALJs tended to rule on certain issues.  These emails, at most, suggest that KCI was aware that some ALJs would have denied KCI's claims on wounds that had experienced a cycle of stalled healing based on a strict application of the LCDs.  As explained above, the Court finds that KCI has failed to create a triable issue with respect to KCI's scienter because KCI has provided uncontroverted evidence that it disclosed its billing practices for Stalled Cycle Claims to the DMERCs.  KCI's strategy of declining to appeal certain claims for wounds that had experienced a stalled cycle based how certain ALJs may have ruled is thus insufficient to create a triable issue as to whether KCI acted with scienter when it added the KX modifier to Stalled Cycle Claims submitted to the DMERCs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

With respect to the Surgical Wound Claims, Hartpence has provided no evidence that KCI knew it was filing a false claim when it attached the KX modifier to claims for surgical wounds with diagnosis codes that did not mention a complication. The LCDs themselves do not exclude any of the diagnosis codes at issue, and Hartpence has provided no explanation, beyond his own interpretation of the LCDs, for why such a claim is false. See U.S. ex rel. Hendow v. University of Phoenix, 461 F.3d 1166, 1174 (9th Cir. 2006) ("[I]nnocent mistakes, mere negligent misrepresentations and differences in interpretations are not sufficient for False Claims Act liability to attach."). The record further suggests that there can be no scienter because the purportedly forbidden diagnosis codes were disclosed on the face of the allegedly false claims filed by KCI. See U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1267 (9th Cir. 1996) ("For a certified statement to be false under the Act, it must be an intentional, palpable lie.") (internal quotation marks and citation omitted). The Court thus finds that Hartpence has failed to make a showing sufficient to establish a triable issue regarding KCI's scienter with respect to the Surgical Wound Claims.

And with respect to the Monthly Measurement Claims, Hartpence has also failed to provide any evidence suggesting that KCI knew that its Monthly Measurement Claims were false. Here, as with the Surgical Wound Claims, Hartpence's theory of falsity relies entirely on his own interpretation of what the LCDs require. There is nothing in the record establishing that the DMERCs required wound measurements to be taken within 31 days of each other. In the absence of this evidence, there can be no inference that KCI acted with scienter when it filed claims for a wound with measurements that were taken more than 31 days apart. The Court thus finds that Hartpence has also failed to make a showing sufficient to establish a triable issue regarding KCI's scienter with respect to the Monthly Measurement Claims.

## C.    Evidentiary Motions

KCI has also filed multiple briefs arguing that Hartpence has failed to adduce admissible evidence identifying specific false claims filed by KCI. KCI argues that the identification of a false claim "is the *sine qua non* of FCA liability," and that the absence of such evidence requires summary judgment to be granted in KCI's favor. Mot. at 16. The Court need not reach this issue because it finds that, even assuming that Hartpence's evidence is admissible, Hartpence has nonetheless failed to meet his burden of demonstrating a genuine issue of material fact as to the materiality and scienter requirements of the FCA. Accordingly, the Court denies as moot KCI's motion to strike

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

and exclude documents lodged with Hartpence's motion for partial summary judgment, KCI's motion to strike and exclude documents lodged by Hartpence on February 16, 2019, and KCI's motion in limine to exclude exhibits 1, 2, and 3 to Hartpence's response to KCI's first set of interrogatories.

KCI has also filed a motion to strike challenging the admissibility of certain handwritten notes that Hartpence attributes to Dr. Oleck.  See Dkt. 466.  According to Hartpence, Dr. Oleck wrote notes during a call with Assistant United States Attorney Howard Daniels about KCI's billing practices and wrote, in part, "our response letter to [KCI] (6/03) did not accept [KCI's stalled cycle approach]" and "if they don't use KX & we deny they can appeal & we can give IC . . . as with any LCD."  RSF No. 289.  The Court need not reach this issue because it finds that, even if it were to find that this handwriting is properly attributable to Dr. Oleck and admissible, these notes merely replicate the evidence that is already in the record and would not create a genuine issue of material fact as to the materiality of KCI's misrepresentations.

**V.      CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is **GRANTED**.

Relator's motion for partial summary judgment as to liability is **DENIED.**

Defendants' motion in limine to exclude exhibits 1, 2, & 3 to relator's second supplemental response to KCI's first set of interrogatories is **DENIED** as moot.

Defendants' motion to strike and exclude documents filed with relator's motion for partial summary judgment is **DENIED** as moot.

Defendants' motion in limine to exclude documents with unidentified handwriting and motion to strike paragraph 38 of the Labaton declaration is **DENIED** as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:08-cv-01885-CAS-AGR | Date | June 14, 2019 |
|---|---|---|---|
| Title | UNITED STATES OF AMERICA ex rel. STEVEN J. HARTPENCE v. KINETIC CONCEPTS, INC. ET AL. | | |

Defendants' motion to strike and exclude documents lodged by relator on February 16, 2019 is **DENIED** as moot.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | CJ | | |